

PERKINS
SMITH &
COHEN

Perkins Smith & Cohen LLP
Attorneys at Law

**Matthew J. Tuttle**
(617) 854-4225
mtuttle@pscboston.com

September 15, 2004

**By Hand Delivery**

The Honorable Richard G. Stearns
United States District Judge
United States District Court
   for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 7130
Boston, MA  02210

Re:    **Bennett v. Fidelity Management and Research Co.**
       **Civil Action No. 04cv11651**

Dear Judge Stearns:

We are counsel for the plaintiffs, Cynthia A. Bennett and Guy E. Miller, in the above captioned action (the "Bennett Action"). The Bennett Action was recently reassigned from this Court to Judge Wolf, however, there is a motion pending before this Court to consolidate the Bennett Action with six other actions, five of which are pending in this Court. The Bennett plaintiffs vigorously oppose this motion because it will substantially delay and complicate a resolution of their claims. The cases with which consolidation is proposed all allege a complex scheme of fraudulent conduct, seek certification of a class, and demand a jury trial. In sharp contrast, the Bennett plaintiffs allege only a single count of breach of fiduciary duty, seek no class certification, and request a prompt bench trial before Judge Wolf. Accordingly, the Bennett plaintiffs would be severely prejudiced by consolidation and therefore oppose the motion.

The motion to consolidate was filed by counsel for the plaintiffs in the following cases: *Gilliam v. Fidelity Management & Research Co. et al.*, No. 04-11600; *Bogatin Family Trust v. Fidelity Management & Research Co. et al.*, No. 04-11642; *Awali et al. v. Fidelity Management and Research Co. et al*, No. 04-11709; *Groeschel v. Fidelity Management and Research Co. et al.*, No. 04-11735; and *Fallert v. Fidelity Management and Research Co. et al.*, No. 04-11812 (collectively, the "Class Actions"), and seeks to consolidate the Class Actions with the two derivative actions filed in the Bennett Action and *Haugen et al. v. Fidelity Management and Research Co. et al.*, No. 04-11812. Although the plaintiffs in the Bennett Action were not properly served with the motion to consolidate when it was filed, and the movants made no effort

The Honorable Richard G. Stearns
September 15, 2004
Page 2

to confer with the Bennett plaintiffs prior to filing the motion,[1] we respectfully ask that the Court allow the Bennett plaintiffs to be heard in opposition to the motion to consolidate.

Counsel in the Class Actions has also filed a motion for the appointment of lead counsel in the Class Actions. As with the motion to consolidate, counsel in the Bennett Action was not consulted about this additional motion. If the Bennett Action is ultimately consolidated with the Class Actions, the plaintiffs in the Bennett Action respectfully ask that they be given the opportunity to oppose the motion for appointment of lead counsel at a later date.

A.    **Consolidation Should Not Occur Unless It Will Promote Judicial Economy, Efficiency, Convenience And Fairness To All Parties**

As the movants correctly set forth in their motion to consolidate, consolidation may be appropriate under Fed. R. Civ. Proc. 42(a) where "two proceedings involved a common party and common issues of law or fact." *Seguro de Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*, 878 F.2d 5, 8 (1st Cir. 1989). The analysis, however, does not stop there. The Court must also "weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of confusion, delay or prejudice that might result from consolidation." *See Data General Corp. v. Grumman Sys. Support Corp.*, 834 F. Supp. 477, 487 (D. Mass. 1992), *citing Spirt v. Teachers Ins. and Annuity Ass'n*, 93 F.R.D. 627, 639 (S.D.N.Y. 1982); *Fleishman v. Prudential-Bache Secs., Inc.*, 103 F.R.D. 623, 624-25 (S.D.N.Y. 1984) ("a party moving for consolidation must show that consolidation would promote trial convenience and economy in administration due to factors other than a mere commonality of legal and factual issues"). If the benefits of consolidation are outweighed by its costs and prejudice to the parties, consolidation is inappropriate. *Town of Norfolk v. United States EPA*, 134 F.R.D. 20, 22 (D. Mass. 1992), *citing Seguro de Servicio de Salud De Puerto Rico*, 878 F.2d at 8.

The Class Actions plaintiffs' motion to consolidate is devoid of any discussion of how consolidation of these matters would benefit the parties as well as serve the interests of judicial convenience and economy. Moreover, the motion to consolidate utterly ignores glaring and material differences between the Bennett Action and the Class Actions, which have the potential

---

[1] Local Rule 7.1 requires the movants to certify that they have conferred and have attempted in good faith to resolve or narrow the issues raised in their motion. In their Local Rule 7.1 certification, the movants state that they have conferred with counsel for Fidelity Investments, counsel for the nominal defendants and counsel for the individual defendants, but make no mention of any attempts to contact counsel for the Bennett plaintiffs. The rights of the Bennett plaintiffs are clearly affected by the outcome of the motion to consolidate, and counsel in the Class Actions should have made an attempt to confer with counsel in the Bennett Action. The movants' failure to confer with counsel in the Bennett Action is an indication that the Bennett plaintiffs and their claims will be disregarded if consolidation occurs and counsel for the Class Actions is permitted to take charge of their claims.

The Honorable Richard G. Stearns
September 15, 2004
Page 3

to drastically delay a resolution of the Bennett Action, create tremendous additional costs for the Bennett plaintiffs, and otherwise cause utter confusion in the administration and proceeding of the Bennett Action *and* the Class Actions if the cases were consolidated. As discussed in greater detail below, the additional judicial labor and administration that consolidation will require and the substantial prejudice, confusion and delay that the Bennett plaintiffs will suffer as a result of consolidation with the Class Actions greatly outweigh any benefits that could result from consolidation.

### B.    Any Similarities Between The Bennett Action And The Class Actions Are Minor And Do Not Justify Consolidation

The Bennett claim is a succinct, streamlined claim asserted as a statutory derivative action against Fidelity Management & Research Company ("Fidelity Management & Research") and FMR Co., Inc. ("FMR"), alleging that Fidelity Management & Research and FMR charged excessive advisory fees in violation of section 36(b) of the Investment Company Act of 1940. The Bennett Action claims relate only to five funds for which Fidelity Management & Research and FMR provide investment advisory services and which are held by the Bennett Action plaintiffs, to wit, the Fidelity Contrafund, the Fidelity Growth & Income Fund, the Fidelity Magellan Fund, the Fidelity Blue Chip Fund, and the Fidelity Low-Priced Stock Fund. The Bennett Action does not challenge fees charged in any other Fidelity Funds; indeed, the fees charged in other Fidelity funds, at their present levels, support the claims of the Bennett Action plaintiffs. The Class Actions, on the other hand, assert class claims arising out of a complex and detailed fraudulent scheme involving illicit payments to retail brokers, knowing breaches by fund trustees and false statements in fund prospectuses. The Class Actions are brought against twenty-five named defendants for a veritable laundry list of violations associated with nearly every mutual fund in the Fidelity family, or more than 200 separate funds, all of which are named in the Class Actions as nominal defendants.

Although both the Bennett Action and the Class Actions include claims for excessive fees in violation of section 36(b) of the Investment Company Act, the facts underlying those claims are very different. The focus of the complaints in the Class Actions is on the improper use of fund assets to make improper and undisclosed payments to securities brokers to aggressively push Fidelity funds on their customers over funds from other companies. The Class Actions also allege that the defendants filed false and misleading prospectuses for the Fidelity funds, which was again designed to increase participation in the Fidelity funds. According to the complaints in the Class Actions, one of the reasons why the defendants in those actions were motivated to make these improper commission payments was to increase overall participation in the Fidelity funds because they receive compensation calculated as a percentage of the funds' average daily net asset value. The Class Actions allege that one of the justifications Fidelity gives for its aggressive marketing is that the increase in the assets of the Fidelity funds actually benefits fund shareholders by creating economies of scale that ultimately inure to the benefit of the fund

The Honorable Richard G. Stearns
September 15, 2004
Page 4

shareholders. The Class Actions complaints allege that the benefits of the economies of scale, however, were never actually passed along to the funds' investors, and as a result, the funds were charged excessive management fees.

Thus, the arguments in the Class Actions related to economies of scale and excessive management fees are incidental to the broader claims in the Class Actions of widespread fraud at Fidelity, and are but a small subset of the Class Actions' overall claims.[2] On the other hand, the claims in the Bennett Action contain focused allegations that Fidelity Management & Research and FMR charged excessive investment advisory fees to the five mutual funds at issue in that case. The Bennett Action alleges *no* fraud and the vast majority of the allegations in the Class Actions have absolutely no relevance to the Bennett Action. Indeed, aside from the one cause of action the Bennett Action and the Class Actions incidentally share, the other claims made in the Class Actions are so different from the claims in the Bennett Action that they have different pleading requirements, different elements, different procedural requirements and, particularly with respect to the fraud allegations in the Class Actions, different standards of proof. If the Bennett Action is consolidated with the Class Actions, the limited and succinct issues in the Bennett Action will immediately become bogged down by the complex, detailed and far-reaching claims in the Class Actions. There is also the potential for serious confusion on the part of the fact finder when the limited issue of excessive fees in the five funds in the Bennett Action is commingled with the allegations of affirmative misconduct contained in the Class Actions. Moreover, a resolution or a hearing of the claims in the Bennett Action will be seriously delayed while irrelevant claims and legal arguments are addressed.

The potential for delay, confusion and prejudice as a result of consolidation of the Bennett Action with the Class Actions greatly outweighs the benefits that would result from consolidating these cases for the sole reason that they share one cause of action out of a multitude of causes of action. Numerous courts have recognized that similarities do not always justify consolidation. *See Arroyo v. Chardon*, 90 F.R.D. 603, 605-06 (D.P.R. 1981) (denying motion to consolidate in nine cases alleging political discrimination even though some facts were identical in each case, because each case also had many unique issues and it would cause confusion and could result in prejudice to the parties' rights if issues irrelevant to some of the cases were presented in a single trial); *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978) (affirming district court's refusal to consolidate a civil rights claim with two class actions despite some similarities where the relief sought in the actions varied substantially, where the defendants

---

[2] Indeed, it appears that the discussion of the economies of scale may have been added to the Class Actions as an afterthought. Some portions of the complaints filed in the Class Actions were taken verbatim from the complaint filed in the Bennett Action, which was first filed in the United States District Court for the Southern District of Illinois on December 17, 2003, nearly seven months prior to the first filed Class Action complaint. For instance, although the Class Actions allege that excessive fees were charged to more than 200 Fidelity mutual funds, the discussions of the economies of scale is limited to the five funds at issue in the Bennett Action.

The Honorable Richard G. Stearns
September 15, 2004
Page 5

were being sued in different capacities, and where the parties failed to establish what would be gained by consolidation); *Flintkote Co. v. Alias-Chalmers Corp.*, 73 F.R.D. 463, 465 (S.D.N.Y. 1977) (denying motion to consolidate two breach of contract actions despite that fact that there were some common questions of law, where the overlap was so small and did not outweigh the confusion and prejudice that would result at trial).

C.    **Consolidation Of The Bennett Action With The Class Actions Creates The Potential For Lengthy Delay In The Resolution Of The Bennett Claims**

The differences between the Bennett Action and the Class Actions, as discussed above, create the potential for serious delay with respect to the resolution of the Bennett claims. There are numerous issues in the Class Actions that will need to be resolved before the case can proceed to the discovery phase and ultimately to a trial. As discussed below, most of these issues are unique to the Class Actions and would not appear in the Bennett Action if that action proceeded on an individual basis.

1.    **The Bennett Action Will Be Delayed While Class Certification Issues In The Class Actions Are Resolved**

The Bennett Action is strictly a statutory derivative action brought on behalf of the five Fidelity funds outlined in the Bennett complaint. The Class Actions, on the other hand, are brought on behalf of a class, consisting of all investors who purchased or held shares in any of the 200 funds listed as nominal defendants during the time period of July 19, 1999 through November 17, 2003. Because the Class Actions are brought on behalf of a potentially enormous class of investors, issues such as class certification and the selection of class representatives and class counsel must be resolved before the Class Actions can progress. These class certification issues can often take months if not years to resolve, and in many instances discovery is stayed until these issues are resolved. The Bennett action, on the other hand, as a statutory derivative action, is not subject to these same procedural hurdles and requirements. The Bennett Action should not be delayed so that issues that have no relevance to its claims can be hashed out, potentially for years.

2.    **The Bennett Action Will Be Delayed While Dispositive Motions Pertinent Only To The Class Actions Are Resolved**

It is also certain that motions to dismiss will be filed in the Class Actions, which will serve to further delay the development, prosecution and eventual resolution of those cases. There are a number of issues that exist in the Class Actions, but do not exist in the Bennett Action, that make motions to dismiss in the Class Actions almost inevitable.

The Honorable Richard G. Stearns
September 15, 2004
Page 6

Because of conflicting case law, whether or not claims asserted in the Class Actions under section 34(b) the Investment Company Act, and section 206 of the Investment Advisors Act can be maintained as private causes of action is ripe for legal argument on a motion to dismiss. *See Dorchester Investors v. Peak Intern. Ltd.*, 134 F. Supp. 2d 569 (S.D.N.Y. 2001) (holding that there is no private right of action under section 34(b) of the Investment Company Act, which bars the filing of false statements in connection with the Act.); *Goldstein v. Malcolm G. Fries & Assoc., Inc.*, 72 F. Supp. 2d 620 (E.D. Va. 1999) (finding that no private right of action exists under section 206 of the Investment Advisors Act, which establishes the federal fiduciary standards governing the conduct of investment advisors).

Although not categorized as such in the complaints filed in the Class Actions, the claims therein for common law breaches of fiduciary duty against the trustees are arguably derivative claims. As such, there are certain requirements for derivative actions that have not been set forth in the complaints filed in the Class Actions. Specifically, the complaints in the Class Actions fail to set forth that a prior demand was made upon the trustees. *See Turul v. Rogatol Distribs., Inc.*, 951 F.2d 1, 2 (1st Cir. 1991) (the court dismissed shareholder's complaint for failure to meet the requirements of Federal Rule of Civil Procedure 23.1 and held that in a shareholder derivative action "a shareholder must plead with particularity either that demand was made on the corporation or that demand was futile"). Although the claims in the Bennett Action are considered "quasi-derivative," they are not subject to the same demand requirement and will not face that challenge in a motion to dismiss. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984) (holding that a plaintiff in an action brought pursuant to section 36(b) of the Investment Company Act need not first make a demand upon the fund's directors before bringing suit).

The plaintiffs in the Class Actions face significant challenges from the defendants in their action as early as a motion to dismiss. The defendants in the Bennett Action, on the other hand, have informed counsel for the Bennett plaintiffs that they, at present, do not intend to file a motion to dismiss in that case. As a result, if consolidated with the Class Actions, the Bennett Action would suffer unnecessary delays while issues with no relevance to its claim are resolved.

### 3. Case Management Conflicts Between The Class Actions And The Bennett Action Will Cause Delay

The Class Actions plaintiffs' proposed order setting a schedule after consolidation is a further indication of the delay that will occur to the Bennett Action if it is consolidated with the Class Actions. The proposed order sets forth that an amended complaint will be filed sixty days after an order of consolidation is entered by the Court; that an answer or motion to dismiss will be filed forty-five days after the filing of a consolidated complaint; that any opposition to motions will be due forty-five days after the motions are filed; and any reply briefs will be due thirty days after any opposition briefs. This adds, at a minimum, 180 days, or six months, before the Class Actions can proceed in a substantive manner. The Bennett plaintiffs, on the other

The Honorable Richard G. Stearns
September 15, 2004
Page 7

hand, do not anticipate the need to file an amended complaint and have received an indication
from counsel for the defendants in their action that the defendants do not intend to file a motion
to dismiss. This means that the Bennett case is ready to proceed with discovery immediately,
whereas it will be many months before the Class Actions even come close to this stage.

### D.    The Consolidation Of The Bennett Action With The Class Actions Will Create Substantial Confusion And Result In Severe Prejudice To the Bennett Plaintiffs

There are also a number of material differences between the Bennett Action and the Class
Actions that have the potential to create significant conflicting interests, strategies and ultimately
extreme confusion if the cases are consolidated.  All of this will have the combined effect of
increasing the burden on the Court rather than meeting the goal of consolidation: to promote
convenience and judicial economy.

### 1.    Different Statutes Of Limitations

One glaring difference between the Class Actions and the Bennett Action is that, while
the claims asserted in the Bennett Action are subject to a one-year statute of limitations period,
*see* section 36(b)(3) of the Investment Advisers Act, the Class Actions seek to represent a class
of investors that held mutual fund shares during a four-year period that does not even include the
majority of the period for which the Bennett Action seeks damages.  Specifically, whereas the
Class Actions seek to represent a class of investors who held Fidelity mutual fund shares
between July 19, 1999 and November 17, 2003, the Bennett Action seeks damages starting from
one year prior to the initiation of the action, or July 26, 2003.  The difference in time covered by
the Bennett Action versus the Class Actions, coupled with the fact that the Class Actions' time
period does not include most of the period covered in the Bennett Action, create the potential for
conflicting interests within the same consolidated action and confusion at a trial as to what
evidence is applicable to which time period and how to calculate damages for the different time
periods.  This conflict and the confusion that would result from consolidation outweigh the
limited benefits that consolidation could provide.

### 2.    Derivative Action Versus Class Action

The Bennett Action is strictly a statutory derivative action, whereas the Class Actions
allege claims both on behalf of a class of investors and derivatively on behalf of the Fidelity
funds.  If these cases were consolidated, a conflict would certainly exist between the derivative
claims, which seek to benefit the five Fidelity funds outlined in the Bennett Action, and the class
claims, which seek damages that could ultimately have a negative financial impact on the
Fidelity funds.  The conflict is compounded where, as here, it is proposed that the same lead
counsel be appointed to represent both the class members and the plaintiffs in the derivative

The Honorable Richard G. Stearns
September 15, 2004
Page 8

claims. *See Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 624 (S.D.N.Y. 1973) (holding that the same counsel could not represent plaintiffs in a derivative action and a class action involving the same corporation where one action would result in recovery for the corporation and the other would result in detriment to the corporation. The district court stated "[i]t is difficult to see how counsel could retain his independence of professional judgment and loyalty to his clients and their interests in both suits."); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 94-95 (S.D.N.Y. 1972) (finding that the same plaintiffs could not sue derivatively on behalf of a corporation and at the same time seek recovery from that same corporation as representatives of a class).

### 3.      Bench Trial Versus Jury Trial

There is also the potential for conflict between the Bennett Action and the Class Actions because the Bennett Action requires a bench trial, *see Kalish v. Franklin Advisers, Inc.*, 928 F.2d 590, 591 (2d. Cir. 1991) (derivative action to recoup allegedly excessive fees paid by fund to investment advisor was equitable in nature and thus shareholder had no right to a jury trial), whereas the plaintiffs in the Class Actions have included a demand for a jury trial in their complaints. The fact that the Class Actions plaintiffs have demanded a jury trial while the Bennett Action must be tried to the Court will result in substantial confusion down the line and could likely result in the Bennett Action and the Class Actions proceeding to separate trials. As a result, consolidation makes little sense if the actions will only proceed separately at a later date. *See United States EPA v. Green Forest*, 921 F.2d 1394, 1403 (8th Cir. 1990) (upholding district court refusal to consolidate actions in part because the claims in one action were to be tried to a jury and the claims in the other action were to be tried before the court); *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 318 (S.D.N.Y. 1976) (denying motion to consolidate in part due to the fact that confusion would result from the fact that jury demands were made in one of the actions while the other action had to be tried to the court).

### E.      Discovery Conflicts

Perhaps the greatest argument against consolidation of the Bennett Action with the Class Actions relates to the differing levels of discovery and case development needed in the different cases. As discussed above, the Bennett Action is a succinct claim involving investment advisory services provided to five Fidelity mutual funds. The Class Actions, on the other hand, allege a laundry list of wrongful conduct by Fidelity affecting more than 200 mutual funds. The broader allegations of abuses and wrongdoing in the Class Actions will require endless discovery, thousands of hours of depositions, the production of hundreds of truckloads of documents, and thousands of hours of attorney preparation time, all having nothing to do with the claims in the Bennett Action. The costs associated with such an undertaking will be astronomical.

The Honorable Richard G. Stearns
September 15, 2004
Page 9

In contrast, the discovery and preparation of the claims in the Bennett Action will be far more focused. The limitation of the claims in the Bennett Action to violations of section 36(b) only, the limitation of the claims to only five funds, and the limitation of the relevant time period make the undertaking manageable and the costs reasonable. It would be patently unfair to the Bennett Action plaintiffs to turn their focused, manageable case into a potential quagmire for the Bennett Action plaintiffs, and to delay the resolution of their claims while claims wholly unrelated to their own are fleshed out in discovery over a multitude of years.

**F.    Conclusion**

In short, the plaintiffs in the Bennett Action will suffer extreme prejudice if their case is consolidated with the Class Actions. At not time since this action was first filed in December 2003, have the defendants indicated that they intend to file a motion to dismiss the Bennett Action. Moreover, the defendants have already agreed to allow the plaintiffs in the Bennett Action to serve limited discovery requests. Accordingly, the Bennett Action is proceeding quickly and efficiently through the litigation process. That will all change if it is consolidated with the Class Actions. The added motion practice and administrative steps anticipated in the Class Actions, not to mention the massive amounts of discovery, most of it entirely irrelevant to the Bennett Action claims, will add many years to the Bennett Action timeline. The Bennett plaintiffs will suffer extreme prejudice as a result of this delay and, therefore, respectfully request that the Court deny the Class Actions plaintiffs' request to consolidate the Bennett Action with the Class Actions.

Very truly yours,

Matthew J. Tuttle

cc:    The Honorable Mark L. Wolf
       Attached service list

31363-2-OppConsolLtr4.doc

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached document was served upon the following

attorney(s) of record for each other party U.S. Mail, postage pre-paid, on September 15, 2004.


_Matthew J. Tuttle_
Matthew J. Tuttle


Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street, Suite 1100
Boston, MA 02109-4216


Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Charle J. Piven
Marshall N. Perkins
Law Offices of Charles J. Piven, P.A.
The World Trade Center - Baltimore
Suite 2525
401 East Pratt Street
Baltimore, MD 21202

David Pastor
Gilman & Pastor
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906

Gary Gotto
Gretchen F. Cappio
Keller Rohrback, P.L.C
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012

Steven G. Shulman
Janine L. Pollack
Kim E. Levy
Michael R. Reese
Milberg Weiss Bershad & Shulman LLP
One Pennsylvania Plaza
New York, NY 10119-0165

Arthur L. Shingler, III
Scott + Scott, LLC
Wells Fargo Building
401 B Street, Suite 307
San Diego, CA 92101

Marc A. Topaz
Richard A. Maniskas
Schiffren & Barroway
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004

Joseph H. Weiss
Richard A. Acocelli
Weiss & Yourman
551 Fifth Avenue, Suite 1600
New York, NY 10176

Lynn Lincoln Sarko
Michael D. Woerner
Keller Rohrback
1201 3rd Avenue
Suite 3200
Seattle, WA 98101-3052

James C. Bradley
Michael J. Brickman
Nina H. Fields
Richardson, Patrick, Westbrook &
  Brickman
174 East Bay Street
Charleston, SC  29401

James S. Dittmar
Goodwin Procter LLP
Exchange Place
Boston, MA 02109

Michelle H. Blauner
Theodore M. Hess-Mahan
Shapiro Haber & Urmy LLP
53 State Street
37th Floor
Boston, MA 02109

James N. Benedict
Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019-6131