**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JAMES GILLIAM, Individually And On Behalf Of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al.,<br><br>　　　　　　　　Defendants. | ) ) ) ) ) ) Civil Action No. 04cv11600 (RGS) ) ) ) ) ) ) ) ) |
| BOGATIN FAMILY TRUST, Individually And On Behalf Of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al.,<br><br>　　　　　　　　Defendants. | ) ) ) ) ) ) Civil Action No. 04cv11642 (RGS) ) ) ) ) ) ) ) ) |
| CYNTHIA A. BENNETT and GUY E. MILLER,<br><br>　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al.,<br><br>　　　　　　　　Defendants. | ) ) ) ) ) Civil Action No. 04cv11651 (RGS) ) ) ) ) ) ) ) ) |

[Caption continues on next page]

**FIDELITY DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE *GILLIAM* PLAINTIFFS' MOTION FOR CONSOLIDATION OF RELATED CASES**

| | |
|---|---|
| GHASSAN J. AWALI et al., Individually And On Behalf Of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Civil Action No. 04cv11709 (RGS) ) |
| vs. | ) ) |
| FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |
| WILLIAM S. GROESCHEL, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Civil Action No. 04cv11735 (RGS) ) |
| vs. | ) ) |
| FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |
| NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, ROSE M. IANNACCONE, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of FIDELITY MAGELLAN AND FIDELITY CONTRAFUND, | ) ) ) ) ) ) Civil Action No. 04cv11756 (MLW) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

[Caption continues on next page]

_____
DAVID O. FALLERT, Individually And On Behalf )
Of All Others Similarly Situated, )
  )
                Plaintiff, ) Civil Action No. 04cv11812 (RGS)
  )
    vs. )
  )
FIDELITY MANAGEMENT AND RESEARCH )
COMPANY, et al., )
  )
               Defendants. )
_____ )

Defendants Fidelity Management & Research Company ("FMRCo"), FMR Co., Inc. ("FMRC"), FMR Corp., Fidelity Distributors Corporation, Edward C. Johnson 3d, Abigail P. Johnson, Edward C. Johnson IV, Elizabeth L. Johnson, Peter S. Lynch, Laura B. Cronin, Robert L. Reynolds, Robert C. Pozen, and J. Gary Burkhead (collectively the "Fidelity Defendants")[1] respectfully submit this memorandum in opposition to the Motion for Consolidation of Related Cases.

## INTRODUCTION AND DESCRIPTION OF THE AFFECTED CASES

The instant motion seeks the consolidation of two separate groups of cases that have been brought by shareholders in various Fidelity mutual funds and are now pending in the district. The Fidelity Defendants oppose the motion because of the fundamental differences between these two groups of cases with respect to the claims alleged, the parties against whom the claims are made, the law governing the claims, the operative facts to which that law will be applied, and the procedural requirements applicable to the claims.

The first group of cases consists of two "Excessive Management Fee" cases. These are cases in which the plaintiffs make virtually identical claims against two defendants, FMRCo and FMRC on behalf of five Fidelity mutual funds in which they are shareholders. *See Bennett, et al.* v. *Fidelity Mgmt. & Research Co., et al.*, No. 04-11651-MLW (D. Mass. filed July 23, 2004) and *Haugen, et al.* v. *Fidelity Mgmt. & Research Co., et al.*, No. 04-11756-MLW (D. Mass. filed August 10, 2004). These two cases assert claims under a single section of the Investment Company Act of 1940 ("1940 Act")—Section 36(b). The first case, *Bennett*, was originally filed in December 2003 in the United States District Court for the Southern District of Illinois. After

---

[1] The Fidelity Defendants consist of the parent company of Fidelity Investments (FMR Corp.), the investment adviser to all the named Fidelity mutual funds (FMRCo), the funds' sub-adviser (FMRC), the affiliated distributor of fund shares (Fidelity Distributors Corporation), and certain individuals affiliated with the

the parties submitted papers regarding a transer of venue to this Court, Plaintiffs withdrew that action and re-filed it in this Court. The second case, *Haugen*, was filed in the United States District Court for the District of Arizona in May 2004, and the plaintiffs thereafter agreed to transfer it to this Court.

In both of these cases, plaintiffs allege that investment management fees charged to one or more of five specific Fidelity mutual funds are excessive and that the receipt of these fees constitutes a breach of fiduciary duty by FMRCo and FMRC in violation of Section 36(b). Plaintiffs focus their claim on the allegation that the fees do not reflect economies of scale experienced by the five funds as they grew larger, and on the allegation that the fees are higher than those charged by FMRCo and FMRC to their non-mutual fund or "institutional" clients. These claims under Section 36(b) are subject to the statute's one-year limitation period. Thus, these claims are defined and circumscribed by plaintiffs' theories as to why the fees are excessive, by a one-year time frame, and by the fact that they are asserted against only two defendants and involve only five of Fidelity's more than 200 funds. These cases are to be tried by the Court, not a jury. The Excessive Management Fee cases are assigned to Judge Wolf.

The second group of cases consists of five "Revenue Sharing" cases. These cases were all commenced in this Court between July 19 and August 19, 2004, after commencement of the Excessive Management Fee cases. The Revenue Sharing cases are virtually identical to one another; indeed, the complaints largely track each other verbatim. These five cases consist of a wide variety of class-action claims and derivative claims purportedly brought on behalf of all of Fidelity's more than 200 retail mutual funds against twenty-five named defendants (including the

---

investment adviser, including certain present or former interested fund trustees and certain members of the Johnson family (the individual defendants identified by this brief).

2

Fidelity Defendants) and "John Does 1-100."[2]  The charges asserted in these five complaints are that the Fidelity Defendants made undisclosed, improper and excessive payments to broker-dealers to promote the sale of Fidelity funds over other mutual funds.  Plaintiffs in these cases challenge a number of sales and marketing practices that have been commonplace in the mutual fund industry—including so-called "revenue sharing," expenditures for distribution of fund shares under 1940 Act Rule 12b-1 plans, and directed portfolio brokerage.  The complaints assert a plethora of claims under three sections of the 1940 Act, two sections of the Investment Advisors Act of 1940, and common law.  The alleged class period is 4½ years.  Unlike the Excessive Management Fee cases brought solely under Section 36(b), there is no single, settled legal framework for resolving the variety of different statutory and common law claims made in the Revenue Sharing cases.  At least one of the claims asserted may be subject to trial by jury.  The Revenue Sharing cases are assigned to Judge Stearns.

      Plaintiffs in the Revenue Sharing cases have moved for consolidation of all seven cases, arguing that the cases present substantially the same claims.  Revenue Sharing plaintiffs' Memorandum ("Mem.") at 3-4.  They are wrong.  Even a cursory comparison of the two categories of complaints reveals the paucity of factual or legal issues common to both categories.  Accordingly, consolidation would produce no measurable gain in convenience or efficiency.  Indeed, it would cause unnecessary confusion, delay, and prejudice, owing to the marked differences between these two categories of cases.  It is for these reasons that the Fidelity Defendants – along with all parties to these cases other than the Revenue Sharing case plaintiffs – oppose the amalgamated consolidation sought here.

---

[2]  *Gilliam v. Fidelity Mgmt. & Research Co., et al.*, No. 04-11600-RGS (D. Mass. filed July 19, 2004); *Bogatin Family Trust v. Fidelity Mgmt. & Research Co., et al.*, No. 04-11642-RGS (D. Mass. filed July 23, 2004); *Awali, et al. v. Fidelity Mgmt. & Research Co., et al.*, No. 04-11709-RGS (D. Mass. filed Aug. 3, 2004);

3

At the same time, the Fidelity Defendants are not opposed to the <u>separate</u> consolidation of the five Revenue Sharing cases pending before Judge Stearns. Nor do they oppose a <u>separate</u> consolidation of the two Excessive Management Fee cases pending before Judge Wolf, and they expect to file a motion with Judge Wolf to accomplish that more limited consolidation in short order. Such separate consolidations would not only track the lines drawn by the legal and factual issues common to each group of cases separately, but would also produce substantial gains in convenience and efficiency with no corresponding burden for any party.

## ARGUMENT

Under Rule 42(a), this Court "has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." *Seguro de Servicio* v. *McAuto Sys. Grp., Inc.,* 878 F.2d 5, 8 (1st Cir. 1989) (citations omitted); *see also Data General Corp.* v. *Grumman Sys. Support Corp.,* 834 F. Supp. 477, 487 (D. Mass. 1992) (in exercising this discretion, the Court should "weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of any confusion, delay or prejudice that might result from consolidation") (quotation marks and citation omitted). Consolidation of all seven cases would result in confusion, delay, and prejudice for the parties in both categories of cases.

**I.   CONSOLIDATION WILL NOT LEAD TO ANY GAIN IN CONVENIENCE OR ECONOMIES IN THE USE OF JUDICIAL RESOURCES.**

In support of their motion, the Revenue Sharing plaintiffs recite a litany of allegations they claim are common to all seven of the "Complaints." These include: (i) the payment of excessive commissions to broker-dealers in exchange for "some form of rebate or kickback" (Pl.

---

*Groeschel v. Fidelity Mgmt. & Research Co., et al.*, No. 04-11735-RGS (D. Mass. filed Aug. 6, 2004); and *Fallert v. Fidelity Mgmt. & Research Co., et al.*, No. 04-11812-RGS (D. Mass. filed Aug. 19, 2004).

4

Mem. at 3); (ii) the defendants' direction of brokerage payments to broker-dealers that "favored Fidelity funds, which was a form of marketing that was not disclosed" and which was not properly evaluated by the mutual fund trustees (*id.*); (iii) the use of "Soft Dollars and/or excessive commissions … to pay for overhead expenses" (*id.* at 4); and (iv) the payment of excessive management fees to the investment adviser (*id.* at 3). Yet a review of the "Complaints" reveals that most of these claims are common only to the Revenue Sharing cases. Indeed, only *one* of these claims – under Section 36(b) for the payment of excessive management fees to the investment adviser – is common to all seven complaints. *Compare*, *e.g.*, *Bennett* Compl. ¶¶ 118-119 *with Gilliam* Compl. ¶¶ 104-110.

Yet even the Section 36(b) claims are only superficially common, as the factual bases allegedly underlying those claims are in fact quite different. Plaintiffs in the two Excessive Management Fee cases allege that the management fees are excessive because defendants have failed to share "the extraordinary economies of scale created by the Plaintiffs and the Funds" as the Funds have grown larger, and because the fees paid by FMRCo's non-mutual fund clients are lower. *Bennett* Compl. ¶ 119; *Haugen* Compl. ¶ 117. The Revenue Sharing plaintiffs assert an entirely different theory. They simply re-hash their Rule 12b-1, soft dollar and brokerage commission allegations, tacking on the assertion that such conduct also resulted in excessive management fees — *i.e.*, that certain defendants "violated Section 36(b) by improperly charging investors in the Fidelity Funds purported Rule 12b-1 marketing fees, and by drawing on Fidelity Funds assets to make undisclosed payments of Soft Dollars and excessive commissions" to brokers. *E.g., Gilliam* Compl. ¶ 107.[3] In short, the theory of the Excessive Management Fee

---

[3] Other paragraphs in the Revenue Sharing complaints confirm that the sole premise of the excessive management fee claim in that category of cases is the alleged charging of improper distribution fees under Rule 12b-1. *See, e.g., Gilliam* Compl. ¶¶ 66-75, 88, 96(e).

5

cases is that the advisory fees paid by five funds are excessive, while the theory of the Revenue Sharing cases is that certain distribution charges applicable to all Fidelity funds are improper. Thus, even though both categories of cases charge that the investment adviser violated its "fiduciary duty with respect to the receipt of compensation [or other] payments" under Section 36(b), the underlying facts to which that fiduciary obligation will be applied are different.

Furthermore, the mere presence of a Section 36(b) claim in the Revenue Sharing cases does not support consolidation because that claim neither is "central" to nor "predominates" in those cases. *See, e.g.,* Wright & Miller, Federal Practice & Procedure: Civil 2d § 2383 at 440-42 (Denial of consolidation appropriate where "the common issue is not a central one"); *Scardino* v. *Amalgamated Bank of New York*, No. CIV. A. 93-6740, 1994 WL 408180, (E.D. Pa. Aug. 2, 1994), at *2 (denying motion where the "common questions of law or fact … are not sufficiently predominant").

## II. THE DIFFERENCES BETWEEN THE TWO CATEGORIES OF CASES WILL LEAD TO CONFUSION, PREJUDICE, AND DELAY IF ALL SEVEN CASES ARE CONSOLIDATED.

Besides failing to achieve any economies, consolidation of the two group of cases will lead to unnecessary delay and case management burdens. Accordingly, the motion should be denied. *See* Wright & Miller § 2383 (consolidation may be denied if it "will cause delay in the processing of one or more of the individual cases"); Manual for Complex Litigation § 20.11 ("Cases should not be consolidated if it would result in increased delay and other unnecessary burdens on parties, such as having to participate in discovery irrelevant to their cases."); *id*. § 11.631 (consolidation "is also inappropriate where its principal effect will be to magnify unnecessarily the dimensions of the litigation").

6

### A.  The Scope And Content Of Discovery In The Two Categories Of Cases Will Be Materially Different.

The operative facts in the two categories of cases are entirely different. The Excessive Management Fee cases focus on the <u>size of the management fees</u> in light of the services rendered to the five mutual funds, the profitability of providing these services, the alleged economies of scale in the provision of these services, any separate ancillary benefits received by defendants as a result of the adviser's investment management activities, the fees charged by other advisers and by FMRCo to non-mutual fund clients, and the process by which the funds' board of trustees approved the investment management contracts. *See*, *e.g.*, *Haugen* Compl. ¶¶ 57-115.

The Revenue Sharing plaintiffs have a very different focus – namely, the investment adviser's and distributor's <u>practices in marketing and distributing shares</u> in the Fidelity mutual funds and the disclosure of that process. As a result, the claims in the Revenue Sharing cases revolve around the relationships between certain of the defendants and broker-dealers who sell shares in over 200 Fidelity mutual funds and execute the funds' securities trades. For example, the Revenue Sharing complaints allege payment of excessive brokerage commissions, use of directed brokerage as a form of undisclosed marketing, payments of distribution expenses in violation of Rule 12b-1, and the improper use of "soft dollars" and brokerage commissions to pay broker-dealers for the adviser's overhead expenses. *See*, *e.g.*, *Gilliam* Compl. ¶¶ 49-96. None of these allegations is made in the Excessive Management Fee cases.

These marked differences in the fact issues raised by the two categories of cases will create profound differences in the scope, scale, and substance of discovery. This, too, counsels against consolidation. *See* Manual for Complex Litigation § 11.631 (4th ed. 2004) ("Whether consolidation is permissible or desirable depends largely on the amount of common evidence in the cases."); *see also Liberty Lincoln Mercury, Inc.* v. *Ford Mktg. Corp.*, 149 F.R.D. 65, 81

7

(D.N.J. 1993) ("[W]here the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues").

The same is true for the periods of time relevant to the two categories of cases. In the Excessive Management Fee cases, the 1940 Act limits any recovery to the period of time beginning one year prior to the filing of the complaints in mid-2004. By contrast, the alleged class period in the Revenue Sharing cases covers 4½ years from July 1999 to November 2003. Thus, there is at most only a six-month overlap between the periods of time most relevant to the claims in these two categories of cases.

**B.      The Revenue Sharing Cases Present A Host of Procedural Issues And Requirements Not Present In The Excessive Management Fee Cases.**

Important procedural distinctions also exist between the two categories of cases. The Excessive Management Fee cases are straightforward. Although any damages recovered would be for the benefit of the five mutual funds, these cases are not subject to the demand requirements of Rule 23.1. *See Daily Income Fund v. Fox*, 464 U.S. 523, 535 n.11 (1984). The Excessive Management Fee cases are also to be tried to the Court, not to a jury. FMRCo and FMRC are answering the Excessive Management Fee complaints simultaneous with this opposition, and are prepared to proceed with discovery.

By contrast, the Revenue Sharing cases consist of both class action and derivative claims that erect a number of procedural hurdles not present in the Excessive Management Fee cases. The class action claims are subject to Rule 23, necessitating substantial motion practice. The derivative claims are subject to the requirements of Rule 23.1, and the applicable law of shareholder demand. For those claims sounding in fraud, the stringent pleading requirements of Rule 9(b) apply. *See, e.g.*, *Gilliam* Compl. ¶ 121. The Revenue Sharing plaintiffs are attempting to proceed on behalf of a number of Fidelity funds in which they do not own shares, raising

8

standing issues. The Fidelity Defendants intend to move to dismiss some or all of the claims made in the Revenue Sharing complaints, pursuant to Rules 9(b), 12(b)(6) and 23.1.

The Revenue Sharing cases, moreover, assert a variety of claims against a variety of different classes of defendants, many of which do not appear in the Excessive Management Fee cases. Protection of the Excessive Management Fee defendants from the prejudice of excessive and irrelevant discovery and the prejudice of admission of confusing evidence at trial warrants against consolidation with the Revenue Sharing cases.

*   *   *

## CONCLUSION

For the foregoing reasons, the motion of plaintiffs in the Revenue Sharing cases—which is opposed by plaintiffs in the Excessive Management Fee cases and by all defendants in all cases—should be denied.

Respectfully submitted,

| | |
|---|---|
| | /s/ James S. Dittmar, P.C. |
| *Of Counsel:* | James S. Dittmar, P.C. (BBO# 126320) |
| | Christopher D. Moore (BBO# 630651) |
| James N. Benedict | GOODWIN PROCTER LLP |
| Mark Holland | Exchange Place |
| Mary K. Dulka | 53 State Street |
| C. Neil Gray | Boston, Massachusetts 02109 |
| CLIFFORD CHANCE US LLP | Tel: 617.570.1000 |
| 31 West 52nd Street | |
| New York, New York 10019 | *Attorneys for Defendants Fidelity Management &* |
| Tel: 212.878.8000 | *Research Co., FMR Co., Inc., FMR Corp., Fidelity Distributors Corporation, Edward C. Johnson 3d, Abigail P. Johnson, Edward C. Johnson IV, Elizabeth L. Johnson, Peter S. Lynch, Laura B. Cronin, Robert L. Reynolds, Robert C. Pozen, and J. Gary Burkhead.* |

Dated: October 7, 2004

LIBA/1417524.5