**Appendix I**
**Comments From the Securities and Exchange Commission**

The following are GAO's comments on the Securities and Exchange Commission's May 10, 2000, letter.

## GAO's Comments

1. The Securities and Exchange Commission (SEC) described various changes since the 1980s to the fee disclosures that mutual funds are required to make. To acknowledge this, we have added a footnote to our discussion of the currently required disclosures that describes some of the changes made to these disclosure requirements over time.

2. SEC stated that our report should note that the current disclosure does provide investors with access to information on an annual basis that enables them to assess and understand the fees they bear and to effectively compare fees. We agree that disclosure of such information is currently required, and we have added additional language to our report to clarify that these disclosures are made annually. However, these disclosures present fund expense ratios as a percentage of fund assets and include an example of the likely amount of expenses to be incurred over various holding periods for a hypothetical $10,000 account. Furthermore, these reports are provided to investors only semiannually. Although investors can use this information to compare among funds, the additional disclosure we recommend is intended to supplement, not replace, the existing disclosures, and should serve to reinforce to investors the fact that they do pay for the services they receive from their mutual funds. The specific dollar amounts we recommend that funds disclose should also have the added immediacy of being unique to each investor and his or her account. By disclosing these additional dollar amounts on investors' quarterly account statements, funds will provide fee disclosures to investors more frequently than they currently do.

# Comments From the National Association of Securities Dealers Regulation, Inc.

Note: GAO comments supplementing those in the report text appear at the end of this appendix.



**Thomas M. Selman**
Vice President
Investment Companies/Corporate Financing

NASD Regulation, Inc.
1801 K Street, N.W., Suite 800
Washington, D.C. 20006-1500
202 728 8068
Fax 202 974 2732

May 8, 2000

Thomas J. McCool
Director, Financial Institutions and Markets Issues
U.S. General Accounting Office
Washington, D.C. 20548

Dear Mr. McCool:

Thank you for allowing us the opportunity to comment on your draft report entitled Mutual Fund Fees: Additional Disclosure Could Encourage Price Competition (April 19, 2000) (the "Report"). We have summarized in bullet form below our overall comments on the Report's recommendation, as well as certain technical comments on the Report. We would be happy to discuss our comments with you at your convenience.

As we have discussed, NASD Regulation shares your concern that some investors may "chase" performance, and we agree that investors also should consider fees, expenses and other issues when making an investment decision. We would be happy to work with you and your staff on these important policy questions.

    I.    Overall Comments on Report's Recommendation

- The Report concludes that "unlike many other financial products and services where the dollar amount paid by the customer is clearly and regularly disclosed, mutual fund disclosures do not include the actual dollar amounts of the fund fees individual investors pay."[1] Based on these conclusions, the Report recommends that the Securities and Exchange Commission and NASD Regulation, Inc. require mutual funds and certain broker/dealers to provide in periodic account statements "the dollar amount of mutual fund fees each investor paid . . . in addition to presently required fee disclosures."[2]

- The Report's recommendation raises several issues:

Now on p. 96.

[1] See Report, Chap. 7, pp. 1-2.

[2] See Report, Chap. 7, p. 5.

Now on p. 97.

**Appendix II**
**Comments From the National Association of Securities Dealers Regulation, Inc.**

Thomas J. McCool
May 8, 2000
Page 2

See comment 1.

- First, the Report seems to assume that mutual funds impose ongoing fund operating expenses, such as Rule 12b-1 fees and advisory fees, at the account level. In fact, funds impose these expenses at the entity level. Moreover, NASD member broker/dealers are generally required to send at least quarterly to all customers account statements that detail, among other things, all charges and debits imposed at the account level.

See comment 2.

- Second, the Report's recommendation may be difficult, if not impossible, to implement. Aside from the fact that mutual funds do not perform the shareholder-level accounting envisioned by the proposal, many broker/dealers would not have access to the information about the mutual fund's expenses necessary to comply with these rules.

See comment 3.

- Third, the Report seems to conclude that mutual fund markets are less than competitive because investors base their investment decisions more on performance than on the level of mutual fund fees. We share the concern that some investors may place too much reliance on past performance, and we agree that they also should consider other issues, such as a fund's fees and expenses. However, investors who focus solely on low expenses (such as some money market fund investors) may sacrifice performance that they might obtain if they were to consider other factors, such as a fund's investment objective and the quality of the fund adviser's investment management.

- Fourth, the Report seems to assume that other financial intermediaries provide full disclosure of itemized expenses that reduce the return on customers' investments. Rules governing these institutions may require them to provide certain disclosures in periodic account statements regarding account-level fees. However, these rules do not require disclosure of the dollar amount of operating expenses incurred at the entity level that reduce the return a customer earns on his or her investment. Similarly, the rules governing other unregistered collective investment vehicles, which operate analogously to mutual funds, do not require (and the GAO does not propose to require) disclosure of customer-specific entity-level expenses.

- Fifth, the Report does not address the fact that mutual funds present performance information net of expenses. Other financial intermediaries are cited as models for disclosure, without discussing the fact that these intermediaries frequently advertise performance numbers that do not reflect the fees charged to customers.

II. Other Technical Comments on Report

Now on p. 27; see comment 4.

- Chapter 1, page 7. The Report states that "NASD rules prohibit funds from charging a front-end load that exceeds 8.5 percent of the initial investment. Some mutual funds, known as 'no-load' funds, do not have sales charges." These sentences require some clarification.

**Appendix II**
**Comments From the National Association of Securities Dealers Regulation, Inc.**

Thomas J. McCool
May 8, 2000
Page 3

See comment 4.

- NASD Rule 2830 regulates NASD member broker/dealers that sell mutual funds, but does not regulate the funds themselves, since NASD Regulation has no jurisdiction over the mutual fund entities. Rule 2830(d) prohibits NASD member broker/dealers from offering or selling shares of any mutual fund or unit investment trust if the sales charges of such funds are deemed excessive under the rule. Additionally, the maximum permissible front-end and deferred sales load varies depending on certain factors, such as whether the fund offers certain rights of accumulation and quantity discounts, and whether the fund imposes an asset-based sales charge or service fee.

- Rule 2830(d)(3) prohibits NASD members from describing a mutual fund as "no load" or as having "no sales charge" if the fund has a front-end or deferred sales charge, or if the fund's total asset-based sales charges and service fees exceed 0.25% of average net assets per annum.

Now on p. 29; see comment 5.

- Chapter 1, page 11, footnote 7. We understand that the effective date of the Gramm-Leach-Bliley Act provisions that eliminate the bank exclusion from the definitions of "broker" and "dealer" under the Securities Exchange Act of 1934 is May 12, 2001 (not March 12, 2001).

Now on p. 42; see comment 6.

- Chapter 2, page 21, footnote 11. The Report's estimate of mutual fund adviser revenues was obtained by multiplying fund assets by operating expense ratios. Many mutual funds have waived various expenses, including adviser fees, for various reasons. If this estimate does not take into account fee waivers, it may be inaccurate.

Now on p. 74; see comment 7.

- Chapter 5, pages 16-17. In the third full paragraph on page 16, the Report discusses "Table 5.4" (which we believe should refer to Table 5.2) as showing the "two . . . primary distribution methods used by fund advisers." A fund investment adviser usually does not directly distribute fund shares. A mutual fund distributor, which is a registered broker/dealer, generally performs this function.

Again, we appreciate the opportunity to comment on the Report. Please feel free to contact me if you would like to discuss these comments further.

Sincerely,

*[signature: Thomas Selman]*

**Appendix II**
**Comments From the National Association of Securities Dealers Regulation, Inc.**

Thomas J. McCool
May 8, 2000
Page 4

cc:  Cody Goebel
     U.S. General Accounting Office

     R. Clark Hooper
     Thomas A. Pappas
     Joseph P. Savage
     NASD Regulation, Inc.

     John H. Komoroske
     NASD, Inc.