UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-----------------------------------------------------------x
:
CYNTHIA A. BENNETT et al.,                                  :
for the use and benefit of                                  :
FIDELITY MAGELLAN FUND, FIDELITY                            :
CONTRAFUND, FIDELITY GROWTH &                               :
INCOME PORTFOLIO I FUND, FIDELITY                           :   Oral Argument Requested
BLUE CHIP GROWTH FUND, and                                  :
FIDELITY LOW-PRICED STOCK FUND,                             :
                                                            :
                Plaintiffs,        :   No. 04-cv-11651-MLW
                                                            :   (Lead Case)
    v.                                                         :
                                                            :   No. 04-cv-11756-MLW
FIDELITY MANAGEMENT & RESEARCH                              :   (Consolidated Case)
COMPANY and FMR CO., INC.,                                  :
                                                            :
                Defendants.       :
-----------------------------------------------------------x

**FIDELITY INDEPENDENT TRUSTEES' MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

       The non-party witness Independent Trustees of the Fidelity Funds, who seek leave to be heard for the limited purpose of responding to plaintiffs' discovery motion, submit this memorandum in support of their motion to intervene and in opposition to plaintiffs' motion to compel testimony from them regarding their communications with counsel in preparation for their depositions.

**PRELIMINARY STATEMENT**

       Plaintiffs do not appear to dispute that confidential attorney-client discussions in deposition preparation sessions attended by counsel for a party as well as counsel for a

non-party testifying witness will be protected from discovery under the "common interest" doctrine so long as the party and the witness share a common interest in some element of the dispute. Plaintiffs' effort to compel the Independent Trustee witnesses to describe all attorney-client discussions that took place in any preparation session that defendants' counsel attended appears instead to be predicated on a narrower factual premise: that the Independent Trustees do not and cannot share any "common interest" with the defendant advisors to the Fidelity Funds relating to the subject matter of this litigation. Plaintiffs have contended that because the Independent Trustees act disinterestedly from and at arm's length with the defendant Fidelity advisors and exclusively on behalf of mutual fund shareholders in their annual negotiation of management and advisory contracts for the Fidelity funds (the "Management Contracts"), the Independent Trustees could not possibly share a protected "common interest" in this litigation with the advisors against whom they negotiated.

Plaintiffs' premise unsustainably disregards the difference between the Independent Trustees' position in negotiating the Management Contracts and their role as witnesses in an action attacking the contracts to which they agreed. Having negotiated and approved the contracts in dispute, and facing accusations that they acted irresponsibly in doing so, the Independent Trustees have confirmed in their testimony that they share with defendants the belief that the contracts are reasonable and that their actions in negotiating the contracts were responsible and in the best interest of Fidelity's shareholders. The Independent Trustees have also confirmed in their testimony their

belief that plaintiffs' maintenance of this lawsuit, and even the relief plaintiffs seek, is not in the best interests of the Fidelity Funds or the shareholders whom the Independent Trustees serve as fiduciaries.

The law is clear that the interests represented by two individuals or entities do not have to be identical in all respects, but only common in important respects, to support application of the common interest privilege. The interests of the trustees and the defendants are plainly common in important respects. Application of the well-recognized "common interest" privilege should accordingly lead to denial of this component of plaintiffs' motion to compel.[1]

## BACKGROUND

**A.      The Independent Trustees' Role**

Fidelity's Independent Trustees, who comprise a super-majority of the Board of Trustees of the Fidelity Funds, are charged by statute with negotiating and entering into Management Contracts with the defendant Manager and Advisor of those Funds, as fiduciaries for fund shareholders entrusted with ensuring the fairness and reasonableness of the compensation paid to defendants by the Funds. *See, e.g.*, Ex. 1, Excerpts from Fidelity Magellan Fund Semiannual Report, Sept. 30, 2006, at 33 (describing process of

---

[1]     The Independent Trustees also adopt the arguments of defendants on this point and with respect to the redactions of legal advice and attorney work product from board meeting minutes, and leave argument of the other issues presented by plaintiffs' motion to the defendants.

Board approval of investment advisory contracts and management fees).² At regular meetings held eleven months per year and in numerous additional conversations and reviews, the Trustees request, receive, and review a wide range of information bearing on the Management Contracts. *Id*. Acting on behalf of the Funds and their shareholders, the Independent Trustees evaluate the terms of the Management Contracts for the Funds, and negotiate with Fidelity to ensure that the contracts and fees are fair and reasonable in light of a broad range of factors that courts have directed them to consider.

The four Trustees whom plaintiffs have deposed so far have confirmed their understanding of this obligation. *See* Ex. 2, excerpts from deposition of Independent Trustee and Audit Committee Chair Marie Knowles, at 68-69 ("My general understanding is that my obligation as a trustee is to ensure that the contracts would be reasonable and would be representative of the type of arrangements, including the fee, that would be obtained by an arm's length negotiation"); Ex. 3, excerpts from deposition of former Chair of the Independent Trustees Marvin Mann, at 54 ("the trustees are responsible for negotiating the contracts on behalf of the shareholders for the advisory function"); Ex. 4, excerpts from deposition of current Chair of Independent Trustees Ned Lautenbach, at 41 ("what we're trying to work through with Fidelity for the interest of the shareholders is that they get not only reasonable fees, but they get good management performance, they get excellent service and support. So it's the whole package [that]

---

²     Citations to "Ex.__" refer to Exhibits to the accompanying Declaration of Sandra Sue McQuay.

4

we're trying to provide"). For each year and each fund at issue in this litigation, the Independent Trustees have voted to approve the Management Contract following a conclusion, after lengthy review and evaluation, that they have considered all factors material to evaluating the Contract terms, have received all necessary expert legal advice and other factual support for their analysis, have energetically examined the Contract terms among themselves and with Fidelity, and believe that the Contract terms and fee structure are fair, reasonable and in the interests of Fund shareholders. *See* Ex. 1, Magellan Fund Semiannual Report at 40; Ex. 2, Knowles Dep. at 179; Ex. 4, Lautenbach Dep. at 119. As the Independent Trustees' current Chair Ned Lautenbach explained in his deposition, in voting to approve the Management Contracts the Trustees "struck a contract with Fidelity representing the shareholders. We think it's a right and appropriate contract, and we think it's fair, and we think it's in the best interests of the shareholders." Ex. 4, Lautenbach Dep. at 243.

B.  **The Complaint**

The plaintiff shareholders of five Fidelity funds have claimed that Fidelity has breached its fiduciary duties under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq*., by charging excessive fees to manage and advise the funds, and have alleged (Compl. ¶ 129) that the investment advisory and administrative fees to which the Independent Trustees have agreed "are and continue to be disproportionate to the services rendered and not within the range of what would have been negotiated at arm's length" and are "grossly excessive in light of the true cost of

providing administrative services to the Funds." The Complaint contains extensive allegations directed to the integrity and quality of the Independent Trustees' review of the Management Contracts, *see id*. ¶¶ 28-30, 114-122, including allegations that deficiencies in the Trustees' process for assessing and negotiating the management contracts conclusively establish Fidelity's breach of fiduciary duty, *see id*. ¶ 29, that the trustees have not received or insisted on receiving adequate information to review the Management Contracts, *id*. ¶ 123, and that the trustees lack the independence necessary to exercise their oversight responsibility. *Id*. ¶ 122. In relief, plaintiffs demand, among other things, payment of damages amounting to the return of fees paid to Fidelity pursuant to the Management Contracts and a declaration that the contracts that the Trustees negotiated and approved are "void *ab initio*." *Id*. ¶ 131.

Although the Independent Trustees are not defendants – because section 36(b) authorizes only actions against the recipients of assertedly excessive fees – the complaint is unquestionably a direct frontal assault on the integrity of the trustees, the quality of their work and the reasonableness of the Management Contracts they have negotiated and entered on behalf of Fund shareholders.

C. **The Discovery Dispute**

The Independent Trustees' role in the negotiation and execution of the Management Contracts is sufficiently important that plaintiffs have already deposed four current or former Independent Trustees and have asked to depose two more. Each trustee prepared for his or her deposition in meetings with the Independent Trustees' counsel

6

from Debevoise & Plimpton.  Most of these preparation sessions were also attended by Fidelity's in-house and outside counsel.  All participants in these sessions treated them as, and intended them to be, confidential attorney-client communications for the purpose of seeking and providing legal advice.

During the depositions of three of the four Independent Trustees, plaintiffs' counsel asked the witnesses to describe their communications with counsel during those preparation sessions, prompting objections by counsel and instructions to not to answer on the grounds of attorney-client privilege.  Ex. 2, Knowles Dep. at 64-67; Ex. 4, Lautenbach Dep. at 240-43; Ex. 5, excerpts from the deposition of Independent Trustee William Stavropoulos at 65-68.

While plaintiffs have contended that any meeting between the Independent Trustees and their counsel that was also attended by counsel for the defendants cannot be protected under the common interest doctrine because the defendant manager and advisor are inherently adverse to the Independent Trustees as fiduciaries charged with advancing the interests of Fund shareholders, the Independent Trustees have made clear in their testimony that they do not accept plaintiffs' view.  The Trustees understandably do not believe that their independence from Fidelity in negotiating the Management Contracts at arm's length as representatives of the shareholders is inconsistent with their support of their conduct and decision-making that plaintiffs are now attacking, or with their support of the Management Contracts to which they ultimately agreed and which plaintiffs are now seeking to characterize as excessive and unfair.  The Independent Trustees who have been deposed have uniformly rejected plaintiffs' suggestion in deposition questions that

7

their defense of the contracts against plaintiff's effort to force lower fees is irreconcilable with their fiduciary duties to shareholders. As they have explained, their goal is not necessarily to achieve Management Contracts with the lowest possible fees and to support all efforts to lower fees further, as plaintiffs have suggested, but rather to achieve Management Contracts that are fair and reasonable, taking into account such considerations as the priority shareholders place on Fidelity's shareholder services, the undesirability of pressing for lower fees that result in inferior services, the success and value of Fidelity's practice of reinvesting management fee proceeds in expanding product offerings and improved shareholder services, and Fidelity's entitlement to earn a reasonable profit for its efforts and successes.

Asked whether "[y]our charge is then to get the best fee for all of the funds, collectively," for example, Mr. Mann testified:

> No. My charge is to get a reasonable fee for the shareholders, and that reasonable fee must provide for the advisor to make a profit so that he can fund investments in the business that are required to support the shareholders and continue to add resources and get the best people that he can find, etc., and train them and educate them and do all things that a business has to do to serve the shareholders. Ex. 3, Mann Dep., at 286-87.

Similarly, Mr. Lautenbach responded to plaintiffs' suggestion that he ought to support plaintiffs against the defendants, rather than recognize any common interest with defendants in opposing plaintiffs' litigation claims, because he should support any effort to obtain a reduction in fees for the benefit of shareholders without regard to its legal merit, by explaining:

> Well, if all the services were performed as they are today and everything that the shareholders were to get were to get it tomorrow and that was for less money, I wouldn't be opposed to that.  But I doubt that would be the case.  We spend a lot of time trying to understand what it costs to do this and the fees that go with it.  And so when we agree to a management contract, we agree not only to fees but service levels, performance, et cetera.
>
> And what we're trying to work through with Fidelity for the interest of the shareholders is that they get not only reasonable fees, but they get good management performance, they get excellent service and support.  So it's the whole package . . . .  Ex. 4, Lautenbach Dep., at 41.

The Independent Trustees are plainly correct in their view that they share a common interest with the defendants in defending the processes that the Independent Trustees pursued in negotiating and approving the Management Contracts for the benefit of shareholders, and in defending the terms of the Management Contracts that they ultimately executed as fair and in the interests of shareholders.  The former Chairman of the Independent Trustees, Marvin Mann, specifically described this shared interest in defending the Management Contracts against plaintiffs' claims in his deposition testimony on May 31, 2007, explaining that he agreed with Fidelity's defense of the action and stating: "I really don't think what you're trying to achieve is in the interests of the fund shareholders . . . Because I think the trustees and the management of the funds have done a very good job of providing good products at competitive fee rates, and those fees have paid for excellent people who manage the investment of the funds and service and support the shareholders."  Ex. 3, Mann Dep. at 127.  Similarly, when asked about his meetings to prepare for his deposition and his relationship to Fidelity, the current Chairman, Ned Lautenbach, explained that the Trustees "struck a contract with Fidelity representing the shareholders.  We think it's a right and appropriate contract, and we

think it's fair, and we think it's in the best interests of the shareholders. And it's why I'm a party to that and I'm willing to come forward and discuss what [the Trustees] went through to make sure it is a fair and right contract." Ex. 4, Lautenbach Dep. at 243.

## ARGUMENT

The Trustees' communications with counsel in preparation for their depositions are protected from discovery by the attorney-client privilege and by the common interest doctrine, which extends the privilege to "communications made by [a] client or [a] client's lawyer to a lawyer representing another in a matter of common interest." *Cavallaro v. U.S.*, 284 F.3d 236, 249 (1st Cir. 2002) (internal citations omitted); *see also Strougo v. BEA Assoc.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001); *cf. Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (explaining that the attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client" free from the fear of disclosure). The common interest doctrine is not an independent basis for protection, but rather an exception to the general rule that disclosure of attorney-client privileged information to a third-party constitutes a waiver of the privilege. *See Cavallaro*, 284 F.3d at 250; *Ken's Foods Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002). The common interest doctrine simply expands the scope of the attorney-client privilege to communications including counsel for multiple parties on subjects of common interest. *See United States v. BDO Seidman*, 2007 WL 1880208, at *7 (7th Cir. July 2, 2007) (observing that the common interest doctrine applies "to the full range of

communications" covered by the attorney-client privilege). The doctrine can apply where two entities sharing confidential communications with counsel are represented by separate counsel, *see Strougo*, 199 F.R.D. at 520, and where one of the parties to the communication is a non-party to the litigation. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 270, 274 (N.D. Ill. 2004).

To invoke the common interest doctrine, the parties "must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders." *Ken's Foods Inc.*, 213 F.R.D. at 93. The Independent Trustees plainly did this when they permitted counsel for the defendants to attend the preparation sessions along with the Independent Trustees' counsel, while treating all of these sessions as privileged and confidential discussions.

The complaint's own allegations demonstrate a commonality of interests between Fidelity and the Trustees. The complaint pointedly challenges the Independent Trustees' judgment, the adequacy of their efforts on behalf of shareholders and the validity of the Management Contracts they voted to approve. A judgment accepting plaintiffs' claim that Fidelity charged excessive management fees in breach of its fiduciary duty under Section 36(b) and granting plaintiffs' request that the Court "void" the Management Contracts, Compl. ¶ 131(a), would be adverse to the Independent Trustees in effect and would be contrary to their desires and beliefs on behalf of shareholders. Having determined that the management and advisory relationship created by the Management Contracts is fair, reasonable, and beneficial to shareholders, the Independent Trustees

11

now share an interest in supporting the contracts against plaintiffs' attempts to dismantle them.

The Independent Trustees' role as disinterested reviewers and negotiators of the Management Contracts who were counterparties in that capacity to defendants does not alter their common interest with defendants, once they have voted their approval, in supporting the contracts against what they believe to be unwarranted attacks and efforts to reduce fees in ways that they do not believe will ultimately serve shareholders' interests. Courts routinely permit parties to rely on the common interest doctrine when, like Fidelity and the Trustees, they may be adverse to each other in one context but are communicating on topics of joint interest in the context of the litigation. *See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 228 (1st Cir. 2005) (common interest doctrine applies even when the parties sharing information on a matter of common legal interest have a "conditionally adverse interest" on another front); *Coregis Ins. Co. v. Lewis, Johs, Avallone, Avlies, & Kaufman LLP*, 2006 WL 2135782, at *15-16 (E.D.N.Y. July 28, 2006) (applying common interest doctrine where insurer and insured share legal interest with respect to defense of claims even though they are contemporaneously adverse with respect to coverage); *In re Mortgage & Realty Trust v. Zim Co.*, 212 B.R. 649, 653 (C.D. Cal. 1997) (common interest doctrine "does not require a complete unity of interests among the participants" to apply); *In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975) (applying privilege under common interest doctrine even when litigation between codefendants is foreseeable).

Plaintiffs' reliance on the so-called "fiduciary exception" to vitiate the Trustees' claim of privilege is misplaced. The fiduciary exception does not amount to the radical rule plaintiffs seem to contemplate, providing that communications between a fiduciary and counsel are unprotected by privilege whenever a beneficiary brings suit and wants the information. Instead, it applies only in the narrow and circumscribed circumstances when the legal advice sought and obtained by the fiduciary was clearly sought and obtained for the benefit of the party seeking discovery. *See Wachtel v. Health Net, Inc.*, 482 F.2d 225, 232 (3d Cir. 2007). Plaintiffs cannot argue around the narrow contours of this exception merely by claiming that any discussion between counsel and the Independent Trustees in preparation for their depositions must have related to their performance of their fiduciary duties. The attorney-client communications in preparation for depositions that plaintiffs seek to discover do not satisfy the test of having been pursued for the benefit of plaintiffs. Courts have consistently recognized, to the contrary, that the fiduciary exception simply does not apply to communications with counsel in connection with pending litigation. *See United States v. Mett*, 178 F.3d 1058, 1065 (7th Cir. 1999); *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992); *Wachtel*, 482 F.3d at 233.

The Independent Trustees plainly share a common interest with the Fidelity defendants on the matters that were the subject of attorney-client communications in the presence of defendants' counsel in preparation for the depositions. Plaintiffs' contention that they should not share this interest is legally unfounded and contrary to the testimony

13

of the Independent Trustee witnesses plaintiffs have deposed.  Plaintiffs' effort to pierce the privilege attached to these discussions that were intended to be confidential, and effectively to prevent further participation by counsel for the Fidelity managers and advisor in privileged discussions with the Trustees and their counsel about matters of common interest, should be rejected.

## **CONCLUSION**

For the reasons stated, the Independent Trustees' motion to intervene should be granted and plaintiffs' motion to compel testimony regarding discussions during the Independent Trustees' preparation for their depositions in this litigation should be denied.

Dated:   July 9, 2007
        New York, New York

                                      Respectfully submitted,

                                      By:   ___/s/ [Sandra Sue McQuay]_____
                                      Sandra Sue McQuay  (BBO No. 340120)
                                      SULLIVAN, WEINSTEIN & McQUAY
                                      2 Park Plaza
                                      Boston, Massachusetts  02116
                                      Tel: (617) 348-4355

                                      John S. Kiernan (*pro hac vice*)
                                      Shannon Rose Selden (*pro hac vice*)
                                      DEBEVOISE & PLIMPTON LLP
                                      919 Third Avenue
                                      New York, New York  10022
                                      Tel: (212) 909-6000
                                      Fax: (212) 909-6836

                                      Counsel to the Fidelity Independent Trustees