```
                    VOLUME: I
                    PAGES:  1 to 302
                    EXHIBITS: 79 to 92

        UNITED STATES DISTRICT COURT
         DISTRICT OF MASSACHUSETTS


 Civil Action No. 04-CV-11651-MLW (Lead case)
 No. 1:04-CV-11756-MLW (Consolidated case)


CYNTHIA A. BENNETT, ET AL      )
         Plaintiffs,           )
                               )
v.                             )
                               )
FIDELITY MANAGEMENT &          )
RESEARCH COMPANY and FMR       )
CO., INC.,                     )
         Defendants.           )
                               )
```

VIDEOTAPED DEPOSITION OF MARIE LOUISE KNOWLES, called as a witness on behalf of the Haugen Plaintiffs, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Jeanette N. Maracas, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Goodwin Procter, LLP, 53 State Street, Boston, Massachusetts, on Tuesday, May 15, 2007, commencing at 9:00 a.m.

Page 62

```
 1  Q. I'm asking based on your review of this          10:33:23
 2     document alone within the last month or so.      10:33:26
 3  A. Well, I believe that you are basically           10:33:33
 4     contending that the fees are -- the fees         10:33:41
 5     that are paid by the fund shareholders in        10:33:48
 6     five of the Fidelity funds are not               10:33:54
 7     reasonable.                                      10:34:04
 8  Q. And who do you understand the plaintiffs         10:34:05
 9     to be?                                           10:34:06
10         MR. BENEDICT: Objection to the               10:34:15
11     extent it calls for legal conclusion on the     10:34:17
12     part of the witness.                             10:34:19
13  Q. You can answer, if you can.                     10:34:22
14  A. Well, it's listed as a number of individuals    10:34:24
15     who I presume are shareholders in these         10:34:27
16     funds.                                           10:34:32
17  Q. And do you also see that in the caption,        10:34:33
18     after the names of the individual people it      10:34:35
19     says "for the use and benefit of," and then     10:34:38
20     there are a number of Fidelity funds listed?    10:34:40
21  A. Yes.                                             10:34:43
22  Q. So at least according to this consolidated      10:34:47
23     complaint document, the funds are listed as     10:34:50
24     plaintiffs, is that correct?                    10:34:53
25         MR. KIERNAN: Objection to form.             10:34:55
```

Page 63

```
 1     He's simply asking you if in the caption of     10:34:56
 2     this document, the funds are listed as          10:34:59
 3     plaintiffs. You can answer that question.       10:35:00
 4  Q. That's right.                                   10:35:02
 5  A. In the caption of this document, the funds     10:35:02
 6     are listed as plaintiffs.                        10:35:05
 7  Q. Are you familiar with the names of the         10:35:08
 8     defendants that are listed, Fidelity            10:35:12
 9     Management & Research Company and FMR Co.,     10:35:14
10     Inc.?                                            10:35:18
11  A. Yes, I am.                                      10:35:19
12  Q. How are you familiar with Fidelity Management 10:35:21
13     & Research Company?                             10:35:25
14  A. Fidelity Management & Research Company         10:35:26
15     is the organization that manages the funds     10:35:29
16     and Fidelity or FMR Co., Inc., I believe,      10:35:44
17     is the parent organization which includes      10:35:49
18     Fidelity Management Research Company and       10:35:55
19     other organizations that serve as fund         10:35:58
20     service providers.                              10:36:01
21  Q. So without getting too much into the legalese 10:36:08
22     of all of this, you understand the defendants 10:36:10
23     to be the advisors of the funds?               10:36:12
24  A. The advisor and the parent company which       10:36:19
25     includes the service providers to the funds.   10:36:27
```

Page 64

```
 1  Q. Okay. And you are a trustee for the funds,     10:36:29
 2     is that correct?                                 10:36:35
 3  A. That's correct.                                  10:36:35
 4  Q. Do you have any duties or obligations as a     10:36:36
 5     fund trustee to either of the defendants that  10:36:41
 6     are listed in the complaint?                    10:36:45
 7  A. No, I do not.                                    10:36:47
 8  Q. What have you done in preparation for your     10:36:55
 9     deposition other than read the complaint on    10:36:58
10     your own?                                       10:37:01
11  A. I have reviewed some of the documents that     10:37:07
12     have been provided you, provided to you in     10:37:14
13     the discovery process.                          10:37:16
14  Q. Have you met with counsel?                     10:37:20
15  A. I have been advised by my counsel, yes.        10:37:23
16  Q. Have you had in-person meetings with your     10:37:27
17     attorney?                                       10:37:30
18  A. Yes.                                            10:37:30
19  Q. And that's the gentleman seated to your left  10:37:31
20     here or members of his firm?                    10:37:34
21  A. Correct.                                        10:37:35
22  Q. Do you know how many people or lawyers you've 10:37:38
23     met with who are part of your attorneys? In   10:37:40
24     other words, has it been just one attorney     10:37:46
25     or more than one attorney from that firm?     10:37:48
```

Page 65

```
 1  A. One or more, but not a bunch.                   10:37:50
 2  Q. And the name of that firm is what?             10:37:53
 3  A. Debevoise.                                      10:37:57
 4  Q. Does Debevoise represent all of the Fidelity  10:37:59
 5     trustees?                                       10:38:04
 6  A. Yes, and I have also met with attorneys       10:38:04
 7     representing the defendants.                    10:38:15
 8  Q. Why, if your obligation is to the funds and   10:38:18
 9     the funds are plaintiffs, are you meeting      10:38:23
10     with attorneys for the defendants?             10:38:26
11         MR. KIERNAN: Objection and instruct        10:38:29
12     you not to answer.                              10:38:29
13         MR. WOERNER: On what basis?                10:38:31
14         MR. KIERNAN: It's attorney-client         10:38:32
15     privilege.                                      10:38:33
16         MR. WOERNER: How can it be                 10:38:34
17     attorney-client privilege? Mr. Benedict or    10:38:36
18     his firm is not her attorney.                   10:38:38
19         MR. KIERNAN: I've instructed the          10:38:39
20     witness.                                        10:38:41
21         MR. WOERNER: Okay.                          10:38:42
22  Q. Are you going to follow your attorney's        10:38:42
23     instruction?                                    10:38:45
24  A. You bet.                                        10:38:45
25  Q. How many attorneys from Mr. Benedict's firm  10:38:46
```

Page 66

```
 1   have you met with?                      10:38:50
 2         THE WITNESS: I'm allowed to answer 10:38:57
 3   that one?                               10:38:58
 4         MR. KIERNAN: Yes.                 10:38:58
 5   A. Primarily two.                       10:39:02
 6   Q. Who are?                             10:39:04
 7   A. Seated here.                         10:39:07
 8   Q. Two of the lawyers seated here in the room  10:39:09
 9   today?                                  10:39:10
10   A. Right.                               10:39:11
11   Q. How many times -- I will represent to you   10:39:16
12   that they're attorneys from the firm of 10:39:21
13   Milbank Tweed. How many times have you met  10:39:23
14   in preparation for your deposition with
15   attorneys when Milbank Tweed lawyers were
16   present?                                10:39:29
17   A. Couple of times.                     10:39:29
18   Q. Have you ever met with your attorneys from  10:39:35
19   Debevoise separate from where there was no  10:39:40
20   attorney from Milbank Tweed present in  10:39:42
21   preparation for your deposition?        10:39:48
22   A. Not in specific preparation for my   10:39:58
23   deposition.                             10:40:03
24   Q. So all of the times you've met with your    10:40:03
25   attorneys in preparation for your deposition,  10:40:06
```

Page 67

```
 1   one or more attorneys from the defendants,     10:40:08
 2   Milbank Tweed, the Milbank Tweed firm have     10:40:12
 3   also been present?                      10:40:16
 4   A. To my recollection.                  10:40:17
 5   Q. To your recollection, yes?           10:40:20
 6   A. Yes, to my recollection, yes.        10:40:21
 7   Q. Have you ever seen a document or been told  10:40:33
 8   a document exists to the effect of a joint  10:40:35
 9   defense agreement?                      10:40:40
10   A. I believe so, but that's a technical legal  10:40:46
11   term. I'm not exactly sure what documents  10:40:54
12   have been prepared between the attorneys for  10:41:00
13   the trustees and the attorneys for the  10:41:06
14   defendants.                             10:41:24
15   Q. And I'm sorry if I've asked you this  10:41:24
16   previously, but do you know who is paying  10:41:27
17   the fees of the Debevoise firm to represent  10:41:29
18   you and any of the other trustees in this  10:41:35
19   litigation?                             10:41:38
20   A. I believe the fund shareholders.     10:41:39
21   Q. And you understand that none of the trustees  10:41:46
22   have been named as parties to this case? 10:41:48
23   A. That's correct.                      10:41:51
24   Q. You mentioned that you've reviewed the  10:42:09
25   consolidated complaint and I think you said  10:42:12
```

Page 68

```
 1   you reviewed some other documents. Do you  10:42:13
 2   remember any documents in specific other  10:42:15
 3   than the complaint that you looked at in  10:42:17
 4   preparation for your deposition?        10:42:20
 5         MR. BENEDICT: Objection. It calls 10:42:23
 6   for a yes or no.                        10:42:33
 7         MR. KIERNAN: You can answer that. 10:42:34
 8   A. I reviewed a variety of documents, including  10:42:35
 9   documents that were prepared as part of the  10:42:42
10   15C process, contracts for at least one of  10:42:45
11   the named funds with respect to the transfer  10:43:00
12   agent, services contracts with respect to  10:43:05
13   management services, contracts. That would  10:43:09
14   be about it for the contracts. And various  10:43:15
15   other presentations that have been given to  10:43:23
16   the trustees to aid us in the fulfillment  10:43:27
17   of our duties to approve the contracts. 10:43:34
18   Q. What are your duties, as you understand  10:43:41
19   them as a trustee, with respect to the  10:43:43
20   contracts between the defendants and the  10:43:47
21   funds at issue in this case?            10:43:50
22         MR. KIERNAN: Object to form. As   10:43:53
23   you know, that's a legal question, but you  10:43:55
24   can give your general understanding.    10:43:57
25   A. My general understanding is that my  10:43:59
```

Page 69

```
 1   obligation as a trustee is to ensure that  10:44:01
 2   the contracts would be reasonable and would  10:44:05
 3   be representative of the type of        10:44:17
 4   arrangements, including the fee, that would  10:44:21
 5   be obtained by an arm's length negotiation.  10:44:23
 6   Q. And I think in the context of some questions  10:44:34
 7   I asked you earlier this morning, you've also  10:44:38
 8   used the term "arm's length negotiation," 10:44:40
 9   fair?                                   10:44:44
10   A. Fair.                                10:44:44
11   Q. What is your understanding of what that term  10:44:45
12   means with respect to your duty as a trustee  10:44:48
13   to the Fidelity funds?                  10:44:51
14         MR. KIERNAN: Again, object to form, 10:44:55
15   legal question. You can give your general  10:44:58
16   understanding.                          10:45:00
17   A. My understanding would be that an "arm's  10:45:06
18   length negotiation," quotes, would be   10:45:11
19   something that would be available in the  10:45:18
20   marketplace, in a marketplace. In respect  10:45:28
21   to these funds, the mutual fund business is  10:45:38
22   a very competitive marketplace and so there  10:45:42
23   is a lot of information about the terms that  10:45:51
24   would be indicative of marketplace pricing  10:46:07
25   and services.                           10:46:11
```

Page 178

```
 1     coordination of that.                          02:39:51
 2  Q. And so do independent trustees simply give     02:39:52
 3     their question to outside counsel who then     02:39:58
 4     compiles it all?                               02:39:59
 5  A. Yes, in general.                               02:40:00
 6  Q. And --                                         02:40:03
 7  A. Although -- I'm sorry.  I'm going to be a      02:40:05
 8     little more expansive.  Although any of us     02:40:06
 9     can ask a question of Fidelity management      02:40:09
10     any time we want to, but generally we          02:40:11
11     coordinate them through Ken Berman.            02:40:16
12  Q. What is the timing of the preparation of       02:40:26
13     this document vis-a-vis when you get the       02:40:28
14     profitability material and any material that   02:40:32
15     you're looking at for contract renewal?  Is    02:40:34
16     this after you get the material and before     02:40:39
17     you vote on contract renewal?                  02:40:41
18  A. This particular document says 2004 Management  02:40:48
19     Contract Renewal so, in general, yes, we       02:40:51
20     would have received the information.  We       02:40:54
21     receive information all year long that is      02:40:58
22     used in the 15C process and so this is kind    02:41:01
23     of at the end of that process.                 02:41:06
24  Q. But before you vote?                           02:41:08
25  A. Yes.                                           02:41:09
```

Page 179

```
 1  Q. When you do vote, do you vote on each of       02:41:09
 2     the contracts of each of the funds             02:41:15
 3     individually?                                  02:41:23
 4  A. Any specific contract, any fund who we         02:41:23
 5     specifically want to carve out from the        02:41:29
 6     general resolutions we would vote on           02:41:33
 7     separately or choose not to vote, as the       02:41:36
 8     case may be.  But no, we don't go through      02:41:38
 9     the whole list of 350 funds individually.      02:41:41
10     I'm not being articulate.  If the contracts    02:41:46
11     are for equity funds and all but two are       02:41:49
12     satisfactory to us, we might vote on the       02:41:55
13     group that was all but the two and ask them    02:41:59
14     to go back and think about the two that are    02:42:01
15     outstanding some more, or we might hold up     02:42:04
16     all of the contracts until they went back      02:42:07
17     and addressed the issues that we still had     02:42:09
18     with the two funds.                            02:42:12
19  Q. So do you actually review each of the          02:42:15
20     contracts of each of the funds on an           02:42:16
21     individual basis?                              02:42:18
22  A. I rely on outside counsel to do that for me.   02:42:19
23  Q. What do you mean, you rely on outside          02:42:24
24     counsel?  How do you rely on them?  You        02:42:28
25     actually do not read the contracts?  You have  02:42:30
```

Page 180

```
 1     outside counsel read them and make             02:42:35
 2     recommendations to you?                        02:42:35
 3  A. I read some of the contracts.  The contracts   02:42:46
 4     for each individual fund are part of the       02:42:46
 5     package that we get when we open up a fund.    02:42:48
 6     And if a contract is changed, we would see     02:42:51
 7     changes to the contract, contract form         02:42:54
 8     usually, these standard contracts between      02:42:58
 9     Fidelity and the funds, and so when we change  02:43:01
10     fees, those numbers are dropped in and I       02:43:04
11     rely on outside counsel to make sure that      02:43:06
12     the documentation reflects that which we       02:43:10
13     have decided as a board.                       02:43:14
14  Q. But are you not negotiating each contract      02:43:16
15     on an arm's length basis with Fidelity?        02:43:17
16  A. I think you and I are hung up with the word    02:43:24
17     "contract."  We are negotiating the terms      02:43:29
18     of the contract and there is a written         02:43:31
19     document that reflects those terms, and        02:43:35
20     that written document is something that is     02:43:40
21     worked on by the attorneys.  I don't have      02:43:47
22     the expertise to write a management contract   02:43:51
23     between -- that's a legal job.                 02:43:57
24  Q. Right, but we talked earlier about how at      02:43:59
25     least with respect to the Magellan fund and    02:44:02
```

Page 181

```
 1     Contrafund and I'm assuming a bunch of the     02:44:04
 2     equity funds, there's generally three main     02:44:07
 3     contracts.  There's a management contract, a   02:44:10
 4     transfer agent contract and a distribution     02:44:12
 5     contract.  Is that right?                      02:44:14
 6  A. That's right.                                  02:44:16
 7  Q. And I suppose from one fund to another there   02:44:16
 8     may be a slight difference, but there's        02:44:19
 9     probably at least two contracts typically      02:44:21
10     per fund on average, two or three?             02:44:23
11  A. Well, there would be three contracts at least  02:44:26
12     per fund.                                      02:44:29
13  Q. You've got 350 funds so we're dealing with     02:44:30
14     literally hundreds of contracts, is that       02:44:34
15     right?                                         02:44:35
16  A. Yes.                                           02:44:35
17  Q. So do you as a board pay attention to the      02:44:36
18     details of each of those hundreds of           02:44:40
19     contracts each year that are renewed with      02:44:43
20     Fidelity?                                      02:44:47
21        MR. BENEDICT:  Objection.  Asked and        02:44:48
22     answered.  She just said she relied on our     02:44:49
23     outside counsel to review the written          02:44:53
24     documents.                                     02:44:54
25        MR. KIERNAN:  Objection to the word         02:44:55
```