UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT, GUY E. MILLER, NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of THE FIDELITY MAGELLAN FUND, FIDELITY CONTRAFUND, FIDELITY GROWTH & INCOME PORTFOLIO I FUND, FIDELITY BLUE CHIP GROWTH FUND, and FIDELITY LOW-PRICED STOCK FUND,<br><br>Plaintiffs,<br><br>vs.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC.,<br><br>Defendants. | CIVIL NO. 1:04-cv-11651-MLW (Lead Case)<br><br>CIVIL NO. 1:04-cv-11756-MLW (Consolidated Case) |

## DECLARATION OF ROBERT GLENN HUBBARD, Ph.D.

Pursuant to 28 U.S.C. § 1746 and under penalty of perjury, I, Robert Glenn Hubbard, hereby declare as follows:

1. I make this Declaration in support of Defendants' Opposition to Plaintiffs' Renewed Motion to Compel Discovery.

2. I have been retained by Defendants as a consulting expert with respect to, among other things, (a) the economies of scale that may exist at Fidelity in connection with Fidelity's provision of mutual fund services to retail investors, and (b) whether and to what extent any economies of scale that do exist have been shared with the funds at issue in this case and their shareholders.

3. I make this declaration based on personal knowledge, after reviewing the Declaration of Plaintiffs' experts Steve Pomerantz and James D. Lamb, filed in support of Plaintiffs' Renewed Motion to Compel to Discovery.

4. I am qualified to render opinions on the mutual fund industry, including the possible existence of economies of scale at mutual fund providers, in light of my education and experience. I am

1

currently the Dean of the Graduate School of Business of Columbia University, where I hold the Russell L. Carson Professorship in Finance and Economics. I am also a Professor of Economics in the Department of Economics at Columbia University. Prior to joining the Columbia faculty in 1988, I taught in the Department of Economics at Northwestern University. I have also served as a faculty member, visiting faculty member and fellow at multiple universities and institutions, and have served as an advisor or consultant to numerous government agencies. From 1991 to 1993, I served as Deputy Assistant Secretary (Tax Analysis) of the U.S. Department of the Treasury, and from 2001 to 2003 as Chairman of the President's Council of Economic Advisors. My professional work has centered on problems in corporate finance, public economics, industrial organization, monetary economics, and natural resource economics. I have authored more than 100 research articles, edited a number of books, and authored textbooks on money and financial markets, and the principles of economics.

5.    Based on my experience and previous research, the portfolio manager compensation data that Plaintiffs seek in their Renewed Motion would not contribute in any meaningful way to an understanding of economies of scale. Theoretically, economies of scale exist in firms when, at a given level of production, the average <u>total</u> cost of production declines as the quantity produced increases. The compensation paid to a portfolio manager is only one element of the costs that an advisor bears in providing mutual fund investment products to the investing public. In addition to supplying Portfolio Managers, the advisor must also provide infrastructure and personnel to support a variety of other functions, including research, recordkeeping, trading and customer service.

6.    The determination of whether Fidelity has achieved economies of scale in connection with the management of mutual funds must be made by looking at the *total* costs incurred by Fidelity in managing a fund or funds relative to some measure of output. I understand that Fidelity has already produced information on total costs of the Fidelity fund complex, the total costs allocated to each fund at issue as well as a description of the methodology used to allocate shared costs among mutual funds. Additional disaggregated cost information about any one component of the already-produced cost data – such as the portfolio manager compensation data sought by plaintiffs – is not relevant to an analysis of

3

economies of scale nor to an analysis of whether and to what extent any economies of scale that do exist have been shared with the funds at issue in this case and their shareholders.

7. Moreover, I served as an expert in a prior mutual fund fee case in which Dr. Pomerantz and Mr. Lamb also served as experts. I reviewed Dr. Pomerantz's and Mr. Lamb's reports and depositions in that case, titled *Strigliabotti v. Franklin Resources, Inc.*, No. C 04-0883 SI, slip op. (N.D. Cal. Oct. 24, 2006), and neither Dr. Pomerantz nor Mr. Lamb used portfolio manager compensation data in their analyses.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of October, 2007.

/s/ Robert Glenn Hubbard
Robert Glenn Hubbard, Ph.D.