```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

CYNTHIA BENNETT, et al  . CIVIL ACTION NO. 04-11651-MLW
  Plaintiffs            .
                        .
     V.                 . BOSTON, MASSACHUSETTS
                        . JULY 18, 2007
FIDELITY MANAGEMENT &   .
 RESEARCH CO., et al    .
  Defendants            .
. . . . . . . . . . . . .

                  TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE MARIANNE B. BOWLER
                UNITED STATES MAGISTRATE JUDGE

         APPEARANCES:

  For the plaintiff:            Michael Woerner, Esquire
                                Keller Rohrback, LLP
                                Suite 3200
                                1201 Third Avenue
                                Seattle, WA  98101

                                Michelle H. Blauner, Esquire
                                Shapiro Haber & Urmy, LLP
                                53 State Street, 37th Floor
                                Boston, MA 02109
                                617-439-4949

                                Matthew Tuttle, Esquire
                                Burns & Levinson, LLP
                                125 Summer Street
                                Boston, MA  02110
                                617-345-3248

  For the defendants:           James Dittmar, Esquire
                                David Apfel, Esquire
                                Goodwin Procter, LLP
                                Exchange Place
                                Boston, MA  02109
                                617-570-1944




                          MARYANN V. YOUNG
                      Certified Court Transcriber
                         Wrentham, MA  02093
                            (508) 384-2003
```

32

1  have to pay them some amount of money.  We don't know what
2  amount of money that is, but apparently that money that is
3  being paid, the actual sum of money and compensation in
4  whatever form it comes has a direct bearing on whether there
5  are any economies of scale earned by these largest funds.
6       The relevance of these pieces of information that we
7  seek it couldn't be more central to the case.  And without this
8  information we have no way of presenting, I don't believe any
9  way of presenting our economies of scale argument with any
10 effectiveness.  And we certainly don't have any way of
11 rebutting the defendants' argument that there are actually
12 diseconomies of scale with these large funds because of the
13 portfolio manager compensation and so forth.  It's clearly
14 relevant.  It's clearly discoverable.  We do recognize that its
15 sensitive information much like most of the information in this
16 case.  Most of the thousands of pages of documents that have
17 been produced in this case have been marked as confidential.
18 We have a confidentiality order in place.  It was lengthily
19 negotiated by the parties.  Almost all of the deposition
20 transcripts, there's a provision in there for having those
21 designated as confidential.  We even have voluntarily
22 participated in a procedure that allows for extra secret
23 confidentiality in issues that come up at depositions where
24 Fidelity feels that it would like to limit the disclosure of
25 that information as much as possible and we've had certain

33

1  people leave the room during different parts of deposition
2  testimony and those parts of the transcripts have been
3  separately transcribed, separately produced.
4           Given all those things there's certainly no reason
5  why this information, the discreet information that we're
6  looking for about portfolio manager compensation can't be
7  produced in this case, and I don't think it's relevance can be
8  questioned.
9           THE COURT: All right, Mr. Dittmar, last round.
10          MR. DITTMAR: Thank you, Your Honor. We're talking
11 here about how much five individuals are paid. Well actually
12 since the portfolio manager position has changed from time to
13 time during the period covered by the litigation as to a couple
14 of several of the funds there may be eight individuals. The
15 compensation of eight individuals, that's what we're talking
16 about. It is not Fidelity's position that the compensation to
17 these people derives whether there are any economies or
18 diseconomies of scale. That is a red herring. That is not our
19 position. We have not asserted it. We do not assert it in
20 this litigation.
21          Economies of scale--
22          THE COURT: Where is the harm with disclosing this
23 subject or confidentiality order?
24          MR. DITTMAR: The harm, Your Honor, is that this
25 information - first of all, confidentiality orders are

*MARYANN V. YOUNG*
Certified Court Transcriber
(508) 384-2003

38

1  manager compensation the SEC took the position that its
2  proposed rules would require description of the structure of
3  and method used to determine that compensation, exactly the
4  kind of information that we have disclosed here, but not the
5  compensation itself.  And the SEC said in the release of March
6  17, 2004, which we cite in our brief, Your Honor, the SEC said,
7  "We are not proposing to require disclosure of the value of
8  compensation paid to a portfolio manager."
9           They then note the position exactly as argued by
10 plaintiffs here, is portfolio manager compensation like
11 executive compensation which is disclosed for public
12 corporations?  And the SEC said, no, they disagree with that.
13 And the staff's language was the most direct mutual fund analog
14 to the compensation of an operating company's executive
15 officers is the compensation of the investment advisor,
16 Fidelity, which is disclosed.  The advisory fee which is the
17 amount paid by fund shareholders for portfolio management
18 services, that's what's really being paid for portfolio
19 management services, not what any one individual employee in
20 turn is compensated along with the great number of other
21 employees who provide services of one sort or another.  That
22 compensation the fee is paid to the fund advisor is fully
23 disclosed and we've disclosed it of course.
24           THE COURT:  All right.  My ruling is as follows.  As
25 to the first, the independent trustees' preparation sessions, I

39

1 find a common interest and therefore discovery relating to the
2 deposition preparation sessions that independent trustees shall
3 not be the subject of discovery at this time.
4     As to number two I will allow the redactions as set
5 forth in the privilege log, again on a basis of common interest
6 theory.
7     As to three as to compensation, the motion to compel
8 is denied without prejudice at this time to be renewed in 60
9 days upon a further and much stronger showing of need.  And
10 that is my ruling.
11     MR. TUTTLE:  Thank you, Your Honor.
12     THE COURT:  All right.
13     MR. DITTMAR:  Thank you, Your Honor.
14     THE COURT:  Hearing nothing else we stand in recess
15 at this time.
16     MR. MURPHY:  Thank you, Your Honor.
17     MR. WOERNER:  Status conference.
18     THE COURT:  Certainly.  Good point.  Mr. Duffy?
19     MR. WOERNER:  It has usually helped us to--
20     THE COURT:  Sure.
21     MR. WOERNER:  --get things moving.
22     THE COURT:  Late September?
23     MR. WOERNER:  We have a discovery cut off of the end
24 of September, so I'm just wondering if we could do it a little
25 bit earlier so if we see any issues before the discovery cutoff