UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT, GUY E. MILLER, NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of THE FIDELITY MAGELLAN FUND, FIDELITY CONTRAFUND, FIDELITY GROWTH & INCOME PORTFOLIO I FUND, FIDELITY BLUE CHIP GROWTH FUND, and FIDELITY LOW-PRICED STOCK FUND,<br><br>Plaintiffs,<br><br>vs.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC.,<br><br>Defendants. | CIVIL NO. 1:04-cv-11651-MLW (Lead Case)<br><br>CIVIL NO. 1:04-cv-11756-MLW (Consolidated Case) |

**DEFENDANTS FIDELITY MANAGEMENT & RESEARCH COMPANY
AND FMR CO., INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO ENLARGE THE PERIOD FOR DISCOVERY FOR THE LIMITED
PURPOSE OF CONDUCTING A HALF DAY DEPOSITION OF DONALD KIRK**

GOODWIN PROCTER LLP
  James S. Dittmar (BBO# 126320)
  David Apfel (BBO# 551136)
Exchange Place
53 State Street
Boston, MA 02109
Tel: 617-570-1000

MILBANK, TWEED, HADLEY &
McCLOY LLP
  James N. Benedict (*pro hac vice*)
  Sean M. Murphy (*pro hac vice*)
  Mia C. Korot (*pro hac vice*)
1 Chase Manhattan Plaza
New York, NY 10005-1413
Tel: (212) 530-5000
Fax: (212) 530-5219

*Attorneys for Defendants Fidelity Management
& Research Company and FMR Co., Inc.*

Dated: November 5, 2007

1

Defendants Fidelity Management & Research Co. and FMR Co., Inc. (together, "Fidelity" or "Defendants") oppose Plaintiffs' Motion to Enlarge the Period for Discovery for the Limited Purpose of Conducting a Half Day Deposition of Donald Kirk ("Plaintiffs' Motion").

## PRELIMINARY STATEMENT

Plaintiffs seek to take the deposition of independent trustee Donald Kirk two years after discovery first began in this case, and after the expiration of the September 30, 2007 fact discovery cut off set by this Court. Plaintiffs offer no justifiable excuse for their failure to meet the discovery deadline, nor do they offer a valid reason why Mr. Kirk's deposition is necessary.

The Complaint in this action was filed on July 23, 2004. Fact discovery began almost two years ago, and Plaintiffs' first requests for the production of documents were served on December 14, 2005. From the outset, this Court has expressed that, because this case has been pending since 2004 and the parties were given a lengthy discovery schedule, requests for discovery extensions would not be easily given. The Court has had a status conference every couple of months for the last year, and at each conference the parties were reminded that discovery should be progressing in earnest given this is a "2004 case."

Despite this, at 5:20 pm on Friday, September 28, 2007, the last business day before the fact discovery cut-off of September 30, 2007, Plaintiffs emailed Defendants stating their intention to take the deposition of independent trustee Donald Kirk. (Gerber Decl., Ex. 2.) Both Defendants and Mr. Kirk's counsel responded to Plaintiffs via letter explaining that they believed Plaintiffs' request to depose Mr. Kirk was untimely and wholly unnecessary, and that they would not consent to the deposition. (Gerber Decl., Exs. 3 & 4.) Three weeks after the close of fact discovery, Plaintiffs filed the instant motion to extend the discovery deadline in order to depose Mr. Kirk.

2

Plaintiffs attempt to excuse their untimely request to depose Mr. Kirk by claiming that they only discovered the need for his deposition after they reviewed documents produced by his counsel in late-September. However, the majority of Mr. Kirk's "newly discovered" documents that Plaintiffs cite in support of allowing his deposition have in fact been in Plaintiffs' possession for months and, in some cases *for over one year*, having been previously provided to Plaintiffs in earlier productions by Fidelity and other trustees. Moreover, the only reason those documents were produced in September is because Plaintiffs did not request those documents until August 2007. Plaintiffs' delay in seeking those materials is inexcusable. Indeed, Plaintiffs had ample time and opportunity to request Mr. Kirk's documents eighteen months earlier when they identified him in their Rule 26(a) initial disclosures as a witness with discoverable information.

Finally, even if Plaintiffs' request were timely, Mr. Kirk does not possess any unique knowledge that would warrant re-opening fact discovery. He retired from the Fidelity Board almost three years ago. Plaintiffs have already deposed fourteen individuals, including five independent trustees and two interested trustees. Several of these witnesses were on the Board throughout the entire period at issue in this lawsuit, and Plaintiffs had every opportunity to ask these other Fund trustees questions about the very topics they now seek to explore with Mr. Kirk.

## ARGUMENT

### I.    PLAINTIFFS' MOTION IS UNTIMELY

#### A.    Mr. Kirk is Not a Newly Discovered Witness

Plaintiffs have known since the inception of this case that Mr. Kirk was an independent trustee on the Funds' Board of Trustees and that he was Chair of the Audit Committee until 2004. This information is available in the Fund's public filings (some of which are cited in Plaintiffs' Complaint), as well as the documents produced by the Defendants well over a year ago. For example, each Fund's Statement of Additional Information ("SAI"), like the one

3

Plaintiffs attach in support of their Motion (Gerber Decl., Ex. 6), discloses background information on all of the current independent trustees, including their professional backgrounds. *Id.* at 16-18. Each fund's SAI also includes a summary of the responsibilities of each committee and lists each committee member. *Id.* at 21-23. Furthermore, Plaintiffs included Mr. Kirk in their Rule 26(a) initial disclosures, dated October 3, 2005, as a person likely to have discoverable information. (Dittmar Decl., Ex. A) Defendants also identified Mr. Kirk in their initial disclosures on February 1, 2006.

Having known for at least two years that Mr. Kirk was on the Board and that he was Chair of the Audit Committee, there is no justifiable reason why Plaintiffs should be allowed to re-open discovery at this stage of the litigation in order to take his deposition.

**B.    The Discovery Schedule Provided More Than Enough Time for Plaintiffs to Timely Notice Mr. Kirk's Deposition**

Plaintiffs' only proffered excuse for their delay in seeking to depose Mr. Kirk is that they were provided his documents too late in the discovery period to notice his deposition earlier. Plaintiffs' argument is not supported by the facts.

First, Plaintiffs have had in their possession for many months the majority of the documents they claim reflect Mr. Kirk's knowledge of certain issues. Well before Mr. Kirk's counsel produced his documents to Plaintiffs in September, exact duplicates of many of these documents were produced to Plaintiffs by Defendants or other independent trustees. Some of these documents were even produced multiple times. In fact, the main document Plaintiffs rely on in support of their argument that Mr. Kirk has unique knowledge about Fidelity's group fee structure (Gerber Decl., Ex. 10) was first produced to Plaintiffs in August 2006 and then

4

seventeen times thereafter between April and June 2007.[1] Likewise, the two documents that

Plaintiffs cite concerning Mr. Kirk's knowledge about the Audit Committee's responsibilities to

300 plus funds (Gerber Decl., Exs. 14 & 15) were produced, in multiples, by counsel to the

independent trustees on May 9, 2007.[2] Plaintiffs had more than ample time to review the bulk of

these documents well before the fact discovery deadline and to determine whether to notice Mr.

Kirk's deposition.

Second, even if one ignores the fact that Plaintiffs had these same documents in their

possession for many months, the production of documents by Mr. Kirk in September is still no

excuse for not completing his deposition before the close of fact discovery. The only reason

Plaintiffs received Mr. Kirk's documents in late-September, is because they did not request the

materials until August 10, 2007. Had Plaintiffs requested these documents earlier in the two year

period they had to conduct discovery, they would have had ample time to schedule Mr. Kirk's

deposition well before the September 30th fact discovery cut off. Having waited so long to

request the documents, Plaintiffs cannot be heard to complain that they received them too late to

depose Mr. Kirk before fact discovery closed.

Plaintiffs' Motion attempts to defend their failure to request the documents earlier by

suggesting that the need to review Mr. Kirk's documents only arose after they received a letter

from Defendants on July 12, 2007. This makes no sense. The purpose of the July 12th letter was

to confirm an agreement that Plaintiffs would not depose Mr. Kirk if the Defendants agreed not

to call him as a witness as trial. (Dittmar Decl., Ex. B.) Considering Plaintiffs have known of

Mr. Kirk's role on the Board since the inception of the case, Plaintiffs' argument that they first

considered requesting his documents after receiving Defendants' July 12th letter is unpersuasive.

---

[1]    *See* infra, note 5.
[2]    *See* infra, note 7.

Plaintiffs requested documents from other independent trustees many months earlier, and they clearly could have done so with respect to Mr. Kirk.

Moreover, even after they claim to have determined on July 12, 2007 that a review of Mr. Kirk's documents was necessary, Plaintiffs then waited nearly a *month* before requesting his documents on August 10, 2007. Given the impending close of fact discovery in September, there was no excuse for this delay. Had plaintiffs not waited a month after July 12th to request the documents, Mr. Kirk's deposition could have been taken before the Court ordered deadline for fact discovery completion.

## II.   THE TESTIMONY SOUGHT BY PLAINTIFFS IS NOT "UNIQUE" TO MR. KIRK

Plaintiffs attempt to make their belated request for the deposition of Mr. Kirk seem less offensive by stating that his deposition is necessary because it is related to topics "unique" to his documents. (Pl. Mem. at 4.) In this respect, Plaintiffs claim Mr. Kirk has "unique" information based on his role as the Chair of the Audit Committee and his involvement in the review of the Funds' group fee structure.[3] (Pl. Mem. at 1.) The facts, however, show that this information is not unique to Mr. Kirk and that Plaintiffs having had the majority of these documents in their possession for some time and could have inquired about these issues with other witnesses:

- First, Mr. Kirk does not have "unique" knowledge of the funds' group fee structure. The group fee structure was negotiated each year by the entire Board. Moreover, Marvin Mann, the former lead independent trustee, was on the Board in 1999 when the group fee was last changed and has already been deposed by Plaintiffs. Finally, the two documents that Plaintiffs cite to, a February 14, 2003 memorandum discussing the group fee structure and an email dated February 28, 2003 from Mr. Kirk to David Jones regarding the February memorandum,[4] have been in Plaintiffs' possession for months, and do not

---

[3]   Fidelity's group fee structure is explained in each Fund's SAI. (Gerber Decl. Ex. 6, pp. 26-28.)

[4]   Gerber Decl., Exs. 10 & 11.

demonstrate that Mr. Kirk has any unique knowledge of the group fee structure.[5]  Indeed, the final version of the February memorandum was shared with the full Board of Trustees in April 2003 and discussed at a formal committee meeting in May 2003.[6]  Four out of the five independent trustees that Plaintiffs have already deposed were on the Board when this memorandum was reviewed and considered (i.e., Marvin Mann, William McCoy, Marie Knowles, and Ned Lautenbach) and could have been questioned about the contents of this document.

- Second, Mr. Kirk does not have "unique" knowledge as a result of his role as Chair of the Audit Committee.  Plaintiffs have already deposed Marie Knowles, the current Chair of the Audit Committee, for a full day on May 15, 2007.  Not only did Ms. Knowles serve on the Audit Committee during the entire period of time at issue in this litigation, but she was a recipient of all but one of the emails that Plaintiffs cite to in a fruitless attempt to demonstrate Mr. Kirk's "unique" knowledge.[7]  Moreover, all of the Fund Trustees were given fund profitability data.  Plaintiffs had every opportunity to ask Ms. Knowles and the other trustees about these documents, the Audit Committee generally, and the role of the chairperson.

- Nor does Mr. Kirk have unique knowledge of the means by which the Fund Trustees fulfill their responsibilities to 300 plus funds.  Indeed, Marvin Mann, the former lead independent trustee, was deposed at length on this issue, including an extensive statement to a Senate Subcommittee in March 2004 on this very issue.[8]

---

[5] The final version of the February 13, 2003 memorandum, which substantively contains the same information, was distributed to the Board of Trustees in April 2003, and produced to Plaintiffs on August 9, 2006.  *See* Memorandum to the Board of Trustees re "Review of the Group Fee Structure," dated April 30, 2003 at BFMR_00005785-91.  Indeed, the February memorandum was produced seventeen different times in connection with Defendant's email production of various custodians.  *See, e.g.,* BFMR_00156276-83 (produced April 13, 2007); BFMR_00164465-72 (produced May 9, 2007).  Likewise, the email between Mr. Kirk and David Jones was produced to Plaintiffs on May 24, 2007.  *See* BFMR_00188895-96.

[6] *See* Memorandum to the Board of Trustees re "Review of the Group Fee Structure", dated April 30, 2003 at BFMR_00005785-91; Independent Trustees' Questions on Fund Profitability, Fixed-Income and Money Market Material, dated May 15, 2003 at BFMR_00007092.

[7] Furthermore, two of these emails were produced by counsel to the independent trustees on behalf of Ms. Knowles on May 9, 2007 in connection with her deposition.  For example, Exhibit 14 was produced at least four different times in Ms. Knowles' production and Exhibit 15 was produced at least twice in the same production.  *See* MLK0003049, MLK00011901; MLK0013449; MLK0003050; MLK00000590; MLK00000603.

[8] *See* Mann Tr.: 96:19-102:13; Statement of Marvin Mann Chairman of the Independent Trustees of the Fidelity Funds before the Senate Committee on Banking Housing and Urban Affairs on *"Review of Current Investigations and Regulatory Actions Regarding the Mutual Fund Industry: Fund Operations and Governance"*, March 2, 2004 (Dittmar Decl., Ex. C).

This is not a case where Plaintiffs would be prejudiced if they are not allowed to take Mr. Kirk's deposition. Plaintiffs had many of the documents they cite in the Motion in their possession for as much as a year and had the opportunity to depose seven other trustees about the subject matters about which they now seek to depose Mr. Kirk. Under these circumstances, Plaintiffs should not be permitted to evade this Court's discovery deadline.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Extend the Discovery Period.

Dated: November 5, 2007

Respectfully submitted,

GOODWIN PROCTER LLP
/s/ James S. Dittmar
   James S. Dittmar (BBO# 126320)
   David Apfel (BBO# 551136)
Exchange Place
53 State Street
Boston, MA 02109
Tel: 617-570-1000

MILBANK, TWEED, HADLEY &
MCCLOY LLP
   James N. Benedict (*pro hac vice*)
   Sean M. Murphy (*pro hac vice*)
   Mia C. Korot (*pro hac vice*)
1 Chase Manhattan Plaza
New York, NY 10005-1413
Tel: (212) 530-5000
Fax: (212) 530-5219

*Attorneys for Defendants Fidelity Management & Research Company and FMR Co., Inc.*