UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-------------------------------------------------------------x
                                                             :
CYNTHIA A. BENNETT et al.,                                   :
for the use and benefit of                                   :
FIDELITY MAGELLAN FUND, FIDELITY                             :
CONTRAFUND, FIDELITY GROWTH &                                :
INCOME PORTFOLIO I FUND, FIDELITY                            :   Oral Argument Requested
BLUE CHIP GROWTH FUND, and                                   :
FIDELITY LOW-PRICED STOCK FUND,                              :
                                                             :
                Plaintiffs,                                   :   No. 04-cv-11651-MLW
                                                             :   (Lead Case)
    v.                                                     :
                                                             :   No. 04-cv-11756-MLW
FIDELITY MANAGEMENT & RESEARCH                               :   (Consolidated Case)
COMPANY and FMR CO., INC.,                                   :
                                                             :
                Defendants.                                   :
-------------------------------------------------------------x

**FIDELITY INDEPENDENT TRUSTEES' MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION TO ENLARGE THE PERIOD
FOR DISCOVERY FOR THE LIMITED PURPOSE OF CONDUCTING
<u>A HALF DAY DEPOSITION OF DONALD KIRK</u>**

      The non-party Independent Trustees of the Fidelity Funds submit this memorandum and the attached Declaration of Shannon Rose Selden in support of their motion to intervene for the limited purpose of responding to plaintiffs' motion to enlarge the discovery period in order to take a deposition of former Independent Trustee Donald Kirk, and in opposition to plaintiffs' motion.

<u>**PRELIMINARY STATEMENT**</u>

      The facts on which plaintiffs rely to support their motion to enlarge discovery for the purpose of deposing Mr. Kirk are neither newly discovered nor unique to Mr. Kirk.

Documents and depositions in this action have long indicated Mr. Kirk's tenure and role as an Independent Trustee and Chair of the Audit Committee; the timing, nature, and purpose of the group fee structure and breakpoints; and the process and structure by which a unitary board and Audit Committee oversee the Fidelity equity funds. Plaintiffs had ample opportunity to consider and take Mr. Kirk's deposition on these topics during the court-ordered discovery period in this action, but declined to do so. Their attempt to justify their delay in seeking that deposition until the last business day before the close of discovery and to demonstrate their need by pointing to documents from Mr. Kirk's production that they received later than originally estimated does not withstand scrutiny, since their late receipt of the documents was a result of their lateness in requesting the documents, the documents on which they rely are merely copies of documents in their possession from previous productions, and the testimony they seek relates exclusively to subjects they thoroughly addressed months ago in their depositions of Mr. Kirk's former colleagues.

Plaintiffs' request to depose Mr. Kirk is unnecessary and onerous as well as untimely. Seven other Independent Trustees have produced documents in this litigation – including some of the same documents that plaintiffs now claim are particular to Mr. Kirk – and five Independent Trustees have been deposed – including on the same topics that plaintiffs now insist only Mr. Kirk could address. Adding Mr. Kirk's testimony on these topics to the extensive existing record would do little to advance the substantive issues but would impose a significant burden on Mr. Kirk, who would be forced three years after his retirement from the Board to devote significant time to prepare for

examination on these complex topics.  Plaintiffs' motion is unwarranted, untimely, burdensome and should be denied.

## STATEMENT OF FACTS

Plaintiffs have taken extensive discovery of current and former Independent Trustees of the Fidelity Funds, including Trustees who served at the same time as Mr. Kirk and who, like Mr. Kirk, served on, or as chair of, the Audit Committee.  In early January 2007, Plaintiffs identified six current or former Independent Trustees from whom they intended to seek production of documents and who they intended to depose: Ned Lautenbach, the current Chair of the Independent Trustees, Marvin Mann, the former Chair of the Independent Trustees, Marie Knowles, the current Chair of the Audit Committee, William Stavropoulos, William McCoy, and Ralph Cox.[1]  Between April and August of 2007, each of these six current or former Independent Trustees produced documents to Plaintiffs.[2]  During that same five month period, plaintiffs deposed five of the Independent Trustees, including Mr. Lautenbach on April 17, Ms. Knowles on May

---

[1] Plaintiffs also initially mentioned former Independent Trustee Robert M. Gates in this list, but did not pursue deposing him.

[2] *See* Ex. 1 to the Declaration of Shannon Rose Selden ("Selden Decl.") April 13, 2007 Letter from S. Selden to B. Ferrell-Anton and M. Tuttle, enclosing documents produced by Ned C. Lautenbach; Selden Decl. Ex. 2, May 15, 2007 Letter from S. Selden to M. Woerner, M. Tuttle, D. Foster, and M. Blauner, enclosing documents produced by Marie L. Knowles; Selden Decl. Ex. 3, May 26, 2007 Letter from S. Selden to M. Woerner, M. Tuttle, D. Foster, and M. Blauner, enclosing documents produced by M. Mann; Selden Decl. Ex. 4, June 21, 2007 Letter from S. Selden to M. Woerner, M. Tuttle, D. Foster, and M. Blauner enclosing documents produced by William S. Stavropoulos; Selden Decl. Ex. 5, August 16, 2007 Letter from S. Selden to N. Fields, B. Ferrell-Anton, and M. Tuttle, enclosing documents produced by William O. McCoy; Selden Decl. Ex. 6, August 28 Letter from S. Selden to N. Fields, B. Ferrell-Anton, and M. Tuttle enclosing documents produced by Ralph F. Cox.

15, Mr. Mann on May 31, Mr. Stavropoulos on June 29, and Mr. McCoy on August 30, 2007.  Ralph Cox had been subpoenaed and was willing to give a deposition when plaintiffs withdrew their request.  Although Fidelity had identified Mr. Kirk in its Rule 26(a) initial disclosures as a person with knowledge, he was not among the Independent Trustees whom plaintiffs identified in January as the third-party witnesses they intended to subpoena for documents or depositions.

Plaintiffs first requested production of documents from Mr. Kirk and Robert W. Gates by letter dated August 10, 2007 from former co-counsel Nina Fields.  *See* Declaration of Nina H. Fields ("Fields Decl.") at ¶¶ 2-3.  Despite the unexpected nature of the request late in the discovery period and long after the identification of the other Independent Trustees, Mr. Kirk's counsel made considerable efforts to locate and prepare his documents for production.  Counsel indicated to Ms. Fields that they "expect[ed] to be able to produce" the documents by September 17, 2007, *see* Fields Decl. Ex. B, but when obstacles arose to completion of the production, counsel obtained Ms. Fields' assent and understanding that counsel anticipated producing the documents on Wednesday, September 19, and would do so in any event by the end of the week.  *See* Fields Decl. at ¶ 7.

On Friday, September 21, Mr. Kirk's documents were sent by overnight delivery for arrival on September 22, to the same three attorneys who had received each of the two previous productions by Independent Trustees: Ms. Fields, who had requested the documents and been the sole contact regarding the production, Ms. Ferrell-Anton and Mr. Tuttle.  *See* Selden Decl. Ex. 7 (September 21, 2007 letter from S. Selden to Ms. Fields,

4

Ms. Ferrell-Anton, and Mr. Tuttle). Ms. Fields had never indicated that she would be withdrawing as counsel or that the documents should be produced to anyone other than the recipients of the two previous productions of documents. *See* Fields Decl. and exhibits thereto. Co-counsel who now claim delayed production had not been among the plaintiffs' counsel who received the previous two productions directly from Trustees' counsel, *see* Selden Decl. Ex. 6-7, and do not claim to have ever indicated to Mr. Kirk's counsel that they wished to receive Mr. Kirk's production directly rather than through coordination with their colleagues.[3]

On September 28, 2007, the last business day before the close of discovery, plaintiffs indicated by letter that they wished to depose Mr. Kirk. His counsel objected to the request by letter dated October 8, 2007.

## ARGUMENT

### A.     **Plaintiffs' Request for Mr. Kirk's Deposition Was Untimely**

Plaintiffs' motion to extend discovery in order to depose Mr. Kirk is based on three key pieces of information that they have known for months, if not years: (*i*) Mr. Kirk's role and interactions as Chair of the Audit Committee, (*ii*) the fact that Mr. Kirk preceded Ms. Knowles as Chair of the Audit Committee, (*iii*) and documents indicating Mr. Kirk's role in discussions of the group fee structure and fund profitability. *See* Plaintiffs' Memorandum at 1-2, 5, 7, 11-12. None of this information emerged for the

---

[3] After the initial production, twenty-nine additional documents identified as having been inadvertently withheld from Mr. Kirk's production were provided to Plaintiffs' counsel by electronic mail on October 17, 2007. *See* Selden Decl. Ex. 8 (October 17, 2007 letter from S. Selden to L. Gerber).

5

first time at the end of discovery, or in the production of Mr. Kirk's documents. Plaintiffs' own submission reveals that they had all of the information that purportedly motivated their request long before they sought Mr. Kirk's deposition or documents, and certainly with sufficient time to evaluate and pursue a deposition during the court-ordered discovery period if they had thought it important to do so.

Plaintiffs have known for years that Mr. Kirk had an extensive financial background and served as the Chair of the Audit Committee, and that Ms. Knowles succeeded him in that role. Plaintiffs identified Mr. Kirk as a potential witness two years before they requested his deposition, when they served their initial disclosures on October 3, 2005. Fidelity also identified Mr. Kirk as an Independent Trustee and Chair of the Audit Committee in its initial disclosures on February 1, 2006, and in each Fund's Statement of Additional Information during his service on the Board. The same disclosures revealed Ms. Knowles's current service as Chair of the Audit Committee, and Ms. Knowles confirmed in her May 15, 2007 deposition that she had replaced Mr. Kirk as Chair of the Audit Committee as of January 2004. *See* Selden Decl. Ex. 9, at 39 (excerpts from the deposition of Marie Knowles, May 15, 2007). As plaintiffs concede, Mr. Kirk is not a newly discovered witness, whose role, tenure and knowledge of subjects at issue in the litigation have only recently emerged, but a long-serving – and long-retired – Independent Trustee whom plaintiffs have been aware of since this litigation began.

The documents that plaintiffs argue reveal the scope of Mr. Kirk's role in the discussions of the group fee structure came to light for the first time not in his September 21 production, as they suggest, but in numerous prior productions by Fidelity. *See*

Fidelity Memorandum at 4, and 7 n.5.  Two of the documents they point to as evidence of Mr. Kirk's unique knowledge of group fees or Audit Committee functions and communications had been previously produced by Ms. Knowles on May 9, 2007, *see* Selden Decl. Ex. 10, and the central document on which plaintiffs rely – a February 2003 memorandum from John Farinacci to Mr. Kirk – has been produced by Fidelity seventeen separate times, including as early as August 9, 2006.  *See* Fidelity Memorandum at 4, and 7 n.5.

Plaintiffs' reliance on the April and May testimony of three other Independent Trustees to support their claim of need confirms that they had adequate information to decide whether to depose Mr. Kirk long before the close of discovery.  In particular, plaintiffs point to the testimony of Mr. Lautenbach (deposed on April 17), Ms. Knowles (deposed on May 15), and Mr. Mann (deposed on May 31), to explain their asserted belief that Mr. Kirk may be able to provide additional information regarding the group fee rate schedule and implementation of breakpoints.  *See* Plaintiffs' Memorandum at 8-10.  Although we dispute plaintiffs' claim that the other Trustees did not provide sufficient testimony on these topics, to the extent plaintiffs believe anything in those depositions indicates a need to depose Mr. Kirk, even on plaintiffs' own account they had the information necessary to reach that conclusion since completing Mr. Mann's deposition on May 31.

Given the length of time that elapsed between plaintiffs' identification of Mr. Kirk as a potential witness on October 3, 2005 and their request for his deposition on September 28, 2007, the extensive information available to plaintiffs within the court-

7

ordered discovery schedule and the ample opportunity they had to consider deposing Mr. Kirk, plaintiffs cannot fairly attach significance to having had Mr. Kirk's documents produced on September 21 rather than September 18, as they appear to urge. The role of the Audit Committee, the timing of the group fee discussions and the length of Mr. Kirk's tenure did not emerge in the waning days of discovery, but in disclosures made in October 2005 and February 2006, documents produced between August 2006 and June 2007, and testimony in April and May 2007.

**B.      A Deposition of Mr. Kirk is Unnecessary and Duplicative.**

Plaintiffs have already obtained extensive Trustee testimony on each of the five topics on which they seek to depose Mr. Kirk: (*i*) the equity funds' group fee structure; (*ii*) the Audit Committee's execution of its oversight function; (*iii*) the calculation and evaluation of fund profitability; (*iv*) economies of scale and the implementation of breakpoints in the fee structure; and (*v*) how the Audit Committee in particular, and the Independent Trustees in general, exercise their fiduciary responsibilities for all of the many Fidelity funds. Even apart from the untimeliness of plaintiffs' request, plaintiffs' inability to show any special need to take Mr. Kirk's testimony on the same topics previously addressed in the depositions of the other Independent Trustees warrants denial of their motion.

Plaintiffs' effort with respect to information regarding the Audit Committee is particularly redundant in light of the testimony of Ms. Knowles, the Committee's current Chair. Over the course of a full day deposition on May 15, 2007, Ms. Knowles provided

detailed testimony on each of the topics plaintiffs seek to address with Mr. Kirk. Although Ms. Knowles was not on the Board when Fidelity first adopted the group fee rate structure, Mr. Mann (whom plaintiffs also deposed) was on the board at that time, and Ms. Knowles explained that each year the Independent Trustees evaluate the entire management fee and each component thereof, including the group fee schedule, "and discuss whether or not that schedule is still appropriate and whether or not the individual fund fee rate is still appropriate." *See* Selden Decl. Ex. 9, at 97; *see also id.* at 98-105, 238-41. Ms. Knowles also answered a series of questions regarding economies of scale and the implementation of breakpoints designed to share them across the complex of funds, and made clear that the Board continued to evaluate the work on those subjects that pre-dated her tenure. *Id*. at 106, 240, 247-49. Her transcript confirms that she was fully capable of addressing any questions posed on the these topics, including on the conclusions suggested by the study conducted during Mr. Kirk's tenure.

Similarly, plaintiffs' assertion that the depositions taken to date provide inadequate information regarding fund profitability stands in stark contrast to Ms. Knowles's wide-ranging testimony on the subject. Among other discussions, Ms. Knowles explained that "the Trustees over a long period of time have reviewed these [profitability accounting] methodologies and the [A]udit [C]ommittee specifically reviews any changes that are made to the methodology from year to year, and we take the advice of PricewaterhouseCoopers as to whether or not those changes in methodology are reasonable." *Id*. at 154. She then testified in detail regarding the factors that the Audit

Committee considers in evaluating and, if necessary changing, the profitability methodology. *See id.* at 154-58; *see also id.* at 153.

While Mr. Kirk certainly has an extensive financial background and accounting expertise, plaintiffs' suggestion that he is the only Trustee who could provide adequate testimony on the question of fund profitability or who devoted substantial time to assessing the appropriateness of the profitability methodology is contradicted by Ms. Knowles's clear command of the subject and testimony on particular areas of focus in her work on the Audit Committee. *See id*. at 167-68 (describing evaluation of "the efficiency of the process" and "the accuracy of the numbers"); *see also id.* at 169-70, 205-08. Ms. Knowles's testimony confirms that she was more than capable of testifying on any of the issues plaintiffs have identified and did so at length.[4]

**C.      Even a Half Day Deposition of Mr. Kirk Would Be Unduly Burdensome.**

Plaintiffs have done little to minimize the onus on Mr. Kirk by undertaking to limit his deposition to a half a day while simultaneously seeking his testimony on a broad range of complex topics. Although Mr. Kirk was fully informed about and familiar with the details of each of the proposed issues during his long service on the Board, that service ended nearly three years ago when he retired in December 2004. Refamiliarizing himself with the detailed facts, including complex financial information and auditing

---

[4] In arguing that Ms. Knowles was limited in her ability to testify on the Audit Committee's work, plaintiffs attempt to trump her detailed testimony with mere reference to an email she sent to Mr. Kirk reassuring him that he need not "feel guilty" about departing for a vacation in China because "[w]e 'muddled' through," plainly mischaracterizes as an admission of incompetence a mere friendly reassurance to a vacationing colleague about handling the work of the Committee in his absence. *See* Plaintiffs' Memorandum at 11.

work, would require substantial effort which should not be required of a retired third-party at this late stage in the litigation, absent a strong showing of particular need.  Since plaintiffs cannot demonstrate that need, Mr. Kirk should be spared this considerable burden.

## CONCLUSION

For the reasons stated, the Independent Trustees' motion to intervene should be granted and plaintiffs' motion to enlarge the time for discovery for the limited purpose of conducting a half day deposition of Donald J. Kirk should be denied.

Dated:    November 5, 2007
          New York, New York

>                    Respectfully submitted,
>
>                    By:    /s/ [Shannon Rose Selden]_____
>                    John S. Kiernan (*pro hac vice*)
>                    Shannon Rose Selden (*pro hac vice*)
>                    DEBEVOISE & PLIMPTON LLP
>                    919 Third Avenue
>                    New York, New York  10022
>                    Tel: (212) 909-6000
>                    Fax: (212) 909-6836
>
>                    Sandra Sue McQuay  (BBO No. 340120)
>                    SULLIVAN, WEINSTEIN & MCQUAY
>                    2 Park Plaza
>                    Boston, Massachusetts  02116
>                    Tel: (617) 348-4355
>
>                    Counsel to the Fidelity Independent Trustees