UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT, GUY E. MILLER, NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of THE FIDELITY MAGELLAN FUND, FIDELITY CONTRAFUND, FIDELITY GROWTH & INCOME PORTFOLIO I FUND, FIDELITY BLUE CHIP GROWTH FUND and FIDELITY LOW-PRICED STOCK FUND,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC.,<br><br>Defendants. | CIVIL NO. 1:04-cv-11651-MLW<br>(Lead Case)<br><br>CIVIL NO. 1:04-cv-11756-MLW<br>(Consolidated Case) |

**REPLY TO DEFENDANTS' AND THE FIDELITY INDEPENDENT TRUSTEES' MEMORANDA OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO ENLARGE THE PERIOD FOR DISCOVERY FOR THE LIMITED PURPOSE OF CONDUCTING A HALF-DAY DEPOSITION OF DONALD KIRK.**

I.     INTRODUCTION

Plaintiffs respectfully submit to the Court this Reply to Defendants' and the non-party Fidelity Independent Trustees' ("Trustees") separate Memoranda in Opposition to Plaintiffs' Motion to Enlarge the Period for Discovery for the Limited Purpose of Conducting a Half-Day Deposition of Donald Kirk.  The Defendants and Trustees have refused to stipulate to enlarging the period for discovery sufficient for Plaintiffs to conduct a half-day deposition of former Independent Trustee Donald Kirk.  The factual background is set forth in the Memorandum in Support of Plaintiffs' Motion to Enlarge the Period for Discovery for the Limited Purpose of

Conducting a Half-Day Deposition of Donald Kirk, October 22, 2007 ("Pls. Mem."). For the reasons set forth below and in Plaintiffs' earlier filing, Plaintiffs' motion should be granted.

Defendants and the Trustees argue that Plaintiffs are late in their request to extend discovery in order to depose Mr. Kirk and further posit that he does not possess unique information relating to the topics Plaintiffs have identified. Defendants' and Trustees' arguments as to the untimely nature of Plaintiffs' request to depose Mr. Kirk are unavailing and misleading to the extent they suggest that Plaintiffs had received all relevant discovery relating to Mr. Kirk well in advance of Defendants' and Trustees' counsel being informed of Plaintiffs' concluding to seek the deposition of Mr. Kirk. Defendants and the Trustees also wholly fail to address the centerpiece of Plaintiffs' motion – that Mr. Kirk has unique knowledge regarding the Defendants' "group fee" structure and the work of the Audit Committee, because he personally focused on the group fee and was chair of the Audit Committee during the relevant period, and other Trustees were unable to respond to questions about the group fee when deposed.

## II.   ARGUMENT

Fed. R. Civ. P. 26(b)(1) provides for the discovery of relevant, non-privileged matters. The Federal Rules of Civil Procedure are to be construed liberally in favor of discovery. *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Plaintiffs have established the relevance of Mr. Kirk's testimony, which Defendants and Trustees do not refute. The delay in Plaintiffs' request to depose Mr. Kirk was caused by the delay in Mr. Kirk's lawyers' production of his documents. Defendants and Trustees' counsel knew that Plaintiffs' determination of whether to depose Mr. Kirk depended ultimately on review of Mr. Kirk's documents. Finally, Defendants do not, and cannot, make the claim that the short delay required to extend the discovery deadline to conduct Mr. Kirk's deposition in any way prejudices

them or affects their ability to litigate the case. *See Benitez-Garcia* v. *Gonzalez-Vega*, 468 F.3d 1, 6 (1st Cir. 2006).

A.  **Defendants' and Trustees' statements regarding the discovery process are misleading**

Defendants repeatedly trumpet that discovery in this case has been ongoing for almost two years and that Plaintiffs identified Mr. Kirk in their Rule 26(a) disclosures over two years ago, thereby suggesting that Plaintiffs have been dilatory and inefficient in their use of the time allowed for discovery in this case. Nothing could not be further from the truth.

Plaintiffs served their first discovery requests on December 14, 2005, but did not receive one single page of document production until August 9, 2006 – eight months after the request. Since August 2006, Plaintiffs have received 55 separate productions from Defendants, totaling 295,961 pages, and Defendants have yet to complete production of all the documents that they have agreed to produce to Plaintiffs. (Exs. 1, 2 to Decl. of Laura R. Gerber, Nov. 21, 2007.) In addition, Plaintiffs have received nine separate productions from the Trustees, totaling 38,477 pages. (Decl. of Shannon R. Selden, Nov. 21, 2007; Ex. 3 to Gerber Decl. Nov. 21, 2007.) Notably, *eight* productions from the Defendants and Trustees have staggered in since the purported "close" of fact discovery on September 30, 2007. (Ex. 1 to Gerber Decl. Nov. 21, 2007.)

Plaintiffs acknowledge that they listed Mr. Kirk on their Rule 26(a) disclosures in the fall of 2005, and further observe that as between the Initial Disclosures of Plaintiffs and Defendants, Mr. Kirk was one of 54 potential defense or non-party witnesses identified at the beginning of discovery. As Plaintiffs were limited to 20 depositions, it would have been impossible to notice for deposition all the individuals that Plaintiffs were aware may have had relevant information at the beginning of this case. (Pls. Mem. 2.)  In light of the number of potential deponents identified

early in the case, Plaintiffs have been careful in their noticing of depositions so as to avoid exceeding the limit set by the Court. (Id.) In fact, Plaintiffs have only taken 14 depositions.

In order for Plaintiffs to sufficiently review the voluminous and frequent document productions from Defendants in this case (equivalent to approximately 120 Bankers boxes of paper), Plaintiffs have, of necessity, structured document review both topically and by witness. While Plaintiffs have long requested that Defendants label the documents produced to correspond to the requests for production, the vast majority of the documents have never been so labeled or organized.[1] (Ex. 4 to Gerber Decl. Nov. 21, 2007.) In this era of electronically stored information in a case where there have been over 300,000 pages produced, and documents were produced 64 additional times after the first production, the only practical way to conduct document review is by topic.

While Plaintiffs were aware that Mr. Kirk had been a Trustee during the relevant time period, Plaintiffs began depositions by deposing Trustees who had served on the Board of Trustees for the longest time during the damages period. It was entirely reasonable that Plaintiffs would not focus on Mr. Kirk's role on the Board of Trustees until after several of the other Trustees had already been deposed. It is also entirely reasonable that Plaintiffs determined to depose Mr. Kirk only after reviewing all of his documents.

On August 10, 2007, Plaintiffs sent a letter to counsel for the Trustees requesting Mr. Kirk's documents in order to determine whether to depose him – a full seven weeks prior to the close of fact discovery. (Decl. of Nina H. Fields Oct. 19, 2007, ¶¶ 3-6 & Ex. A.) Plaintiffs sought assurances from the Trustees' counsel that the documents would be provided in a timely

---

[1] Part I of the Definitions and Instructions to Plaintiffs' First Request for Production Directed to Defendants, dated December 14, 2005, stated: "As Plaintiffs anticipate there are voluminous documents responsive to these requests, Plaintiffs request Defendants bates stamp, organize, and label the documents produced to correspond with the categories in this request pursuant to Fed. R. Civ. P. 34(b)."

fashion without a subpoena, and were repeatedly advised that the documents would be provided on or before September 17, 2007. (Id.) Plaintiffs deemed this agreement sufficient to provide time to complete their review of Mr. Kirk's documents and notice a deposition if they determined it to be necessary. (Pls. Mem. 2-3; Fields Decl. ¶¶ 3-6.)  It was not until Friday, September 21, 2007, that the Trustees' counsel finally sent Mr. Kirk's documents, and it was not until Tuesday, September 25, 2007 that Plaintiffs' counsel at Keller Rohrback had access to Mr. Kirk's documents to review them. Plaintiffs' counsel later received an additional production of Mr. Kirk's documents on Wednesday, October 17, 2007, 17 days after the close of fact discovery. (Pls. Mem. 4.)

Defendants pride themselves in producing 18 different times one document that Plaintiffs relied on in their motion. (Defs.' Mem. of Law in Opp., Nov. 5, 2007, at 5, hereafter "Defs. Mem.")  Defendants' redundant production only illustrates for the Court the challenges Plaintiffs faced in processing and reviewing 55 incremental productions of duplicative documents from the Defendants, not to mention the Trustees' productions. It would have been premature, and potentially cumulative in light of the other scheduled Trustee depositions in the case, to have noticed Mr. Kirk's deposition before completing those other depositions, or before reviewing his documents.  Therefore, it was only following a prompt and thorough review of the 5,882 pages in the first production of Mr. Kirk's documents that Plaintiffs concluded that it was necessary to depose him.  As the review of Mr. Kirk's documents coincided with the end of fact discovery, Plaintiffs sought to work with Defendants and the Trustees' counsel, who were still actively producing documents, to reach an agreement to stipulate to enlarge the period for discovery to depose Mr. Kirk. (Ex. 1 to Gerber Decl. Nov. 21, 2007; Exs. 2, 3, 4 to Decl. of Laura R. Gerber, Oct. 22, 2007.)

B.   **The Trustees and Defendants cannot refute the fact that Mr. Kirk has unique insight into key issues in the case**

1.   Group Fee

The management fee structure that Defendants charge to the subject mutual funds is a central issue in this case. (Pls. Mem. 5-6.) Fidelity's management fee structure differs from all other mutual fund complexes but one in that it includes three discrete fees: (i) a group fee with breakpoints based upon the monthly average net assets of all mutual funds in Defendants' complex;[2] (ii) an individual fee per fund; and (iii) for some funds, a performance adjustment. (Ex. 6 to Gerber Decl. Oct. 22, 2007; Pls. Mem. 5-6.) Plaintiffs seek information relevant to how the group fee rate schedule was set when it was last changed substantively in 1999, as well as any information relating to considerations made in the intervening years by the Trustees or Defendants as to whether to change the schedule's breakpoints, or how the schedule should be applied to equity funds versus other types of funds. No other witnesses deposed have been able to speak to these issues. Based upon all available discovery, Mr. Kirk appears to be the Trustee best positioned to address these issues.

Defendants and the Trustees both opine (i) that Mr. Kirk possesses no "unique" information about the group fee structure, (ii) that Plaintiffs could have asked other Trustees of their knowledge of the February 2003 group fee memorandum, and (iii) that Mr. Mann was on the Board with Mr. Kirk when the group fee last changed. (Defs. Opp. 6-7; Fidelity Indep. Trustees' Mem. in Opp., Nov. 5, 2007, at 6-8, hereafter "Trustee Opp.") If the Court were to follow *Gartenberg v. Merrill Lynch Asset Management Inc.,* 740 F.2d 190, 194 (2d Cir. 1984),[3]

---

[2] The breakpoints for the group fee reduce at the margin the percentage fees charged to shareholders as the assets in the complex increase. (Pls. Mem. 6).

[3] Although the *Gartenberg* court established a framework that some courts have used to determine whether a fee violates § 36(b) of the Investment Company Act of 1940, the First Circuit has not determined that the *Gartenberg* framework applies, and Plaintiffs do not concede that the *Gartenberg* standard should be applied in this case.

which has not been adopted in this district, one of the factors to be considered when analyzing whether fees charged by a mutual fund's investment adviser are excessive is the independence and conscientiousness of each trustee. Each Trustee is unique and has an individual duty to be independent and conscientious, and Plaintiffs are entitled to depose each Trustee regarding his or her role.

Defendants' and Trustees' statements about Mr. Kirk's role obfuscate that it was Mr. Kirk, and Mr. Kirk alone, who asked the Defendants to evaluate whether they had the right group fee schedule in place for the equity versus fixed-income funds in 2002. (Ex. 10 to Gerber Decl. Oct. 22, 2007.) Further, Mr. Kirk, and no other Trustee, had private meetings with Defendants about the group fee structure during this same time, and Mr. Kirk, not any other Trustee, stated that he would "recommend to the trustees that the issue not be raised again until an updated economies of scale study is done." (Ex. 11 to Gerber Decl. Oct. 22, 2007.) As Mr. Kirk was the Trustee who requested and received the memorandum in question, he is the only Trustee who is capable of answering the questions that Plaintiffs seek to have answered. Mr. Mann and Ms. Knowles were not recipients of the memorandum, so there appeared to be no foundation for Plaintiffs to have queried either one of them about it

The fact that Mr. Kirk had primary responsibility and knowledge of an issue (here the group fee structure) that all Trustees ultimately voted on is consistent with the manner in which the Fidelity Board operates. Because of the breadth of their responsibilities in overseeing some 350 mutual funds and the overwhelming volume of materials that they must review and analyze, the Trustees operate functionally by committee, and divide up oversight tasks based upon their

---

*Dumond v. Massachusetts Fin. Servs. Co.*, 2006 U.S. Dist. LEXIS 1933, at *4 (D. Mass. Jan. 19, 2006) (acknowledging the uncertain status of *Gartenberg* in the First Circuit); *Wicks v. Putnam Inv. Mgmt., LLP*, 2005 U.S. Dist. LEXIS 4892, at *12 (D. Mass. Mar. 28, 2005) ("The First Circuit has not expressly adopted the Gartenberg factors or established a specific pleading standard for § 36(b) claims.").

committee assignments.[4]  Thus, the Board relies to a great extent on recommendations made as a result of individual Trustees' committee work.  This division of labor is another reason that Mr. Kirk is the Trustee who has the most comprehensive knowledge of the group fee structure and rate schedule.

Owing to this division of labor, other Trustees, including Ned Lautenbach, Ms. Knowles, Mr. Mann, William Stavropoulos, and William McCoy, could not provide in their depositions any salient information about the group fee structure, its history, or the manner in which the breakpoints were set, beyond bland statements about the fact that they approve the fee schedules each year, and that, according to some, the rate structure might have last been revisited in 1999. (Exs. 7, 8, 9 to Gerber Decl. Oct. 22, 2007.)  When Mr. Mann was deposed, he was unable to state when the group fee structure had last been revisited and thought it had possibly been sometime in 2004. Mann Dep Tr. at 62:12-63:8 (Ex. 9 to Gerber Decl. Oct. 22, 2007.)

Defendants and Trustees seek to diminish Mr. Kirk's role in reviewing and approving the group fee structure during the damages period by stating that all the Trustees "negotiate" or "evaluate" the group fee every year. (Defs. Opp. 6; Trustee Opp. 9.)  At best it can be stated that the group fee rate schedule put in place in 1999 has been re-approved every year by the Board. (Ex. 5 to Gerber Decl. Nov. 21, 2007; Ex. 6 to Gerber Decl. Oct. 22, 2007.)  During the damages period, the Trustees have never deviated from their recommendation to continue the prior year's fee structure for the funds at issue. (Id.)

---

[4] For example, the Trustees received 848 pages of materials in their "Board of Trustees Electronic Book December 2006" to review in anticipation of their meeting in December 2006.  At the meeting, they likely received a number of additional pages of information summarizing presentations. In addition to the books and information received in connection with their monthly meetings, Trustees also receive information specific to their committee work, for example, the Audit Committee or the Equity Contract Committee, and are required to review and comment on that information on an as-needed basis in order to complete work for their committees. This can result in the need to review many more documents than those contained in the monthly board books or meeting materials that are provided to the plenary board.

      2.    Mr. Kirk's role on the Audit Committee

Mr. Kirk played a key role on the Audit Committee for many years. His documents reveal that he was concerned about many issues relating to the manner in which the Trustees fulfilled their fiduciary duties to the funds. Out of necessity to make a reasonably sized filing, the documents presented in Pls. Mem. regarding Mr. Kirk's role on the Audit Committee were limited. Defendants and Trustees seek to dismiss out of hand that Mr. Kirk had unique information relating to his service on the Audit Committee that Ms. Knowles, his successor, would not have had. (Defs. Opp. 7; Trustee Opp. 8-9.) This is not a winning argument for the simple fact that individuals serving on committees during *different* periods prior to and during the damages period had access to, and insight into, discrete information.

As a result of Mr. Kirk's long tenure on the Audit Committee and the Board (1987-2004), he played a different role from Ms. Knowles, and knows an institutional history different from and much longer than that known by Ms. Knowles. (Pls. Mem. 5.) Plaintiffs are entitled to seek discovery as to all *relevant* information, and the fact that Ms. Knowles could testify about the Audit Committee during her term of service in no way makes her testimony fungible with that of Mr. Kirk regarding a different time period.

Further, Defendants have also sought to bring the Court's attention to Mr. Mann's 2004 statement to a Senate subcommittee on the issue of how the Trustees fulfill their fiduciary responsibilities to over 300 funds. (Defs. Opp. 7; Dittmar Decl., Ex. C.) With all due respect, Mr. Mann's testimony before the Subcommittee did not address in any comprehensive way how the Trustees could adequately fulfill their fiduciary duties to each of the funds *individually,* as required by § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) (2000). Nor did Mr. Mann's testimony address any of the issues raised by Mr. Kirk to Ms. Knowles regarding how the Trustees' Audit Committee could say they scrutinized the financial statement

for *each* of the over 300 Fidelity funds in the complex. (Exs. 14, 15 to Gerber Decl. Oct. 22, 2007.)

**C.     Plaintiffs have sought to minimize any burden to Mr. Kirk**

Plaintiffs' counsel are aware that Mr. Kirk is retired. Plaintiffs' counsel offered to the Trustees' counsel to limit not only the amount of time for his deposition, but also the topics for deposition. The offer is still on the table, and any suggestion that Plaintiffs seek to unduly burden Mr. Kirk should be rejected, as should Trustees' counsel's complaint about the burden of preparing Mr. Kirk for deposition. Plaintiffs do not require that Mr. Kirk rehearse or practice his deposition testimony with his counsel or Defendants' counsel. Moreover, Mr. Kirk is a sophisticated, experienced and credentialed businessperson who approved several dozen of billions of dollars of payments from shareholders of Fidelity funds to Defendants. Trustees' counsel's suggestion that he might not remember much about this is off the mark.

### III.     CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' prior memorandum, Plaintiffs' Motion to Enlarge the Period for Discovery for the Limited Purpose of Conducting a Half-Day Deposition of Donald Kirk should be granted.

DATED November 29, 2007.

KELLER ROHRBACK L.L.P.

/s/ Laura R. Gerber
Lynn Lincoln Sarko *(pro hac vice)*
Michael D. Woerner *(pro hac vice)*
Laura R. Gerber *(pro hac vice)*
David Y. Chen *(pro hac vice)*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Gary Gotto
Ron Kilgard
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Michelle H. Blauner, BBO #549049
SHAPIRO HABER & URMY LLP
Exchange Place
53 State Street, 37th Floor
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

*Attorneys for Plaintiffs Nancy Haugen, Michael F. Magnan, Karen L. Magnan, Presley C. Phillips, Andrea M. Phillips, and Cindy Schurgin*

Robert D. Friedman, BBO# 180240
Harry S. Miller, BBO# 346946
Matthew J. Tuttle, BBO# 562758
Joshua N. Cook
Andrea Martin
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299

*Attorneys for Plaintiffs Cynthia A. Bennett and Guy E. Miller*

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent on November 29, 2007 to the following attorneys indicated as non-registered participants:

Robert J. Liubicic
MILBANK TWEED HADLEY & MCCLOY, LLP
One Chase Manhattan Plaza
New York, NY 10005-1413

David S. Cohen
Donna F. Mulvihill
MILBANK TWEED HADLEY & MCCLOY, LLP
International Square Building
1850 K Street, N.W.
Washington, DC 20006

                                                  /s/ Laura R. Gerber
                                                  Laura R. Gerber