UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT *et al.*, <br> for the use and benefit of <br> FIDELITY MAGELLAN FUND, FIDELITY <br> CONTRAFUND, FIDELITY GROWTH & <br> INCOME PORTFOLIO I FUND, FIDELITY <br> BLUE CHIP GROWTH FUND, and <br> FIDELITY LOW-PRICED STOCK FUND, <br><br>    Plaintiffs, <br><br>    v. <br><br> FIDELITY MANAGEMENT & RESEARCH <br> COMPANY and FMR CO., INC., <br><br>    Defendants. | No. 04-cv-11651-MLW <br> (Lead Case) <br><br> No. 04-cv-11756-MLW <br> (Consolidated Case) |

**PLAINTIFFS' OBJECTION TO ORDER ALLOWING
DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO
<u>QUASH THE DEPOSITION NOTICE OF EDWARD C. JOHNSON 3d</u>**

**I.    INTRODUCTION**

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), Plaintiffs object to the pretrial Electronic Order of Magistrate Judge Marianne B. Bowler, entered December 5, 2007. The Order, among other things, granted Defendants' Motion for a Protective Order to Quash the Deposition Notice of Edward C. Johnson 3d ("Motion for Protective Order") (Dkt. 99), which will prevent Plaintiffs from taking the properly-noticed deposition of a central figure in this case – Edward C. Johnson 3d.

Plaintiffs are mindful of the deference accorded to magistrate judges in their handling of pretrial matters and the broad experience they have in overseeing discovery matters. Plaintiffs, however, object to this particular Order of the Magistrate Judge as they believe that it is clearly erroneous and contrary to law.

## II.     BACKGROUND

Plaintiffs are shareholders of five mutual funds[1] (the "Funds") formed, distributed, managed, and advised by Defendants.  For these services Defendants charge to the Funds management and other fees, generally based on a percentage of each Fund's assets under management.  As noted in the Consolidated Complaint, in 2003 the Defendants collected over $800 million in fees from the Funds. (Consolidated Compl., Nov. 13, 2005 ¶ 22.)  Since Plaintiffs filed this case, Defendants have increased their rake by approximately 40 percent, taking in over $1.1 billion in fees from the Funds' shareholders for providing essentially the same services provided in 2003.  Total fees collected by Defendants from the Funds' shareholders in 2006 exceeded $1.5 billion.  Fidelity Magellan Fund, Annual Report (Mar. 31, 2006) at A-24 ($295 million); Fidelity Contrafund, Annual Report (Dec. 31, 2006) at 29 ($579 million); Fidelity Growth & Income Portfolio I Fund, Annual Report (July 31, 2006) at A-18 ($201 million); Fidelity Blue Chip Growth Fund, Annual Report (July 31, 2006) at 20 ($132 million); Fidelity Low-Priced Stock Fund, Annual Report (July 31, 2006) at 52 ($322 million).

Plaintiffs have brought claims against Defendants under § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) (the "ICA"), which provides,

> the investment adviser of a registered investment company [such as the Funds] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company or by the security holders thereof, to such investment adviser . . . .

Plaintiffs allege that Defendants violated that fiduciary duty by (1) charging excessive fees as a result of their retention of the benefits of the economies of scale enjoyed by Defendants in managing the Funds; and (2) charging excessive investment advisory and administrative fees.

As part of discovery in this matter, Plaintiffs noticed the deposition of Edward C. Johnson 3d on September 13, 2007.  The initial disclosures previously filed by Plaintiffs pursuant to Fed R. Civ. P. 26(a)(1) had identified Mr. Johnson as an individual likely to have

---

[1] The Funds are Fidelity Magellan Fund, Fidelity Contrafund, Fidelity Growth & Income Portfolio, Fidelity Blue Chip Growth Fund, and Fidelity Low-Priced Stock Fund.

discoverable information relevant to this matter. Defendants responded to the notice by filing their Motion for Protective Order (Dkt. 99) on September 28, 2007. Plaintiffs opposed the motion by their filing of October 17, 2007 (Dkt. 106). Defendants, in turn, filed a Reply to Plaintiffs' Opposition to Fidelity's Motion for a Protective Order to Quash the Deposition Notice of Edward C. Johnson 3d on November 29, 2007 (Dkt. 124).

Oral argument was heard by the Magistrate Judge on December 3, 2007. At the oral argument, Plaintiffs' counsel submitted a chalk for the Court's consideration, which detailed, among other things, the leadership positions that Edward C. Johnson 3d held in the various Fidelity entities and corporate relationships relevant to Plaintiffs' claims. The chalk is attached hereto as <u>Exhibit A</u>.

The Magistrate Judge entered an electronic order on December 5, 2007, which granted the Motion for Protective Order with only the following explanation:

> Although highly placed executives are not immune from discovery, a court may place limits upon such discovery. Bouchard v. New York Archdiocese, 2007 WL 272866, * 3 (S.D.N.Y. Sept. 19, 2007) (citing Fed.R.Civ.P. 26(b)(2)(C)). The burden of the discovery outweighs its likely benefit. It is also unreasonably cumulative or duplicative and was obtainable to a large degree from less burdensome sources. See Rule 26(b)(2)(C)(i) and (iii).

(Elec. Order, Dec 5, 2007.)

### III.   ARGUMENT

#### A.   Standard Of Review

A district judge may reconsider, modify, and set aside a magistrate judge's order on any nondispositive pretrial matter if the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5 (1st Cir. 1999); *United States v. Gioia*, 853 F. Supp. 21 (D. Mass. 1994).

B.   **The Broad Rules And Practices Permitting Discovery Clearly Allow For Mr. Johnson's Deposition**

Rule 26(b)(1) provides the broad scope of discovery, stating that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of the other party . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2007). "It is well established that the Rules of Civil Procedure contemplate broad and liberal discovery." *Fairbanks v. American Can Co.,* 110 F.R.D. 685, 687 (D. Mass. 1986). "The Supreme Court has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000), citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

These broad discovery provisions expressly apply to depositions as well. "[D]eposition-discovery rules are to be accorded a broad and liberal treatment. This is because mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Klosnoski v. Mahlab*, 156 F.3d 255, 268 (1st Cir. 1998), quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

Further, Fed. R. Civ. P. 26(c) requires that "good cause" be shown for a protective order to be issued such as that sought by Defendants in this case. The burden of showing the need for a protective order is on the party resisting discovery. *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973); *see also Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981). The moving party must show good cause with a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *General Dynamics Corp.*, 481 F.2d at 1212. "[I]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 144 (D. Mass. 1987).

      **C.**      **Mr. Johnson Is A Central And Unique Figure With Personal Knowledge Of Discoverable Information Whose Deposition Would Neither Be Unreasonably Cumulative Nor Unduly Burdensome**

Mr. Johnson has been a central player in much of the high-level decision-making that has taken place at Fidelity and which is at issue in this case. By virtue of his various leadership positions and his family's majority ownership of the privately-held Fidelity, Mr. Johnson appears to have been involved in or close to virtually all of the main areas of discovery inquiry in this case. This case involves the decisions, practices and policies pursued at the highest levels of Fidelity, and, consequently, the highest executives and trustees at Fidelity are necessarily involved. Mr. Johnson has been at the center of this decision-making for decades, and his leadership positions at virtually every level of Fidelity's business make him the central figure for many of the apparent conflicts of interest that exist in the processes and practices by which Fidelity sets its mutual fund management fees. Mr. Johnson's testimony cannot be replaced by another witness as he alone can testify as to his unique perspective and history with the company. His testimony would be neither cumulative nor duplicative. Finally the burden on Mr. Johnson in giving testimony is no greater than on any other witness who is an important business leader.

For a more complete discussion of these issues, Plaintiffs would refer the Court to Plaintiffs' Opposition to Defendants' Motion for a Protective Order to Quash the Deposition Notice of Edward C. Johnson 3d. (Dkt. 106). Without fully repeating the arguments raised therein, Plaintiffs would note the following in objecting to the Order of the Magistrate Judge.

- As reflected in <u>Exhibit A</u> hereto, Mr. Johnson either holds or has held the primary leadership position in entities at all levels of the Fidelity organization and covering all aspects of Fidelity's mutual fund business. He is the Chairman of the Board of Trustees, which Board is designed to oversee Fidelity's mutual funds and serve as a watchdog to protect the mutual funds' investors. He is the Chairman of Fidelity Management and Research Co. and President and Chairman of FMR Co., Inc., the advisor and sub-advisor, respectively, hired to manage all 350-plus of Fidelity's mutual funds. These advisors

owe a fiduciary duty to the mutual fund shareholders with respect to the management fees they charge. And Mr. Johnson is the President and Chairman of FMR Corp., the parent company that oversees all of Fidelity's businesses and which ultimately stands to benefit from the excessive fees Plaintiffs allege are being charged to Fidelity's five largest mutual funds.

- By virtue of these leadership roles, Mr. Johnson is in a highly conflicted position. He is at the head of both sides of the negotiations between the Trustees and the fund advisor, which negotiations are supposed to result in an arms-length bargain for the setting of reasonable management fees. In addition, the management fees, which Plaintiffs allege are grossly excessive, accrue to the ultimate benefit of the parent company, FMR Corp., of which Mr. Johnson is the head, and are used to expand the other various elements of Fidelity's businesses. Because any savings realized from economies are scale are supposed to be shared with the mutual fund investors, it is improper for Fidelity to continue to charge a full management fee to the shareholders of its largest mutual funds and use those fees to the aggrandizement of Fidelity's non-mutual fund businesses.
- These conflicts of interest and the fact that Fidelity is able to capture excessive mutual fund fees for the aggrandizement of its other, non-mutual fund businesses, are at the heart of this matter. How Mr. Johnson, who is at the head of each of these conflicts, is able to manage, reconcile or justify these conflicts is pivotal to this case. He alone can testify on these issues.

- Fidelity is a privately-held company with Mr. Johnson and his family holding a controlling interest. Mr. Johnson has worked at the company, started by his father, since 1957. Discovery has shown that, as a practical matter, much of the decision-making within Fidelity begins and ends with Mr. Johnson, and he should have personal

knowledge of many of the subjects at issue in this case. Far from being cumulative or duplicative, Mr. Johnson's testimony on virtually all topics would be unique because of his singular role in the organization and the sole responsibility he takes for much of Fidelity's operations.

- Because of his longevity in all aspects of Fidelity's corporate management, Mr. Johnson also has a unique perspective on at least two specific fact issues in the case: (i) the creation and continued use of Fidelity's unique management fee structure; and (ii) Fidelity's policies concerning economies of scale and the sharing of any related cost savings with Fidelity's mutual fund investors.
    - Fidelity's mutual fund management fee employs a "group fee" component, which is very different from the way mutual fund management fees are calculated throughout the rest of the industry. Fidelity's group fee structure was first implemented in 1978 and is still used today. Mr. Johnson has a unique perspective on Fidelity's opting for and continuing to implement this fee structure, which provides certain fee breakpoints based on all mutual fund assets under management at Fidelity, rather than the industry standard of providing fee breakpoints on a fund-by-fund basis. Fidelity claims that the group fee adequately shares with investors the cost savings in its largest funds due to economies of scale, which Plaintiffs dispute. This issue is central to the case, and Mr. Johnson was personally involved in such matters at the time the group fee was created and used continuously in subsequent years.
    - Similarly, many of the issues concerning economies of scale, Fidelity's ability to measure such economies, and Fidelity's policies for fulfilling its obligations for sharing such economies with its mutual fund customers predate the witnesses who have been available to Plaintiffs so far. Fidelity purportedly conducted a comprehensive economies of scale analysis in 1994. The 1994

7

> report reflects many policy decisions put in place at the time, and the report's conclusions have been repeatedly cited in subsequent years. Defendants have suggested a couple of other witnesses, in place of Mr. Johnson, who could speak about the 1994 report, but none was in the leadership roles that Mr. Johnson had in adopting the report as policy and following its analysis and conclusions in subsequent years.

- The Order incorrectly relies on Defendants' assertion that the discovery sought from Mr. Johnson "was obtainable to a large degree from less burdensome sources." As noted above, the other "sources" suggested by Defendants cannot replace the unique perspective and personal knowledge that Mr. Johnson has concerning the Fidelity policies and practices at issue in this case.[2] Moreover, with a strict limit on the number of depositions that Plaintiffs had available for discovery, Plaintiffs did not have the luxury of deposing a range of lower-level employees to determine whether they could provide some of the information that Plaintiffs reasonably believed would be provided by Mr. Johnson.[3]

- Defendants' only statement of burden, unsupported by affidavit, is that Mr. Johnson "travels extensively, in this country and around the world. Neither Mr. Johnson nor

---

[2] As the Court noted in *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 145 (D. Mass. 1987), simply because more than one witness may be asked about the same subject matter does not render that discovery unreasonably duplicative and cumulative. In discussing the potentially different perspectives of different witnesses on the same subject, the Court noted:

> Lower-level executives may have greater knowledge of the manner in which the plan was implemented or administered. The lower-level executives may even have their own views as to why the plan was implemented or administered in a particular way. But those with greater authority may have the last word on why Ford formulated and/or administered the plan in the manner which the lower-level executives described it as being formulated and/or administered. And as the ultimate authority, their views as to why may be of far greater probative value on the issue of intent and motive than the views of the lower-level executives

*Id*. at 146.

[3] Indeed, one of the alternative witnesses suggested by Fidelity, Karen Hammond, was not even identified on Defendants' initial disclosures pursuant to Rule 26(a)(1)(A).

Fidelity shareholders and employees can readily afford the distraction and time that would be required to prepare Mr. Johnson for his deposition, and for him then to sit for it." *See* Memorandum in Support of Motion for Protective Order (Dkt. 100) at 16 (footnotes omitted). Based on this assertion, Mr. Johnson is in no different position than any other busy senior corporate executive who would rather tend to his business than be deposed in an ongoing litigation. His position as a senior executive, however, does not exempt him from discovery. *See, e.g.*, *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985).

- The Magistrate Judge's reliance on Fed. R. Civ. P. 26(b)(2)(iii) is misplaced as the typical burden on Mr. Johnson as a deponent is clearly outweighed by the anticipated value of his testimony as discussed above. Moreover, Rule 26(b)(2)(iii) requires that any weighing of burden take into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and importance of the proposed discovery in resolving the issues." The importance and size of this litigation cannot be overstated as it involves the mutual fund investments of tens of thousands of Fidelity customers and the core policies and practices that dictate how Fidelity runs its mutual fund business and collects its mutual fund management fees. The damages at issue are in the hundreds of millions, if not billions, of dollars. Fidelity's vast resources enable it to easily deal with Plaintiffs' straightforward discovery requests. In light of these factors, any burden to Mr. Johnson in sitting for a deposition is clearly outweighed by the importance of Mr. Johnson's testimony as a central decision-maker at all levels of Fidelity's business.

- Even when a potential witness faces a substantial burden in sitting for a deposition, it is extraordinary for a party to be denied all discovery from that witness. The very case cited by the Magistrate Judge's Order, *Bouchard v. New York Archdiocese*, 2007 WL 2728666 (S.D.N.Y. Sept 19, 2007), permitted the plaintiff to depose the Archbishop of

9

the Archdiocese of New York by written questions, pursuant to Fed. R. Civ. P. 31, despite the witness establishing a lack of any personal knowledge about any of the allegations or relevant issues in the case. *Id*. at *4. The Court reasoned that:

> Given the fact that knowledge is frequently proved circumstantially, precluding all discovery of a highly placed business, government or clerical official based solely on their unchallenged denial of knowledge sets the bar for a protective order too low . . . parties to an action are ordinarily entitled to test a claim by a potential witness that he has no knowledge.

*Id*. at *5; *see Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (ruling in a personal injury matter involving a Chrysler automobile that plaintiffs could seek discovery from Chairman Lee Iacocca in the form of interrogatories and only then through oral deposition should the interrogatory responses be insufficient). The authority cited by the Magistrate Judge does not support her conclusion.

## IV.   CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' prior filings relating to the subject matter, the pretrial Electronic Order of Magistrate Judge Marianne B. Bowler granting Defendants' Motion for Protective Order should be reversed and Plaintiffs should be permitted to proceed with the oral deposition of Edward C. Johnson 3d.

By: _s/ Matthew J. Tuttle_
Michelle H. Blauner BBO # 549049
SHAPIRO HABER & URMY LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 439-3939

Lynn Lincoln Sarko
Michael D. Woerner
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Gary Gotto
Ron Kilgard
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012
Telephone: 602-248-0088

**Attorneys for Plaintiffs Nancy Haugen, Michael F. Magnan, Karen L. Magnan, Presley C. Phillips, Andrea M. Phillips, and Cindy Schurgin**


Harry S. Miller, BBO# 346946
Robert D. Friedman, BBO# 180240
Matthew J. Tuttle, BBO# 562758
Joshua Cook, BBO# 660346
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
(617) 345-3000

**Attorneys for Plaintiffs Cynthia A. Bennett and Guy E. Miller**

CERTIFICATE OF SERVICE

I hereby certify that, on the 19th day of December 2007, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                          s/ Matthew J. Tuttle

01201061