UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT, GUY E. MILLER, NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of THE FIDELITY MAGELLAN FUND, FIDELITY CONTRAFUND, FIDELITY GROWTH & INCOME PORTFOLIO I FUND, FIDELITY BLUE CHIP GROWTH FUND and FIDELITY LOW-PRICED STOCK FUND, <br><br> Plaintiffs, <br> v. <br><br> FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC., <br><br> Defendants. | CIVIL NO. 1:04-cv-11651-MLW (Lead Case) <br><br> CIVIL NO. 1:04-cv-11756-MLW (Consolidated Case) |

**PLAINTIFFS' OBJECTION TO
ORDER DENYING PLAINTIFFS' RENEWED MOTION TO COMPEL DISCOVERY**

**I. INTRODUCTION**

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), Plaintiffs object to the denial of Plaintiffs' Renewed Motion to Compel Discovery (Dkt. 95) by the Electronic Order of Magistrate Judge Marianne B. Bowler, entered December 5, 2007. The motion sought to compel Defendants to produce information regarding the amount of compensation paid to their employees who manage the investment portfolios of the five mutual funds at issue in this case. Plaintiffs seek this discovery, because it is relevant to their allegation that Defendants, which are investment advisers to the funds, violate their fiduciary duty to the funds'

shareholders under § 36(b) of the Investment Company Act of 1940 by receiving excessive fees for investment advisory and other services.

Plaintiffs acknowledge the vital role that magistrate judges have in the efficiency of the Federal judiciary, including in resolving discovery disputes. Mindful of the substantial deference accorded to magistrate judges in handling pretrial matters and the broad experience they have in overseeing discovery, Plaintiffs are reluctant to object to the Magistrate Judge's order. They do so here, because they believe that the implicit findings regarding the relevance of the discovery sought are clearly erroneous.

Plaintiffs request that this Court reverse the Order and grant Plaintiffs' Motion. The Magistrate Judge did not appear to give consideration to the facts that the information sought by Plaintiffs underlies a key justification of Defendants for their failure to share with the shareholders of each of the funds the savings from economies of scale inherent in managing a mutual fund, that Plaintiffs' consulting experts declared under oath that the discovery sought was required for certain analysis that is uniquely pertinent to the funds at issue and that these declarations were not specifically refuted by declarations of Defendants' experts or any other evidence, that certain components of the compensation data result in unusual fluctuations in compensation that merit investigation, and that there is no factual basis for a determination that the blanket protective order applying to this case is not sufficient to protect the confidentiality of the information sought. Review of these portions, and the balance, of the entire evidence and record regarding this issue should give this Court the "definite and firm conviction" that a mistake has been committed, resulting in determination of clear error. *See Peterson v. Wallace Computer Servs. Inc.*, 984 F. Supp. 821, 823-24 (D. Vt. 1997); *Rubin v. Smith*, 882 F. Supp. 212, 215 (D.N.H. 1995).

## II. BACKGROUND

### A. The complaint and legal context of the issue

Plaintiffs are shareholders of five mutual funds[1] (the "Funds") formed, distributed, managed and advised by Defendants. For these services Defendants receive from the Funds' shareholders fees for investment management and other services, generally based on a percentage of each Fund's assets under management. In 2003 Defendants collected over $800 million in investment management fees from the Funds. (Consolidated Compl., Nov. 13, 2005 ¶ 22.) Since Plaintiffs filed this case, Defendants have increased their rake for investment management by approximately 40 percent to over $1.1 billion, for providing essentially the same services as were provided in 2003. In total Defendants took over $1.5 billion in fees from the Funds' shareholders in 2006.[2]

Plaintiffs have brought claims against Defendants under § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b) (the "ICA"), which provides,

> the investment adviser of a registered investment company [such as the Funds] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company or by the security holders thereof, to such investment adviser . . . .

Congress enacted § 36(b) in the 1970 amendments to the ICA, recognizing that the mutual fund market was not competitive, even after the 1940 statute had been in effect for 30 years. Because the same company typically forms a mutual fund and controls its investment adviser, "the usual

---

[1] The Funds are Fidelity Magellan Fund, Fidelity Contrafund, Fidelity Growth & Income Portfolio, Fidelity Blue Chip Growth Fund and Fidelity Low-Priced Stock Fund.

[2] Fidelity Magellan Fund, Annual Report (Mar. 31, 2006) at A-24 ($295 million); Fidelity Contrafund, Annual Report (Dec. 31, 2006) at 29 ($579 million); Fidelity Growth & Income Portfolio I Fund, Annual Report (July 31, 2006) at A-18 ($201 million); Fidelity Blue Chip Growth Fund, Annual Report (July 31, 2006) at 20 ($132 million); Fidelity Low-Priced Stock Fund, Annual Report (July 31, 2006) at 52 ($322 million).

arm's-length bargaining between strangers does not exist between an advisor and the fund." *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982). Recent studies confirm that, 60 years after the ICA came into effect and another 30 years after § 36(b) was enacted, the mutual fund industry still suffers from a severe lack of price competition. *See, e.g.,* Peter J. Wallison & Robert E. Litan, *Competitive Equity: A Better Way to Organize Mutual Funds*, *passim* (American Enterprise Institute Press 2007); Donald C. Langevoort, *Private Litigation to Enforce Fiduciary Duties in Mutual Funds: Derivative Suits, Disinterested Directors and the Idea of Investor Sovereignty*, 83 WASH. U. L. Q. 1017, 1033-36 (2005); U.S. General Accounting Office, *Mutual Fund Fees: Additional Disclosure Could Encourage Price Competition*, June 5, 2000, at 12, 63, *available at www.gao.gov/archive/2000/gg00126.pdf*.

Plaintiffs allege that Defendants violate their fiduciary duty by charging excessive fees as a result of their retention of the benefits of the economies of scale[3] enjoyed by Defendants in managing the Funds and charging excessive investment advisory and administrative fees. Central to the fiduciary duty analysis in ICA § 36(b) cases are the costs to an investment adviser of providing services to a mutual fund, because those costs implicate (1) "the profitability of the fund to the adviser-manager" and (2) "economies of scale" in operating a fund as it grows larger. These factors have been held to be considerations in assessing the reasonableness of the fees being charged, as excessive profitability to the investment adviser suggests that the fee is greater

---

[3] Economies of scale is the economic concept that the per-unit cost of production decreases as the number of units produced increases, generally because fixed costs can be allocated to more units of production. In a widget factory that costs $100 to build, where each widget requires $1 of raw materials and labor to produce, the average cost of the second widget is $51 (the $100 factory plus $2 of raw materials and labor, divided by two), but the average cost of the 100th widget is $2 (the $100 factory plus $100 of raw materials and labor, divided by 100). *Gartenberg* recognizes that mutual funds realize economies of scale because of fixed costs and that the benefits thereof should devolve to the funds' shareholders, and suggests that evaluation of an investment advisor's sharing of economies of scale benefits with shareholders is a consideration of fiduciary duty under the fund. *See* 694 F.2d at 929-30; *but see* n.4 below.

than what is reasonable, and the economies of scale realized by mutual funds (it costing no more to manage the billionth-and-first dollar than to manage the billionth dollar or to manage the same investment portfolio when the value of assets under management increases due to rises in stock prices) should devolve to the funds' shareholders. *See Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) (*citing Gartenberg*, 694 F.2d at 929-30).[4]

**B.    Factual background and pertinent proceedings to date**

For each Fund, there is one employee of Defendants, known as a "portfolio manager," who manages its portfolio of investments. Since 2003, there have been eight different portfolio managers among the five Funds. Defendants have redacted from produced documents all information concerning the amounts of compensation paid to the portfolio managers. Similarly, Defendants' counsel and counsel to the independent trustees of the Funds instructed the deponents whom they purported to represent not to answer Plaintiffs' counsels' deposition questions about the amounts of compensation paid by Defendants to their portfolio managers. On June 21, 2007, Plaintiffs filed a Motion to Compel Discovery, in part seeking to compel Fidelity to produce document discovery and deposition testimony concerning the amounts of portfolio manager compensation.[5] After briefing by the parties, the Magistrate Judge heard argument on the motion

---

[4] Although the *Gartenberg* court established a framework that some courts have used to determine whether a fee violates ICA § 36(b), the First Circuit has not determined that the *Gartenberg* framework applies, and Plaintiffs do not concede that the *Gartenberg* standard should be applied in this case. *Dumond v. Mass. Fin. Servs. Co.*, No. 04-11458, 2006 U.S. Dist. LEXIS 1933, at *4 (D. Mass. Jan. 19, 2006) (acknowledging the uncertain status of *Gartenberg* in the First Circuit); *Wicks v. Putnam Inv. Mgmt., LLC*, No. 04-10988, 2005 U.S. Dist. LEXIS 4892, at *12 (D. Mass. Mar. 28, 2005) ("The First Circuit has not expressly adopted the Gartenberg factors or established a specific pleading standard for § 36(b) claims.").

[5] The record regarding the issue at hand is comprised of the following filings and orders:

- Plaintiffs' Motion to Compel Discovery and related Memorandum in Support of Plaintiffs' Motion to Compel Discovery, June 21, 2007, at 17-20 (Dkts. 71, 72);
- Affidavit of Matthew J. Tuttle, June 21, 2007 (Dkt. 73);

(footnote continues on next page)

on July 18, 2007. At the hearing the Magistrate Judge denied without prejudice the portion of Plaintiffs' motion relating to portfolio manager compensation and gave Plaintiffs leave to renew their motion on that issue "upon a further and much stronger showing of need." (Hr'g Tr., Jul. 18, 2007, at 39:8-10.) On September 17, 2007, Plaintiffs filed a renewed motion, along with two declarations by Plaintiffs' consulting experts and additional documentary support. After briefing by the parties, argument was heard on December 3, 2007. The Magistrate Judge entered an order on December 5, 2007 denying Plaintiffs' motion, "given the inadequate further showing of need on the part of the plaintiffs." (Elec. Order, Dec 5, 2007.)

### III. ANALYSIS

#### A. Standard of review

A district judge may reconsider, modify, and set aside a magistrate judge's order on any nondispositive pretrial matter if the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5 (1st Cir. 1999); *United States v. Gioia*, 853 F. Supp. 21 (D. Mass. 1994). "This

---

- Defendants' Memorandum of Law in Opposition, July 9, 2007, at 17-25 (Dkt. 84);
- Affidavit of James Dittmar, July 9, 2007 (Dkt. 85);
- Plaintiffs' Memorandum in Reply to Defendants' Memorandum of Law in Opposition, July 17, 2007, at 8-10 (Dkt. 87);
- Transcript of Motion Hearing held on July 18, 2007 (Dkt. 90);
- Plaintiffs' Renewed Motion to Compel Discovery, Sept. 17, 2007 ("Pls.' Renewed Mot.") (Dkt. 95);
- Declaration of Laura R. Gerber, Sept. 17, 2007 (Dkt. 96);
- Declaration of Steve Pomerantz, Ph.D., Sept. 17, 2007 (Dkt. 97);
- Declaration of Jim Lamb, Sept. 17, 2007 (Dkt. 98);
- Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion to Compel Discovery, Oct. 2, 2007 (Dkt. 101);
- Affidavit of James Dittmar, Oct. 2, 2007 (Dkt. 102);
- Plaintiffs' Surreply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion to Compel Discovery, Nov. 2, 2007 (Dkt. 118);
- Declaration of David Chen, Oct. 29, 2007 (Dkt. 113);
- Declaration of Jim Lamb, Oct. 29, 2007 (Dkt. 114); and
- Declaration of Steve Pomerantz, Ph.D., Oct. 29, 2007 (Dkt. 115).

means that we must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, we 'form a strong, unyielding belief that a mistake has been made.'" *Phinney*, 199 F.3d at 4 (noting that appellate court's and district court's standard of review are same) (quoting *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)).

**B.    Plaintiffs adduced substantial evidence of the relevance of the discovery sought.**

As Plaintiffs noted in their Nov. 2, 2007 Reply,

> FED. R. CIV. P. 26(b)(1) provides for the discovery of relevant, nonprivileged matters. The discovery that the rule permits is broad and liberal. *Fairbanks v. American Can Co.*, 110 F.R.D. 685, 686 (D. Mass. 1986); *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

The breadth and liberty of discovery are not controversial. *Ares-Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219 (D. Mass. 1993) (holding that "[a] document is relevant [and subject to discovery] 'if there is *any possibility* that the information sought may be relevant to the subject matter of the action'") (quoting *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) ("discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.") (citation omitted)).

Plaintiffs established the relevance and showed their need for discovery of the amount of portfolio manager compensation through factual argument, supported by declarations of two consulting experts retained by Plaintiffs and documentary evidence from Defendants' production. Among other points, Plaintiffs noted the following:

- Defendants and the trustees of the Funds – in the process of justifying the fees taken by Defendants from the shareholders of the Funds – claim that Defendants may experience diseconomies of scale in managing the Funds and Defendants' other larger mutual funds,

7

specifically because portfolio managers of larger funds command higher compensation. (Mem. in Supp., June 21, 2007, at 19; Mem. Reply, July 17, 2007, at 9-10; Renewed Mot., Sept. 17, 2007, at 3-4.) Plaintiffs are entitled to investigate and challenge this assertion, as it is goes directly to whether the Funds experience economies of scale – a central question in this case – and is a conclusion of the very process that Defendants have adopted to support their contention that the fees they charge the Funds are lawful under ICA § 36(b). Moreover the compensation of a Fund's portfolio manager comprises part of Defendants' cost of providing the services for which they are charging fees. That cost implicates both profitability and economies of scale, which are factors that the Court may consider in assessing whether Defendants have fulfilled their fiduciary duty. *See* above at 4-5.

- Compensation of Defendants' portfolio managers is a complex web of salary, bonus and two equity-based compensation programs called "share program expense" and "other share program expense" that needs to be unwound for analysis. (Renewed Mot., Sept. 17, 2007, at 2.)
- Portfolio manager compensation is the single item of Defendants' expense that can be directly attributed to a specific Fund. Defendants subjectively allocate all other costs when determining the profitability of a Fund. (*Id.* at 3.)
- Plaintiffs' consulting experts identified portfolio manager compensation to be information essential to proper review and evaluation of the profitability of and economies of scale experienced by the Funds at issue in this case. (*Id.* at 4.)
    - Portfolio manager compensation is typically a mutual fund's single greatest management expense; as the greatest single expense, it can significantly impact re-

8

ported profitability and economies of scale. (*Id.* at 4.) Compensation expense overall accounts for approximately two thirds of the total investment management expense of at least four of the five Funds. (Reply, Oct. 19, 2007, at 7.)

- In their profitability calculations, Defendants allocate the portfolio manager compensation expense of *other* mutual funds to the Funds at issue in the case. The effect of this can be discerned only if the amount of a Fund's portfolio manager compensation or the amount of the other funds' portfolio manager compensation is known. Defendants' decision to allocate other funds' portfolio manager compensation expense to the Funds, as well as Defendants' other subjective allocation decisions made in their calculation of the Funds' profitability –calculations that are performed solely for the purpose of justifying the fee that Defendants collect – are areas that Plaintiffs' consulting experts wish to assess and are legitimate areas of scrutiny in this case. (*Id.* at 6.)

- Portfolio manager compensation includes equity-based components that are based on the profitability of Defendants' business. If these components are counted as an expense (*i.e.*, corporate profit is paid to employees, counted as an expense and deducted from revenue, thereby reducing reported profit), then Defendants' profits on the Funds can be understated. (Renewed Mot., Sept. 17, 2007, at 5-6.)

- The equity-based component of portfolio manager compensation is suspect and merits detailed scrutiny, because Defendants' own analysis shows that it is highly variable. For instance, Defendants' analysis showed that equity compensation elevated the 2004 to 2005 rise of investment management expense by nearly 50 percent, turning a 13.5 percent increase into a 19.7 percent increase. Plaintiffs'

consulting expert's analysis of Defendants' own data showed that, depending on whether the equity component of compensation were included, the year-to-year change in Defendants' overall fund management expense could change from positive to negative, or vice versa, and that the change could be as much as 55 percentage points in a year. (*Id.* at 5-6 (citing Pomerantz Decl., Sept. 14, 2007, ¶¶ 17-19; Excerpt from 2005 Annual Mutual Fund Profitability Analysis (Apr. 11, 2006) at 8 (Ex. 3 to Gerber Decl., Sept. 17, 2007)).) Defendants' own analysis also showed that portfolio manager compensation expense can change drastically from year to year, for instance increasing by ***34 percent*** and ***15 percent*** in 2003 and 2004, respectively. (Reply, Oct. 19, 2007, at 7 (citing Overview of Investment Incentives, Dec. 2005 at BFMR00255229 (Ex. B to Chen Decl., Oct. 29, 2007)).) Such drastic changes merit further, detailed analysis.

- The amount of portfolio manager compensation simply may be unreasonably high or excessive when compared to the market. (Renewed Mot., Sept. 17, 2007, at 5.)
- The effects of these observations were illustrated with specific examples in Plaintiffs' filings. (*Id.* at 4-6, 10-11.)

- Aspects of the analyses that Plaintiffs' consulting experts wish to perform are similar to the review of Fund profitability undertaken by Defendants' outside accountants, who request and receive the very information that Plaintiffs seek to discover. (Reply, Oct. 19, 2007, at 8.)

## C.   Defendants' protestations of irrelevance and burden are unavailing.

In refusing to comply with Plaintiffs' request for this relevant discovery, Defendants raised essentially six arguments:

1. That portfolio manager compensation has not been specifically referenced in a reported ICA § 36(b) case, and that one district court, in two sentences in a memorandum order in a different case with different facts, declined to compel production of portfolio manager income or bonus information. (Mem. of Law in Opp'n, July 29, 2007, at 19; Mem. of Law in Opp'n, Oct. 2, 2007, at 8-9.)

2. That they have produced volumes of other information about portfolio manager compensation, such as its forms, the methodology of its determination and methods behind its allocation for the fund profitability calculations. (Mem. of Law in Opp'n, July 29, 2007, at 17-18.)

3. That Plaintiffs' consulting experts' statements about the relevance of portfolio manager compensation are contradictory, and that Defendants' consulting experts can perform accounting and economic analysis without scrutiny of the underlying data. (Mem. of Law in Opp'n, Oct. 2, 2007, at 2-8.)

4. That the Funds' independent trustees have declined to pursue or consider portfolio manager compensation in their assessment of the fees paid by the Funds to Defendants. (*Id.* at 10-12.)

5. That the Securities and Exchange Commission in rulemaking, "acknowledg[ing] . . . privacy and competitive concerns," has not required that portfolio manager compensation be publicly disclosed. (*Id.* at 10.)

6. That portfolio manager compensation is highly confidential and valuable competitive information, which cannot be adequately protected by the blanket protective order in this case. (Mem. of Law in Opp'n, July 29, 2007, at 21-24; Mem. of Law in Opp'n, Oct. 2, 2007, at 12-14.)

None of these arguments are availing, for the reasons set forth in Plaintiffs' moving and reply papers, including among others these:

1. That the structure of Defendants' portfolio manager compensation is uniquely complex and includes the obscurely named equity- (profit-)based "share program expense" and "other share program expense," which are not seen in other companies' mutual funds and may be improperly used to reduce reported profitability levels. (Renewed Mot., Sept. 17, 2007, at 2, 4-6.)

2. That qualitative, descriptive information about the structure and components of portfolio manager compensation does not address the pertinent issue of the amount of portfolio manager compensation. (Reply, Oct. 19, 2007, at 8.)

3. That while Defendants may wish to constrain their experts' analysis to uncritical review of total, conclusory values reported by Defendants, the validity of those values is properly subject to Plaintiffs' consulting experts' scrutiny, and that the amount of portfolio manager compensation is known to employees of Defendants' own independent accountants, who request such information in auditing Defendants' profitability analysis. (*Id.* at 6-8.)

4. That the independent trustees' refusal to pursue or consider actual portfolio manager compensation is evidence that they were not fully informed of all material facts and goes to the substantive quality of their discharge of the fiduciary duty they owe to the Funds' shareholders. (Renewed Mot., Sept. 17, 2007, at 6-7.)

5. That the SEC's rule proposals regarding portfolio manager compensation do not state any "privacy [or] competitive concerns," that in the very rulemaking cited by Defendants the SEC requested further comments on whether to require disclosure of actual

amounts of portfolio manager compensation, and that in any event the SEC's rulemaking regarding disclosure is not pertinent to the issue of Defendants' fulfillment of their fiduciary duty. (Hr'g, Dec. 3, 2007; 69 Fed. Reg. 12,752, 12,755.)

6. That Plaintiffs have abided by the blanket protective order in this case, and Defendants have no factual grounds to support their anticipation that Plaintiffs would breach the protective order or their insistence that a constructive prior restraint be placed on the disclosure of relevant, discoverable information. (Renewed Mot., Sept. 17, 2007, at 7; Reply, Oct. 19, 2007, at 12-13.) If necessary, the protective order could be modified to impose additional restrictions on the information, such as limiting access to Plaintiffs' counsel and experts.

## IV. CONCLUSION

For the foregoing reasons and others, all as set forth in Plaintiffs' prior filings and the prior proceedings relating to this issue, the pretrial Electronic Order of Magistrate Judge Marianne B. Bowler denying Plaintiffs' Renewed Motion to Compel Discovery should be reversed and Plaintiffs' motion granted.

Dated December 19, 2007.

    Respectfully submitted,

    KELLER ROHRBACK L.L.P.

    /s/ David Y. Chen
    Lynn Lincoln Sarko *(pro hac vice)*
    Michael D. Woerner *(pro hac vice)*
    Laura R. Gerber *(pro hac vice)*
    David Y. Chen *(pro hac vice)*
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    Telephone: (206) 623-1900
    Facsimile: (206) 623-3384

Gary Gotto
Ron Kilgard
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Michelle H. Blauner, BBO #549049
SHAPIRO HABER & URMY LLP
Exchange Place
53 State Street, 37th Floor
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

*Attorneys for Plaintiffs Nancy Haugen, Michael F. Magnan, Karen L. Magnan, Presley C. Phillips, Andrea M. Phillips, and Cindy Schurgin*

Robert D. Friedman, BBO# 180240
Harry S. Miller, BBO# 346946
Matthew J. Tuttle, BBO# 562758
Joshua N. Cook
Andrea Martin
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299

*Attorneys for Plaintiffs Cynthia A. Bennett and Guy E. Miller*

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent on December 19, 2007 to the following attorneys indicated as non-registered participants:

Robert J. Liubicic
MILBANK TWEED HADLEY & MCCLOY, LLP
One Chase Manhattan Plaza
New York, NY 10005-1413

David S. Cohen
Donna F. Mulvihill
MILBANK TWEED HADLEY & MCCLOY, LLP
International Square Building
1850 K Street, N.W.
Washington, DC 20006

/s/ David Y. Chen
David Chen