**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CYNTHIA A. BENNETT, GUY E. MILLER, NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of THE FIDELITY MAGELLAN FUND, FIDELITY CONTRAFUND, FIDELITY GROWTH & INCOME PORTFOLIO I FUND, FIDELITY BLUE CHIP GROWTH FUND, and FIDELITY LOW-PRICED STOCK FUND,<br><br>                      Plaintiffs,<br><br>    vs.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC.,<br><br>                      Defendants. | CIVIL NO. 1:04-cv-11651-MLW<br>(Lead Case)<br><br>CIVIL NO. 1:04-cv-11756-MLW<br>(Consolidated Case) |

**DEFENDANTS' SURREPLY TO PLAINTIFFS' OBJECTIONS TO ORDER DENYING PLAINTIFFS' RENEWED MOTION TO COMPEL DISCOVERY (DKT. 130) AND ORDER ALLOWING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO QUASH THE DEPOSITION NOTICE OF EDWARD C. JOHNSON 3d (DKT. 131)**

                                                          James S. Dittmar (BBO# 126320)
                                                          David J. Apfel (BBO# 551139)
                                                          Sarah Heaton Concannon (BBO# 646884)
                                                          GOODWIN PROCTER LLP
                                                          Exchange Place
                                                          53 State Street
                                                          Boston, Massachusetts 02109
                                                          Tel: (617) 570-1000

                                                          James N. Benedict
                                                          Sean M. Murphy
                                                          MILBANK, TWEED, HADLEY &
                                                           MCCLOY LLP
                                                          One Chase Manhattan Plaza
                                                          New York, New York 10005
                                                          Tel: (212) 530-5000
                                                          *Attorneys for Defendants Fidelity Management &*
Dated:  February 20, 2008                      *Research Company and FMR Co., Inc.*

In objecting to Magistrate Judge Bowler's discovery rulings, plaintiffs are required to show that her rulings were either clearly erroneous or an abuse of discretion. Plaintiffs' Reply ("Reply") (Dkt. 138), like plaintiffs' initial brief, does not come close. Instead, while accusing defendants of "*ad hominem*" attacks, plaintiffs' Reply engages in gratuitous name-calling, devotes substantial space to an attempt to rebut facts that are irrelevant to plaintiffs' objections and the underlying discovery rulings, and fails to show why the requested discovery is necessary or how it is anything more than a pretext for improperly causing disruption to Fidelity's business. Plaintiffs have presented nothing to meet their heavy burden.

### A. Whether The Mutual Fund Industry Is Competitive Is Irrelevant To Plaintiffs' Objections.

In their initial brief, plaintiffs asserted that "the mutual fund industry still suffers from a severe lack of price competition." Pls. Obj. (Dkt. 130) at 4. In response, defendants noted, by way of background, that one of defendants' experts, R. Glenn Hubbard, Ph.D., Dean of Columbia School of Business and former Chairman of the President's Council of Economic Advisers, will testify that the mutual fund industry is and has long been highly competitive. *See* Response (Dkt. 136) at 4-5 & n.4. In reply, Plaintiffs now claim that the competitiveness of the mutual fund industry is "irrelevant to the issues before the Court." Reply (Dkt. 138) at 4.[1] Plaintiffs are correct and defendants have never suggested otherwise. Even though there is overwhelming evidence that the mutual fund industry is highly competitive, and that the

---

[1] Although arguing that the existence of competition is "irrelevant" and "inapposite," plaintiffs nevertheless purport to cite recent authority for the proposition that the mutual fund industry is not competitive. Pls. Reply (Dkt. 138) at 4 (quoting Peter J. Wallison & Robert E. Litan, *Competitive Equity: A Better Way to Organize Mutual Funds* 1 (American Enterprise Institute 2007)). But Wallison and Litan, both of whom have been colleagues of Professor Hubbard's at the American Enterprise Institute, do not find that there is a lack of competition among mutual funds. To the contrary, they recognize the industry as competitive, but note that "rate regulation" by mutual fund boards of directors constrains the competitiveness of the industry with respect to fees. *See* Wallison & Litan at 1-2, 5-7. They opine that independent trustees may impose an unnatural constraint on an already competitive industry that would otherwise be even more competitive. *See id.* at 8 ("[U]nless investment advisers are free to set their own prices for their services, they are not able to compete effectively on price, no matter how many 'competitors' they have.").

competition constrains fees, this Court need not reach the issue of competition to resolve plaintiffs' current objections.

      **B.    The Name Calling Directed At Fidelity's Independent Trustees Is Misplaced, And Irrelevant To Plaintiffs' Objections.**

Plaintiffs concede that the Fidelity Independent Trustees are "well-credentialed and reputable," but then lump them together with thousands of other independent mutual fund trustees and directors, suggesting, through a quotation from Warren Buffet, that, in general, independent directors are "pathetic," "zombie-like," and no better than "monkey[s]." Reply at 5-6. The record here, however, makes clear that Fidelity's independent trustees are cut from a different cloth. Not only are they highly qualified; they also receive all necessary information in a digestible and comprehensible format, ask hard questions, deliberate independently, and negotiate at arms length with the adviser with regard to fees.[2] *See* Response (Dkt. 136) at 5 & nn.5-6. At the same time, whether or not Fidelity's independent trustees exercise sound business judgment (as the undisputed record makes clear they do) is irrelevant to the issue before the Court on plaintiffs' objections to Magistrate Judge Bowler's discovery rulings. Plaintiffs' lengthy argument, including the disparaging Warren Buffett quotation, is nothing more than a distraction.

      **C.    Plaintiffs' Current Counsel Pressed These Discovery Demands After And/Or At the Same Time That Their More Experienced Co-Counsel Were Withdrawing From The Case.**

Plaintiffs assert that defendants' statement that current plaintiffs' counsel pressed the discovery demands that are at issue only after and/or coincident with the withdrawal of their

---

[2]    Plaintiffs suggest that the independent trustees have not reduced the rates charged to any of the Funds. Reply at 5. This suggestion is false. Management fees and other fees charged to the Funds have come down over time as a direct result of the independent trustees' negotiations with Fidelity. *See, e.g.,* Fidelity's Presentation to the Board of Trustees re "Summary of Economies of Scale Discussions", dated March 15, 2006, at BFMR_00153930-31, attached hereto as Exhibit A (demonstrating that as a result of the negotiated breakpoints in the group fee, management fees for the funds at issue have declined from 2003-2005 as total assets across the complex have increased).

2

more experienced co-counsel "is incorrect as a factual matter" and constitutes an "attempt to disparage plaintiffs' counsel." Reply at 6. But the factual chronology speaks for itself:

- May 25, 2007: Plaintiffs' counsel from the firms of Ackerman, Link & Sartory and Thomas R. Grady, P.A. withdraw their appearance. *See* Dkt. 70.

- June 21, 2007: Plaintiffs file motion to compel portfolio manager compensation. *See* Dkt. 71-73.

- July 18, 2007: Magistrate Judge Bowler denies plaintiffs' motion to compel information regarding portfolio manager compensation, with leave to renew the motion within 60 days, upon "a further and much stronger showing of need." 7/18/07 Tr. at 39.

- September 13, 2007: Plaintiffs notice the deposition of Edward C. Johnson 3d. (Magistrate Judge Bowler later issues a protective order as to Mr. Johnson's deposition, which is the basis for plaintiffs' second objection. *See* Dkt. 131.)

- September 17, 2007: Plaintiffs' counsel from the firms of Richardson, Patrick, Westbrook & Brickman, LLC and Johnson, Pope, Bokor, Ruppel & Burns, LLP withdraw their appearance. *See* Dkt. 93-94.

- September 17, 2007: Remaining plaintiffs' counsel file a renewed motion to compel discovery of portfolio manager compensation. *See* Dkt. 95-98. (This renewed motion is the basis of the Magistrate Judge's ruling on December 5, 2007, from which the plaintiffs' first objection arises. *See* Dkt. 130.)

This chronology leaves little question that "as a factual matter" the decision by current plaintiffs' counsel to pursue information concerning portfolio manager compensation and Mr. Johnson's deposition came after and/or at the exact time that more experienced plaintiffs' counsel were abandoning this case. This is evidence that counsel's effort to obtain what the Magistrate Judge correctly characterized as unnecessary discovery was pretextual.

3

### D. The Magistrate Judge Appropriately Exercised Her Discretion To Preclude Unduly Burdensome Discovery.

Plaintiffs assert that because the discovery sought does not impose a threat of substantial discovery expense, it is not "oppressive." *See* Pls. Reply at 3. But quantity is not the only measure of oppression. Neither Rule 26(c) nor *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) draws a distinction between discovery that is *quantitatively* oppressive due to volume and concomitant expense, and discovery that is *qualitatively* oppressive due to the highly sensitive nature of the information sought or the significance of a senior executive to a company's global operations combined with an absence demonstrable need for the information. *See, e.g.*, *Twombly*, 127 S.Ct. at 1967 (quoting Frank H. Easterbrook, *Discovery as Abuse*, 69 B.U. L. Rev. 635, 638-39 (1989) (discussing danger of "impositional" and "abusive" discovery requests, "justified by the costs [they] impose[] on one's adversary rather than by the gains to the requester derived from the contribution the information will make to the accuracy of the judicial process")). Here, plaintiffs persist in seeking discovery they do not need but which could impose substantial business harm, risk and concomitant costs on Fidelity. *See* Response at 1-3, 18-23. Rule 26(c) contemplates that district courts should intervene to prevent exactly such abuse. *See* Fed. R. Civ. P. 26(c). And that is precisely what Magistrate Judge Bowler did. In so doing, she did not abuse her discretion.

### E. Plaintiffs' Arguments With Respect To Portfolio Manager Compensation Are Inconsistent And Belie Plaintiffs' Lack Of "Need."

Plaintiffs argue that "Defendants' accusation that the positions of Plaintiffs' counsel and consulting experts have been contradictory and inconsistent" is an exercise in "sophistry." Pls. Reply at 7. The record belies plaintiffs' argument. *See* Response at 11-13. Plaintiffs' flip-flops are abundant. For example:

4

- First, Plaintiffs argued that their experts "have identified portfolio manager compensation to be information *essential* to proper review and evaluation of the profitability and economies of scale of the funds." Pls. Renewed Mtn. at 4 (Dkt. 95) (emphasis added).

- Fidelity then showed that Plaintiffs' experts had never before identified portfolio manager compensation information as "essential." To the contrary, these experts had testified on precisely the same issues of profitability and economies of scale in other, virtually identical, Section 36(b) cases without using portfolio compensation data even though it was available to them. *See* Renewed PM Comp. Memo. at 1-6 (Dkt. 101).

- Plaintiffs next asserted that Fidelity's criticism of Plaintiffs' experts for having claimed "that it would be impossible to perform their analyses without portfolio manager compensation data" was "untrue" and "incorrect." Plaintiffs' Surreply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion to Compel Discovery, at 3 (Nov. 2, 2007) (Dkt. 118).

- Now, before this Court, plaintiffs return to their original position and argue that individual portfolio manager compensation data is "required" by their experts. Pls. Opp. (Dkt. 130), at 2; Pls. Reply at 2.

### F. Plaintiffs Do Not Establish That Mr. Johnson's Deposition Is "Necessary."

Plaintiffs assert that defendants' characterization of their effort to depose Mr. Johnson as "harassment" is "outrageous." Reply at 7. But what is an eleventh hour effort to take an unnecessary deposition of a company's senior-most executive if not harassment?

Notwithstanding plaintiffs' current protestation to the contrary, defendants have not characterized Mr. Johnson as "aloof," Reply at 7. Rather, defendants maintain that as to the specific issues on which discovery is purportedly sought, Mr. Johnson's testimony would be cumulative and/or duplicative of discovery already obtained, or the requested testimony is nothing more than information plaintiffs readily could have obtained from less intrusive sources. *See* Response at 14-16. Furthermore, it should be noted that in a good faith effort to provide plaintiffs with the discovery they profess to desire from Mr. Johnson (but which he cannot give them), defendants cited the superior knowledge of Stephen Jonas and Karen Hammond. *See* Response at 16. Plaintiffs now disparage that offer by characterizing Mr. Jonas and Ms.

5

Hammond as "lower-level Fidelity personnel" whose knowledge merely "overlaps" with Mr. Johnson's. Reply at 8. But Mr. Jonas and Ms. Hammond are anything but "lower-level." Mr. Jonas is Fidelity's recently retired Executive Director, who was also at various times Fidelity's Chief Financial Officer, senior-most executive of its investment advisory business and a member of the Fidelity Board of Trustees. Ms. Hammond is currently a Managing Director of Devonshire Investors, a private equity subsidiary of FMR LLC, reporting to the Chairman of that business. Prior to that, she held various senior management positions within the organization. Most recently, she was a Senior Vice President at FMR Co. with responsibility for, among other things, finance, legal, compliance, fund treasury, and product design and implementation. Ms. Hammond also previously served as Corporate Treasurer of FMR Corp. That plaintiffs turned down the opportunity to depose Mr. Jonas and Ms. Hammond, and now demean them as "lower-level," is additional evidence that plaintiffs' desire to take Mr. Johnson's deposition is pretext, pure and simple. Magistrate Judge Bowler was acting well within her discretion when she denied this improper effort.

## CONCLUSION

Magistrate Judge Bowler's rulings with respect to the two discovery requests at issue reflect the reasoned and sound exercise of the court's discretion. Plaintiffs have provided no ground on which to second-guess the Magistrate Judge's rulings, or to find her rulings either clearly erroneous or an abuse of discretion. Plaintiffs' objections must, therefore, be denied.

        Respectfully submitted,

        GOODWIN PROCTER LLP

            /s/ James S. Dittmar
          James S. Dittmar (BBO# 126320)
          David J. Apfel (BBO# 551139)
          Sarah Heaton Concannon (BBO# 646884)
        Exchange Place
        53 State Street
        Boston, Massachusetts 02109
        Tel: (617) 570-1000
        jdittmar@goodwinprocter.com
        dapfel@goodwinprocter.com
        sconcannon@goodwinprocter.com

        MILBANK, TWEED, HADLEY &
         MCCLOY LLP
          James N. Benedict
          Sean M. Murphy
        One Chase Manhattan Plaza
        New York, New York 10005
        Tel: (212) 530-5000

        *Attorneys for Defendants Fidelity Management*
        *& Research Company and FMR Co., Inc.*

Dated: February 20, 2008

## CERTIFICATE OF SERVICE

    I, James S. Dittmar, hereby certify that on February 20, 2008, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

            /s/ James S. Dittmar
          James S. Dittmar (BBO# 126320)

# EXHIBIT A

# Shareholders of Large Funds have Benefited from Fidelity's Growth in Assets from 2003 to 2004

| Funds | Avg Assets ($B) | | Inc/(Dec) | | Mgmt Fees (bp) | | Inc/(Dec) | Benefit to Shareholders ($M)(a) | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2003 | 2004 | Amt | % | 2003 | 2004 | | Mgmt Fees | Other Fees (b) | Total |
| Magellan | 60.8 | 64.6 | 3.7 | 6.1 | 58.0 | 57.5 | (0.5) | (3.4) | (5.2) | (8.6) |
| Contrafund | 30.5 | 38.6 | 8.1 | 26.8 | 58.0 | 57.4 | (0.6) | (2.3) | (4.3) | (6.6) |
| Low-Priced Stock | 19.0 | 30.7 | 11.7 | 61.7 | 62.9 | 62.4 | (0.5) | (1.6) | (4.7) | (6.3) |
| Growth & Income | 27.6 | 30.6 | 2.9 | 10.6 | 48.1 | 47.5 | (0.6) | (1.8) | (1.2) | (3.0) |
| Equity-Income | 19.6 | 24.2 | 4.6 | 23.7 | 48.0 | 47.5 | (0.6) | (1.4) | (3.1) | (4.5) |
| Growth Company | 18.4 | 23.3 | 4.9 | 26.4 | 58.0 | 57.5 | (0.5) | (1.1) | (4.0) | (5.1) |
| Blue Chip Growth | 19.2 | 22.7 | 3.5 | 18.5 | 58.0 | 57.5 | (0.5) | (1.2) | (2.4) | (3.6) |
| Puritan | 19.3 | 22.4 | 3.1 | 16.3 | 43.1 | 42.5 | (0.6) | (1.4) | (0.4) | (1.8) |
| Dividend Growth | 15.3 | 18.8 | 3.5 | 23.2 | 58.0 | 57.5 | (0.5) | (1.0) | (1.1) | (2.1) |
| Diversified Intl. | 9.3 | 17.8 | 8.5 | 91.0 | 72.9 | 72.3 | (0.6) | (1.0) | (7.1) | (8.1) |
| Total "Large" Equity Funds | 239.0 | 293.8 | 54.7 | 22.9 | 55.8 | 55.9 | 0.1 | (16.0) | (33.6) | (49.6) |
| All Other Equity | 228.6 | 294.3 | 65.8 | 28.8 | 52.7 | 53.0 | 0.3 | (20.5) | (70.1) | (90.7) |
| Total Equity | 467.6 | 588.1 | 120.5 | 25.8 | 54.3 | 54.5 | 0.2 | (36.6) | (103.7) | (140.3) |
| Bond and High Income | 79.5 | 83.2 | 3.6 | 4.6 | 45.2 | 45.7 | 0.6 | (2.8) | (2.8) | (5.6) |
| Money Market | 190.1 | 190.7 | 0.6 | 0.3 | 26.8 | 26.6 | (0.2) | (3.7) | 19.7 | 16.0 |
| Total | 737.2 | 862.0 | 124.7 | 16.9 | 46.2 | 47.5 | 1.2 | (43.0) | (86.8) | (129.8) |

(a) Benefit to shareholders is calculated by multiplying the basis point fee change by 2004 average assets for each fund.
(b) Primarily reflects lower transfer agent fees due to higher average account sizes

Note: Individual equity funds listed include all funds with assets > $15B

Fidelity Highly Confidential Information

A5 of A12

CONFIDENTIAL

BFMR_00153930

# Shareholders of Large Funds Continue to Benefit from Recent Growth in Assets (2004-2005)

| Funds | Average Assets ($B) | | Inc/(Dec) | | Management Fees (bp) | | Inc/(Dec) | Benefits to Shareholders ($M) | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2004 | 2005 | Amount | % | 2004 | 2005 | | Mgmt Fees | Other Fees (b) | (a) Total | |
| Magellan | 64.6 | 55.3 | (9.3) | (14.4) | 57.5 | 57.1 | (0.4) | (2.2) | (1.9) | (4.0) | |
| Contrafund | 38.6 | 50.7 | 12.1 | 31.4 | 57.4 | 57.1 | (0.3) | (1.9) | (4.4) | (6.3) | |
| Low-Priced Stock | 30.7 | 36.0 | 5.4 | 17.5 | 62.4 | 62.1 | (0.3) | (1.1) | (7.2) | (8.3) | |
| Growth & Income | 30.6 | 31.3 | 0.7 | 2.3 | 47.5 | 47.1 | (0.4) | (1.2) | (1.6) | (2.8) | |
| Equity-Income | 24.2 | 26.0 | 1.8 | 7.4 | 47.5 | 47.1 | (0.4) | (0.9) | (1.1) | (2.0) | |
| Growth Company | 23.3 | 24.7 | 1.4 | 6.2 | 57.5 | 57.1 | (0.4) | (1.0) | (1.8) | (2.8) | |
| Blue Chip Growth | 22.7 | 22.3 | (0.4) | (1.7) | 57.5 | 57.1 | (0.4) | (0.8) | (1.0) | (1.9) | |
| Puritan | 22.4 | 23.9 | 1.4 | 6.5 | 42.5 | 42.1 | (0.4) | (0.9) | (1.7) | (2.6) | |
| Dividend Growth | 18.8 | 17.3 | (1.6) | (8.5) | 57.5 | 57.1 | (0.4) | (0.6) | 0.0 | (0.6) | |
| Diversified International | 17.8 | 27.3 | 9.5 | 53.3 | 72.3 | 72.1 | (0.2) | (0.7) | (6.6) | (7.3) | |
| Total "Large" Equity Funds | 293.8 | 314.8 | 21.1 | 7.2 | 55.9 | 56.0 | 0.1 | (11.2) | (27.4) | (38.5) | |
| All Other Equity | 294.3 | 336.3 | 41.9 | 14.2 | 53.0 | 50.9 | (2.1) | (90.2) | (15.1) | (105.3) | |
| Total Equity | 588.1 | 651.1 | 63.0 | 10.7 | 54.5 | 53.4 | (1.1) | (101.4) | (42.5) | (143.8) | |
| Bond & High Income | 83.2 | 93.2 | 10.1 | 12.1 | 45.7 | 43.7 | (2.0) | (25.2) | (18.3) | (43.5) | |
| Money Market | 190.7 | 198.9 | 8.1 | 4.3 | 26.6 | 26.9 | 0.3 | 4.2 | (17.6) | (13.4) | |
| **Total** | **862.0** | **943.2** | **81.2** | **9.4** | **47.5** | **46.8** | **(0.7)** | **(122.4)** | **(78.3)** | **(200.7)** | |

(a) Benefit to shareholders is calculated by multiplying the basis point fee change by 2005 assets for each fund.
(b) Reflects changes in expense reimbursements, all-inclusives, transfer agent fees and fund accounting fees.

Note: Individual equity funds listed include all funds with assets > $15B
2005 Number based on preliminary fund profitability results.

$200.7M benefit shown above was based on preliminary fund profitability data. Current estimate, subject to finalizing FP/15c data, is $160M of which $35M is attributable to large funds.

Fidelity Highly Confidential Information

A6 of A12

CONFIDENTIAL

BFMR_00153931