UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT *et al.*,<br>for the use and benefit of<br>FIDELITY MAGELLAN FUND, FIDELITY<br>CONTRAFUND, FIDELITY GROWTH &<br>INCOME PORTFOLIO I FUND, FIDELITY<br>BLUE CHIP GROWTH FUND, and<br>FIDELITY LOW-PRICED STOCK FUND,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY MANAGEMENT & RESEARCH<br>COMPANY and FMR CO., INC.,<br><br>Defendants. | No. 04-cv-11651-MLW<br>(Lead Case)<br><br>No. 04-cv-11756-MLW<br>(Consolidated Case) |

### REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE ADDITIONAL FACT DISCOVERY

Fidelity's Opposition to Plaintiffs' Motion for Leave to Take Additional Fact Discovery relies on *ad hominem* attacks against the Plaintiffs' counsel in an effort to avoid its own discovery obligations and distract the Court from Fidelity's concealment of relevant and discoverable information that it improperly withheld from the Plaintiffs. Fidelity's assertion that the Plaintiffs should not be permitted discovery concerning Jackie Lawson's allegations of securities fraud relating to mutual fund profitability because the Plaintiffs never specifically asked about Jackie Lawson is patently ridiculous. How could the Plaintiffs have specifically inquired about Jackie Lawson or any of the mutual fund profitability problems that she identified when Fidelity withheld this information from the Plaintiffs throughout discovery?

Fidelity's Opposition is nothing more than self-serving, unsupported claims about the supposed inconsequential nature of Ms. Lawson's work at Fidelity and completely baseless accusations that the Plaintiffs either were not interested in the information leading to Ms.

Lawson's securities whistleblower complaint or dilatory in their efforts to obtain it. Both assertions by Fidelity are false and are belied by the existing factual record. Fidelity continues to this day to try to keep the truth of Ms. Lawson's allegations a secret known only to them, hidden from the public, the investors in their funds, and the Plaintiffs in this case. If, indeed, what Ms. Lawson has to say is irrelevant to this lawsuit, then Fidelity should have nothing to hide and should have readily agreed to have her deposed. The publicly available facts, however, give every indication that Ms. Lawson has information that goes to the heart of the Plaintiffs' claims and discovery requests.

The specific issues in Fidelity's Opposition requiring a response are addressed below.

### I.   Fidelity's Claim That It Produced Documents Sufficient To Alert Plaintiffs To Ms. Lawson's Fund Profitability Work At Fidelity Is Absurd

Fidelity suggests that it has met its discovery obligations by providing the Plaintiffs with a handful of documents that contain Ms. Lawson's name, and that it is the Plaintiffs' fault for not further pursuing specific information about Ms. Lawson. This argument exhibits exactly how Fidelity has been actively hiding the ball with respect to Ms. Lawson and her mutual fund profitability work. The eleven documents cited by Fidelity in its Opposition as containing Ms. Lawson's name reveal nothing more than that – her name. From these documents there is no way to tell Ms. Lawson's job title, her job functions, her job responsibilities, or even the department in which she works.[1] The one organizational chart produced by Fidelity that contains Ms. Lawson's name is from 2000 and lists her as part of the "Technology" department of Fidelity's Institutional Brokerage Group. In the email correspondence identified by Fidelity, Ms. Lawson's name appears as a recipient along with anywhere from five to dozens of other names.

---

[1] As with most of its discovery production, Fidelity has identified these documents as "confidential," so the Plaintiffs have not attached them as exhibits hereto. If the Court wishes to review the actual documents, the Plaintiffs would be happy to submit them under seal for the Court's review.

2

From the listed addressees and the text of the documents there is no way to determine exactly why Ms. Lawson (or indeed any of the other people) are listed as recipients. Finally, none of the documents containing Ms. Lawson's name includes any information of substance or significance. They reveal nothing about the profitability issues identified by Ms. Lawson, her efforts to correct these problems and the reporting to the Board of Trustees, or the bases or substance of her whistleblower complaint.

Fidelity's claim that its production of these documents obligated the Plaintiffs to "follow up" in depositions or with other discovery requests about the issues concerning Ms. Lawson is preposterous. The production of these innocuous documents referencing Ms. Lawson actually had the opposite effect. By producing some documents containing Ms. Lawson's name, but failing to produce any substantive materials relating to Ms. Lawson's fund profitability work and allegations of faulty reporting and fraud, Fidelity led the Plaintiffs to believe that there was no further inquiry necessary concerning Ms. Lawson. Without some indication of the actual issues involving Ms. Lawson's work, the Plaintiffs had no reason to seek additional discovery about her.

## II. Plaintiffs Have Consistently Sought Discovery From Fidelity That Would Include The Information At Issue Here

Fidelity disingenuously claims that "Plaintiffs never once expressed even a general interest in documents related to Ms. Lawson's criticisms." Opposition at 12. In the first instance, how could the Plaintiffs express an interest in Ms. Lawson's criticisms or any related issues when Fidelity's discovery productions gave no indication that any of this information existed?

Moreover, Fidelity cannot credibly claim that these issues have nothing to do with the Plaintiffs' case. As stated in the Plaintiffs' original motion, the issues that have come to light

3

concerning Ms. Lawson bear directly on the issues in this case, including fund profitability and methodologies, reporting to the Board of Trustees, and allegations of fraud against Fidelity's mutual fund investors concerning the fees being charged by Fidelity. The various discovery requests quoted in the Plaintiffs' original motion clearly seek this information relating to Ms. Lawson and reflect the Plaintiffs' clear interest in all materials of this nature. Still, Fidelity produced nothing of any substance that would suggest the existence of these issues. It was not until the publicity surrounding the filing of Ms. Lawson's whistleblower complaint in March 2008 that the Plaintiffs became aware of Ms. Lawson and the information surrounding her work at Fidelity.

Fidelity's characterization of the Plaintiffs somehow backing off of their original discovery requests is misleading. Because of the volume of potentially responsive documents at issue in discovery, both sides tried to modify document productions where possible and avoid the production of thousands of pages of meaningless and redundant documents. Fidelity is now trying to say that, through these negotiations, the Plaintiffs chose not to pursue their discovery requests that would have yielded documents concerning Ms. Lawson. Quite to the contrary, the Plaintiffs negotiated with Fidelity to reduce the burden on Fidelity of producing irrelevant documents, relying on Fidelity's professed good-faith representations about the relevance of the documents that it would produce. As the Opposition notes, the Plaintiffs' were trying to accommodate Fidelity's request that it not have to make a "data dump" that would produce thousands of pages of irrelevant numbers and data runs. Opposition at 15. The Plaintiffs negotiated in good faith with Fidelity, relying on Fidelity's representations that it would produce the documents that were actually responsive to the Plaintiffs' requests. The Plaintiffs never suggested that substantive documents like those concerning Ms. Lawson were irrelevant or no

longer covered by the Plaintiffs' discovery requests.[2] It is disingenuous for Fidelity to try to exploit the Plaintiffs' good faith discovery negotiations to now claim that the Plaintiffs expressed no interest in documents relevant to their case. *See Puma AG Rudolf Dassler Sport v. Payless Shoesource, Inc.*, 2008 U.S. Dist. LEXIS 19956 at *4 (D. Mass. March 14, 2008) ("The Federal Rules of Civil Procedure require parties to respond to discovery requests in good faith.").

### III. Fidelity Improperly Attempts to Justify Its Failure To Produce Discoverable Information By Claiming, Without Basis, That Ms. Lawson's Fund Profitability Work Was Inconsequential

Fidelity tries to neutralize its improper withholding of information by claiming that Ms. Lawson's work concerning mutual fund profitability and methodologies, the problems she identified and tried to correct, and the issues concerning the validity of Board reporting are inconsequential. This claim, however, is directly contradicted by the facts set forth in Ms. Lawson's whistleblower complaint and the factual record relating to this motion.

In this first instance, each of the factual allegations contained the Plaintiffs' original motion comes directly from Ms. Lawson's whistleblower complaint and the exhibits thereto. For the Court's reference, a copy of Ms. Lawson's complaint is attached hereto as <u>Exhibit A</u>. The complaint, which is subject to Federal Rule of Civil Procedure 11, states that, starting in August 2004, Ms. Lawson served as Head of the Board Support Group for Fidelity Brokerage Services, LLC. The complaint recounts in detail how, during 2004 through 2006 (a time period directly at

---

[2] On page 16 of its Opposition, Fidelity quotes from an April 20, 2007 letter from the Plaintiffs' counsel to Fidelity, purporting to show how the Plaintiffs had modified their approach to discovery. Fidelity misleadingly omits the portion of the letter, however, that specifically reiterates the Plaintiffs' requests for specific materials to which Ms. Lawson's documents would be responsive:
> [We] also require for each year: (1) internal correspondence or memoranda, formal memoranda, and consultant or audit reports that discuss or compare allocation methodologies or changes thereto; (2) descriptions of the allocation methodology process, including documents or tools used in performing allocations, decision criteria for acceptance of necessary changes, the software used by Fidelity, and how changes to the process are tracked; . . . and (6) any correspondence to, from or among the fund trustees, their outside counsel, and any Fidelity person or entity that relates to fund profitability.

issue in this case), Ms. Lawson was assigned the specific task of reviewing certain profitability issues within Fidelity Brokerage Services, and that she identified, analyzed, and tried to correct specific problems with the mutual fund profitability methodology and reporting to the Trustees. With the problems having gone unaddressed by Fidelity, in 2006 Ms. Lawson declared that she could no longer stand behind the financial information given to the Fidelity Board of Trustees concerning mutual fund profitability, and that problems with the financial information provided to the Board by Fidelity amounted to securities fraud against Fidelity's mutual fund investors.

Fidelity's recitation of Ms. Lawson's work history in trying to downplay the importance of her allegations to this case is noticeably void of any cited authority or supporting materials. Neither the Court nor the Plaintiffs are obligated to accept Fidelity's unsupported characterization of Ms. Lawson and the probative nature of her work. Instead, pointed discovery should reveal the true import of these facts.

Fidelity's attempt to minimize the significance of these issues is belied by the attention that Ms. Lawson's profitability issues received within Fidelity when they were raised. Fidelity's Opposition notes that "several individuals – including senior Fidelity finance personnel, PwC [PricewaterhouseCoopers], and Ms. Knowles in her capacity as Chair of the Audit Committee [of the Board of Trustees] – reviewed the issues raised by Ms. Lawson." Opposition at 20. If, as Fidelity contends, Ms. Lawson was nothing more than a "middle manager" within "one of several business units" who expressed concerns about "only a few of the thousands of methodologies and drivers that have been used to allocate costs," why were the issues she raised reviewed by Fidelity's senior finance personnel, Fidelity's outside auditors, and the Chair of the Audit Committee?

All of the relevant facts indicate that the problems identified by Ms. Lawson are indeed significant and properly should be the subject of discovery in this case. The serious and important nature of this information is also suggested by the fact that Fidelity has done everything it can to keep the information from the Plaintiffs.

### IV.  Fidelity Cannot Avoid Its Own Discovery Obligations By Claiming That Plaintiffs Should Have Received The Relevant Information From PwC

Fidelity's most outlandish claim is that the Plaintiffs should have obtained the necessary information about Ms. Lawson from Fidelity's outside auditors, PricewaterhouseCoopers ("PwC"). In the first place, Fidelity cannot ignore its own discovery obligations by claiming that the Plaintiffs should have obtained the information from another source. *See Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("if documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness" pursuant to Rule 45) (quoting 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2204). The Plaintiffs requested this information from Fidelity, and it should have been produced by Fidelity, regardless of whether any third party might have possessed the information.[3]

In the second place, Fidelity's allegations concerning the Plaintiffs' dealings with PwC are not true. The undersigned counsel dealt directly with PwC's counsel concerning the third party subpoena *duces tecum* served upon PwC. PwC organized its responsive documents under the subpoena into two basic groups. The first and smaller group was described as including those documents that PwC received from Fidelity and which reflected its external dealings with its client. The Plaintiffs received this group of Fidelity-related documents from PwC, and

---

[3] Fidelity seems to suggest that the Plaintiffs should have known that they could have gotten the Lawson documents from PwC even if they were not forthcoming from Fidelity itself. Even if this were true, the Plaintiffs had no idea that either Fidelity or PwC had any important documents relating to Lawson until she recently filed her whistleblower suit.

7

considered them to be the more relevant of the two groups, based on PwC's representations. The second group, which was to contain hundreds of thousands of pages, consisted of internal PwC documents described by counsel for PwC as primarily work papers and data runs. Plaintiffs were in active negotiations with PwC about the production of the second group in an effort to avoid the needless production of irrelevant or indecipherable documents, which seemed to be a major component of this production. While negotiations were ongoing, PwC's counsel notified the Plaintiffs that PwC had converted the hundreds of thousands of pages in the second group into electronic format and was demanding that the Plaintiffs pay for the entire production (of largely useless documents) and would not negotiate further about what documents actually would be produced. Although the Plaintiffs' counsel tried to work things out with PwC and arrange for some payment of PwC's costs, no agreement was reached, and the Plaintiffs were told that they would have to move the Court to compel PwC's compliance with the subpoena.[4]

The important point is that the Plaintiffs *did pursue* the relevant production from PwC that should have contained any documents that PwC had mentioning Ms. Lawson. The Plaintiffs did obtain the first group of documents, which was supposed to contain the documents that PwC received from Fidelity. If PwC had documents from Fidelity concerning Ms. Lawson, they would have been produced in the first group of documents. The documents received from PwC, however, contained only one document mentioning Ms. Lawson's name, but the document was as non-descript as the other Lawson documents that Fidelity cites in its Opposition. In short, the Plaintiffs' dealings with PwC actually confirm the Plaintiffs' diligence in pursuing relevant discovery. The fact that the Plaintiffs did not obtain the Lawson documents from a third party, despite their efforts to do so, does not justify Fidelity's efforts to conceal this information.

---

[4] Fidelity's statement that the Plaintiffs refused pay production costs to PwC after previously agreeing to do so is a total fabrication.

8

## V. The Additional Requested Discovery Will Not Require Any Delay In The Disposition Of This Case

The discrete additional discovery sought by the Plaintiffs will not require any delay in the ultimate disposition of this case. The parties are presently conducting expert discovery, and all expert depositions are scheduled to be completed by October 17, 2008. After that, any summary judgment motions are scheduled to be filed by December 12, 2008. The additional discovery sought by the Plaintiffs certainly can be completed well before the deadline for expert discovery. The current schedule for summary judgment motions (and an eventual trial) should stay on track.

Dated: May 13, 2008

By:  /s/ Matthew J. Tuttle
Michelle H. Blauner, BBO # 549049
SHAPIRO HABER & URMY LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 439-3939

Lynn Lincoln Sarko
Michael D. Woerner
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Gary Gotto
Ron Kilgard
KELLER ROHRBACK P.L.C.
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012
Telephone: 602-248-0088

**Attorneys for Plaintiffs Nancy Haugen, Michael F. Magnan, Karen L. Magnan, Presley C. Phillips, Andrea M. Phillips, and Cindy Schurgin**

           Harry S. Miller, BBO# 346946
           Robert D. Friedman, BBO# 180240
           Matthew J. Tuttle, BBO# 562758
           Joshua Cook, BBO# 660346
           BURNS & LEVINSON LLP
           125 Summer Street
           Boston, MA 02110
           (617) 345-3000

           **Attorneys for Plaintiffs Cynthia A.**
           **Bennett and Guy E. Miller**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 13th day of May 2008, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

           /s/ Matthew J. Tuttle

01243280