# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. BENNETT, GUY E. MILLER, NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of THE FIDELITY MAGELLAN FUND, FIDELITY CONTRAFUND, FIDELITY GROWTH & INCOME PORTFOLIO I FUND, FIDELITY BLUE CHIP GROWTH FUND, and FIDELITY LOW-PRICED STOCK FUND,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC.,<br><br>　　　　　Defendants. | CIVIL NO. 1:04-cv-11651-MLW (Lead Case)<br><br>CIVIL NO. 1:04-cv-11756-MLW (Consolidated Case)<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLAIMS RELATING TO FIDELITY GROWTH & INCOME PORTFOLIO I FUND AND FIDELITY LOW-PRICED STOCK FUND FOR LACK OF SUBJECT MATTER JURISDICTION**

| | |
|---|---|
| Goodwin Procter LLP<br>　James S. Dittmar<br>　David J. Apfel<br>Exchange Place<br>53 State Street<br>Boston, MA 02109 | Milbank, Tweed, Hadley & McCloy LLP<br>　James N. Benedict<br>　Sean M. Murphy<br>　Andrew W. Robertson<br>　Andrea G. Hood<br>1 Chase Manhattan Plaza<br>New York, NY 10005-1413<br><br>*Attorneys for Defendants Fidelity*<br>　*Management & Research Company and*<br>　*FMR Co., Inc.* |

Defendants Fidelity Management & Research Company and FMR Co., Inc. (collectively, "Defendants," and together with affiliated entities, "Fidelity") submit this Memorandum of Law in support of their motion to dismiss all claims related to Fidelity Growth & Income Portfolio I Fund ("G&I") and Fidelity Low-Priced Stock Fund ("L-P") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1]

## INTRODUCTION

This case under § 36(b) of the Investment Company Act of 1940 alleges that the fees paid to Fidelity by five specific Fidelity mutual funds (the "Funds") under Management Agreements between Fidelity and the Funds were disproportionate to the services rendered.

Under § 36(b), any recovery by Plaintiffs goes to the Funds. *See, e.g.*, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 n.11 ("[A]ny recovery obtained in a § 36(b) action will go to the company rather than the plaintiff."). As a consequence, if an individual plaintiff does not own shares in any particular Fund, he/she has no personal stake in the outcome of the litigation with respect to that Fund. Without a personal stake, the individual lacks standing and the Court lacks subject matter jurisdiction as to that claim. To the extent there is no individual plaintiff with standing to pursue a § 36(b) claim on behalf of any particular Fund, any claim with respect to that Fund must be dismissed. That is the case here with respect to G&I and L-P.

---

[1] A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be filed at any time, and courts are permitted to look beyond the pleadings in connection with such motions. *See ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 86-87 & n.2 (1st Cir. 2008); *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002); *White v. Comm'r of Internal Revenue*, 899 F. Supp. 767, 771 (D. Mass. 1995).

## STATEMENT OF FACTS

Two of the five Fidelity funds at issue in this litigation are G&I and L-P.  As of the commencement of the litigation in 2004, plaintiffs Guy E. Miller and Presley L. Phillips owned shares of G&I, and plaintiffs Miller and Nancy Haugen owned shares of L-P.  *See* Complaint (Dkt No. 181) at ¶ 35; Affidavit of Diane Brown ("Brown Aff."), attached hereto at Tab A, at ¶ 5.  A search of Fidelity's record-keeping systems this week indicated that: (i) Mr. Miller sold or otherwise divested himself of all of his shares of G&I on or before July 2, 2010, and of all of his shares of L-P on or before November 3, 2010, Brown Aff., ¶¶ 6, 8; (ii) Mr. Phillips sold or other divested himself of all of his shares of G&I on or before December 7, 2005, *id*. at ¶ 7; and (iii) Ms. Haugen sold or otherwise divested herself of all of her shares of L-P on or before January 8, 2007, *id*. at ¶ 9.

Fidelity's records also indicate that no Plaintiff other than Mr. Miller, Mr. Phillips, and/or Ms. Haugen has owned either G&I or L-P since the commencement of this litigation.  *Id*. at ¶ 5.  And Fidelity's records indicate that no Plaintiff currently owns either G&I or L-P.  *Id.* at ¶¶ 4, 10.

## ARGUMENT

No Plaintiff now owns shares in either G&I or L-P.  Therefore, no Plaintiff has Article III standing to assert claims regarding compensation received by Fidelity with respect to those funds, and the Court has no subject matter jurisdiction to adjudicate those claims.

Standing has both constitutional and prudential components.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804 (1985); *Baker v. Carr*, 369 U.S. 186, 204 (1962).  The Article III constitutional requirements of standing – injury, causation, and

redressability – cannot be waived by the parties or by statute. Constitutional standing goes to the Court's subject matter jurisdiction. *See, e.g.*, *United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007); *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Once constitutional standing is lost, it cannot be regained and the court must dismiss the case, either on motion of the parties or *sua sponte*. *See, e.g.*, *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005) (affirming dismissal of plaintiff after "the district court correctly determined, once it dismissed all but the Section 1983 claim of the second amended complaint, [that] Appellant . . . no longer had Article III standing"); *Fox v. Bd. of Trs. of the State Univ. of New York*, 42 F.3d 135, 144 (2d Cir. 1994) (When constitutional standing is lost, the case "is no longer justiciable in federal court and must be dismissed.").[2]

Because standing is an element of the Court's subject matter jurisdiction, the question of whether a plaintiff has Article III standing is a "threshold inquiry" that "can be noticed at any time and cannot be waived." *Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 09-2596, --- F.3d ----, 2011 WL 183971, at *2-3 (1st Cir. Jan. 20, 2011); *see also Warth v. Seldin*, 422 U.S. 490 498 (1975); *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92, 99-100 (D. Mass. 1997) (Wolf, J.) (addressing *sua sponte* whether plaintiff had Article III standing because it is a question of the court's subject matter jurisdiction). Once a court's subject matter

---

[2] When a plaintiff loses standing in the midst of litigation, courts have sometimes referred to the case as being moot. "Mootness principles may indeed blend quite directly with standing . . . . The concepts may become mingled completely . . . ." 13B Fed. Prac. & Proc. Juris. § 3533.1 (3d ed.) at nn.12-16 and accompanying text. *See, e.g.*, *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that the issue presented is "moot" and that appellant "is without standing to invoke our jurisdiction"). For simplicity, in this memorandum we refer to the two related doctrines in terms of standing.

3

jurisdiction is challenged, the burden is on the party asserting jurisdiction to prove that it exists.  *See Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007); *White*, 899 F. Supp. at 771.

In determining whether Article III standing exists for a claim under § 36(b) regarding each of the Funds at issue, the crux of the inquiry is whether there is a plaintiff with a "personal stake" in establishing liability with respect to each Fund.[3]  *Warth*, 422 U.S. at 498-99 ("[T]he standing question is whether the plaintiff has 'alleged such *a personal stake* in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.") (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)) (emphasis added); *see also Gollust v. Mendell*, 501 U.S. 115, 125 (1991) (explaining that "if a security holder were allowed to maintain [an] action after he had lost any financial interest in its outcome, there would be serious constitutional doubt whether that plaintiff could demonstrate the standing required by Article III's case-or-controversy limitation on federal court jurisdiction").

The First Circuit's recent decision in *Plumbers v. Nomura* illustrates this point. There, plaintiffs asserted that defendants had violated the Securities Act of 1933 by making false or misleading statements in registration statements filed by defendants in connection with offerings for eight trust certificates.  *See Plumbers*, 2011 WL 183971, at \*\*1-2.  Plaintiffs, however, had purchased only two of the eight trust certificates.  *See id*. at \*1.  On appeal, the First Circuit addressed as a "threshold question" whether plaintiffs

---

[3]  This fundamental Article III principle is often articulated as "a three-part analysis requiring a plaintiff to show that (1) he suffered an injury in fact (2) that is fairly traceable to the alleged misconduct and (3) can be redressed by the relief plaintiff seeks from the court."  *Stegall v. Ladner*, 394 F. Supp. 358, 361 (D. Mass. 2005) (internal footnote omitted).  Because any monetary recovery in this action would go to the Funds, and because there is no Plaintiff who currently owns shares in G&I or L-P, there is no Plaintiff who will be afforded any redress should there be any recovery with respect to those two Funds.

4

had Article III standing to assert their claims with respect to the six trust certificates that none of the plaintiffs purchased. *Id*. at *3. The Court noted that Article III creates an "outer limit based on the incentives of the named plaintiffs to adequately litigate issues of importance to them." *Id.* at *5. The First Circuit concluded that plaintiffs lacked Article III standing with respect to the six certificates none of them owned, explaining that "the named plaintiffs have *no stake* in establishing liability as to misconduct involving the sales of those certificates." *Id*. at *6 (emphasis added). Notably, in finding a lack of standing, the First Circuit cited two cases finding a lack of standing for Section 36(b) claims. *Id*. at *5 (citing *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d at 604-08 (S.D.N.Y. 2006) and *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 166-69 (D. Mass. 2004)).

The result in *Plumbers* is required here. As the Supreme Court has noted, any recovery in a Section 36(b) suit would go directly to the relevant mutual fund—it does not go to the fund's shareholders. *See Daily Income Fund*, 464 U.S. at 535 n.11 ("[A]ny recovery obtained in a § 36(b) action will go to the company rather than the plaintiff."); *see also Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118 (D. Mass. 2006) ("[A]ny recovery [in a § 36(b) case] flows to the investment company, not the shareholder plaintiff.").

A search of Fidelity's record-keeping systems this week indicates that none of the Plaintiffs in this action currently holds shares in either G&I or L-P. (*See* Brown Aff., ¶¶ 4, 10). In other words, no Plaintiff has a "personal stake" in the outcome of the litigation with respect to claims relating to either G&I or L-P, and no Plaintiff could benefit from any recovery paid to those Funds. No Plaintiff has an "incentive" to litigate

5

these claims. Therefore, Article III standing is lacking as to claims with respect to G&I or L-P and the claims on behalf of both Funds must be dismissed. *See Warth*, 422 U.S. at 498-99.[4]

---

[4] Section 36(b) provides that "[a]n action may be brought under this subsection . . . *by a security holder* of such registered investment company on behalf of such company . . . ." 15 U.S.C. § 80a-35 (emphasis added). To satisfy this requirement, a plaintiff must be a "security holder," *i.e.*, own shares in the funds on whose behalf they purport to sue, at the commencement of the litigation. In addition, there is case-law holding that, for statutory standing purposes, Plaintiffs must also own shares in any fund on whose behalf they had initiated suit continuously throughout the duration of the litigation. *See Brever v. Federated Equity Mgt. Co. of Pa.*, 233 F.R.D. 429, 431-32 (W.D. Pa. 2005). Where, as here, Section 36(b) plaintiffs cease to be shareholders in the funds on whose behalf they purport to sue, they "divest[ themselves] of standing to maintain an action under § 36(b)." *Id.* at 431; *see also Siemers v. Wells Fargo & Co.*, No. 05-04518, 2007 WL 760750, **20-21 (N.D. Cal. Mar. 9, 2007) (noting that to maintain a § 36(b) claim, "it is important that the fund be continuously owned during the pendency of the action.").

## **CONCLUSION**

For the reasons set forth above, Plaintiffs lack both constitutional and statutory standing to assert Section 36(b) claims on behalf of G&I and L-P. By virtue of Plaintiffs' loss of constitutional standing, this Court lacks subject matter jurisdiction with respect to all claims brought by Plaintiffs on behalf of G&I and L-P, and those claims must be dismissed.

    Respectfully submitted,

    GOODWIN PROCTER LLP
    /s/ David J. Apfel
        James D. Dittmar (BBO# 126320)
        David J. Apfel (BBO# 551139)
    Exchange Place
    53 State Street
    Boston, MA   02109
    Tel: (617) 570-1000
    Fax: (617) 523-1231

    MILBANK, TWEED, HADLEY & McCLOY LLP
        James N. Benedict (*pro hac vice*)
        Sean M. Murphy (*pro hac vice*)
        Andrew W. Robertson
        Andrea G. Hood
    1 Chase Manhattan Plaza
    New York, NY   10005-1413
    Tel: (212) 530-5000
    Fax: (212) 530-5219

    *Attorneys for Defendants Fidelity Management &*
    *Research Company and FMR Co., Inc.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 25, 2011.

                 /s/ David J. Apfel